**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY TUITION REFUND ACTION | Lead Case No. 1:20-cv-03208  (JURY TRIAL DEMANDED) |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Student A, Chris Riotta, Lisa Guerra and Alexandra Taylor-Gutt ("Plaintiffs") by and through undersigned counsel, bring this action against The Board of Trustees of Columbia University in the City of New York ("Defendant" or the "University") on behalf of themselves and all others similarly situated, and make the following allegations based upon information, attorney investigation and belief, and upon Plaintiffs' own knowledge:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this case as a result of Defendant's decision to cancel in-person classes and change all classes to an online/remote format, close most campus buildings, and require all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.      While these actions were the right thing for Defendant to do, this decision deprived Plaintiffs and the other members of the Classes from recognizing the benefits of in-person instruction, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.      Defendant has either refused to provide reimbursement for the tuition, fees and other costs that Defendant is no longer providing, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiffs and members of the Classes for their loss.

4.      This action seeks refunds of the amount Plaintiffs and other members of the Classes

are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

5.      Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

6.      Columbia University in the City of New York is an institution of higher learning located in New York City, New York.

7.      Defendant Board of Trustees of Columbia University in the City of New York is the governing body vested with management and control of said institution.

8.      Upon information and belief, Defendant has an estimated endowment of approximately $10.9 Billion[1] and more than 33,000 enrolled students during the 2019-2020 academic year.[2]

9.      Moreover, upon information and belief, Defendant received more than $6 million of federal stimulus under the CARES Act.  The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

10.      According to the University's Assistant Vice President of Student Financial Services, Cynthia Grunden, Columbia has no plans to allocate even one dollar more than they are legally required to for student relief, presumably retaining the rest.[3]

---

[1]      Columbia Spectator, October 12, 2019:
https://www.columbiaspectator.com/news/2019/10/12/columbia-reports-38-percent-endowment-return-lowest-in-the-ivy-league/.
[2]      Columbia University Headcount Enrollment by School, 2010-2019.  Columbia Office of the Provost.  January 13, 2020.
https://opir.columbia.edu/sites/default/files/content/Statistical%20Abstract/opir_enrollment_history.pdf.
[3]      "The plan is to award the amount that was specifically allocated for students, I don't foresee us awarding anything above that."  *The Columbia Chronicle*, April 28, 2020.

11.     Plaintiff A is an individual and a resident and citizen of a state other than New York, and was a student enrolled at Columbia University during the Spring 2020 term.

12.     Plaintiff Chris Riotta is an individual and a resident and citizen of the state of New York, and was a student enrolled at Columbia University during the Spring 2020 term.

13.     Plaintiff Lisa Guerra is an individual and a resident and citizen of the state of Connecticut, and was a student enrolled at Columbia University during the Spring 2020 term.

14.     Plaintiff Alexandra Taylor-Gutt is an individual and a resident and citizen of the state of New York, and was a student enrolled at Columbia University during the Spring 2020 term.

## JURISDICTION AND VENUE

15.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

16.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York and has sufficient minimum contacts with New York.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Specifically, the contract that is the subject of this action was formed in this District.

---

https://columbiachronicle.com/most-columbia-students-to-receive-grants-but-cares-act-wont-entirely-offset-college-losses.

## BACKGROUND FACTS

19.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

20.     Plaintiffs were each enrolled as full-time or part-time students for the Spring 2020 academic semester at Defendant's institution.

21.      As a precondition for enrollment, Plaintiffs were required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

22.     There are hundreds, if not thousands, of institutions of higher learning in this country.

23.     Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which does not provide for physical attendance by the students.

24.     Defendant's institution offers both in-person, hands-on programs, and fully online distance-learning programs, which it markets and prices as separate and distinct products.

25.     Plaintiffs and members of the proposed Tuition Class (defined below) did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and specifically enroll on an in-person basis.

26.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

27.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits

and services above and beyond basic academic instruction, which include but are not limited to:

    (a)    Face-to-face interaction with professors, mentors, and peers;

    (b)    Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

    (c)    Student governance and student unions;

    (d)    Extra-curricular activities, groups, intramurals, etc.;

    (e)    Student art, cultures, and other activities;

    (f)    Exposure to community members of diverse backgrounds, cultures, and schools of thought;

    (g)    Social development and independence;

    (h)    Hands-on learning and experimentation; and

    (i)    Networking and mentorship opportunities.

28.    Plaintiffs' education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

29.    When this happened, Plaintiffs were forced from campus and deprived of the benefit of the bargain for which they had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

30.    In addition to tuition, Defendant charges certain mandatory fees, including but not limited to a:

    (a)    University Facilities Fee;

    (b)    Student Life Fee;

    (c)    Student Activity Fee; and

    (d)    Health and Related Services Fee.

31.    The University Facilities Fee is charged to all graduate students (full and part-time) registered for classes on the Morningside Campus.[4]

32.    The Student Life Fee is charged to all undergraduate students (full and part-time) registered in Columbia College, the Fu Foundation School of Engineering and Applied Science, and the School of General Studies; and all MDE, MS, Certificate, DNP and PhD students in the School of nursing.[5]

33.    The Student Activity Fee is charged to all on-campus graduate students (full and part-time) except those in the Schools of Architecture, Business, Journalism, and Nursing.[6]

34.    The Health and related Services Fee is charged to all full-time and residential students on the Morningside Campus, but may be waived in very limited circumstances.

35.    Plaintiffs were required to and did pay all mandatory fees associated with their Spring 2020 enrollment.

36.    Specifically, Plaintiffs Riotta, Guerra and Student A were required to and did pay the University Facilities Fee.

37.    Plaintiffs Guerra and Student A were also required to and did pay the Student Activity Fee.

38.    Plaintiff Taylor-Gutt was required to and did pay the Student Life Fee.

39.    Plaintiffs Taylor-Gutt and Student A were required to and did pay the Health and Related Services Fee.

40.    In addition to the broad-based mandatory fees described above, Defendant charges a myriad of other program or course specific fees, such as technology fee paid by Plaintiff Guerra

---

[4] *See*, *generally*, https://sfs.columbia.edu/tuition.
[5] *Id.*
[6] *Id.*

and a Visual Arts Fee and Creative Writing Fee paid by Plaintiff Taylor-Gutt.

41.     The University states that the Facilities Fee "provides students access to the facilities at the Dodge Physical Fitness Center and Lerner Hall, and supports enhancements for the libraries and computer networks."[7]

42.     The University states that the Student Life Fee is "[a] mandatory fee supporting student activities, access to the facilities at the Dodge Physical Fitness Center and Lerner Hall, and library and computer network privileges."[8]

43.     The University states that the Student Activity Fee is "charged to all students to help cover the costs of student events, activities, and to help fund student organizations."[9]

44.     The University states that the Health and Related Services Fee grants students "access [to] the programs and services provided through Columbia Health's five departments, including 24/7 support from Counseling & Psychological Services, Medical Services, and Sexual Violence Response."[10]

45.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiffs and members of the Fees Class (defined below) no longer had the benefit of the services for which these fees were paid.  For example, the Dodge Center and Lerner Hall were closed, student events and activities were cancelled, student organizations were no longer operational, and students who moved home no longer had the need for or access to the various health facilities.

46.     At Defendant's request and direction, certain Plaintiffs and members of the Class

---

[7] https://socialwork.columbia.edu/admissions/tuition-financial-aid/cost-attendance-new-york-city-campus-explanation/.
[8] https://cc-seas.financialaid.columbia.edu/content/student-life-fee.
[9] *Id.*
[10] *Id.*

moved out of on-campus housing and lost access to any campus facilities and services thereon throughout the remainder of the Spring 2020 term.

47.     For example, Plaintiff Student A moved out of on-campus housing on or before March 17, 2020 and was unable to return to campus for the remainder of the Spring 2020 term, and had no access to any campus facilities or services from that date.

## FACTUAL ALLEGATIONS

48.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

49.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 21, 2020.[11]

50.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 15, 2020 and commencement ceremonies on May 20, 2020.[12]

51.     Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 120 days.

52.     However, as a result of the COVID-19 pandemic, Defendant announced on March 8, 2020 that it was suspending classes on Monday March 9, 2020 and Tuesday March 10, 2020 and thereafter moving all classes online for the remainder of the semester upon resumption on March 12, 2020.[13]

53.     On March 12, 2020, Defendant encouraged most students to move out of their

---

[11] https://registrar.columbia.edu/calendar?page=1.
[12] *Id.*
[13] https://covid19.columbia.edu/news/update-covid-19-and-class-activity.

residence halls.[14]

54.    On or about March 15, 2020, Defendant announced that students would be required to move out of their residence halls (absent a waiver) and that the deadline to do so would be March 17, 2020.[15]

55.    Also, on March 15, 2020, Defendant began to close all on campus student facilities such as libraries and other buildings and non-essential offices.[16]

56.    Almost immediately, students began demanding refunds for the fees and charges demanded in this action.

57.    As early as March 12, 2020, the students at Defendant's institution started a change.org petition which stated:[17]

> With this in mind, we call upon the University to address the reduction of educational quality that the transition to online classes represents, as well as the negative professional impacts of reduced networking opportunities and cancelled campus events, by providing students with a partial tuition reimbursement. We note that the University has a sizable endowment at their disposal and could use some of these funds to help protect their students (who themselves represent future donors) during these trying times. Thank you for your reading and sharing.

58.    Upon information and belief, other petitions have since been circulated, and have collectively received over 9,300 signatures.[18]

---

[14] https://covid19.columbia.edu/news/all-undergraduate-students-encouraged-move-out-residence-halls.

[15] https://covid19.columbia.edu/news/accelerated-check-out-timeline-undergraduate-residents.

[16] https://covid19.columbia.edu/news/university-libraries-closed-until-further-notice.

[17] https://www.change.org/p/columbia-university-partial-tuition-reimbursement-at-columbia-university.

[18] *See also* https://www.change.org/p/columbia-university-columbia-students-demand-partial-

59.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 15, 2020 deprived Plaintiffs and other members of the Classes from access to campus facilities and in-person instruction for approximately 55% of the semester for which they had contracted.

60.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiffs and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment as set forth more fully above.

61.     These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that has already been paid.

62.     Likewise, Plaintiffs and members of the proposed Fees Class have been and will be deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services and other opportunities.

63.     While Defendant has refunded some of the fees, such refund has come with no explanation, appears to be arbitrary, and in any event, is wholly insufficient.

64.     For example, although Plaintiff Student A paid a total of $1,065 in mandatory fees as set forth above, he was refunded only $119 or roughly 11%.

65.     Likewise, whereas Plaintiff Taylor-Gutt paid $1,386 in mandatory fees, she was refunded only $144 or roughly 10%.

66.     Defendant has announced that it will be issuing full *pro-rata* refunds for room and board fees.  Accordingly, this action does not seek to certify an On-Campus Housing Class or Meals Class for the recovery of those funds.  However, Plaintiffs reserves the right to amend these allegations should Defendant fail or refuse to issue these refunds as promised.

---

springtuition-refund-or-lower-tuition-for-next-semester/sign.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth

herein.

68.     Plaintiffs brings this action on behalf of themselves and as a class action, pursuant

to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following

Classes:

### The Tuition Class:

All people who paid tuition for or on behalf of students enrolled in classes at the
University for the Spring 2020 semester but were denied live, in-person instruction
and forced to use online distance learning platforms for the latter portion of that
semester.

### The Fees Class:

All people who paid fees for or on behalf of students enrolled in classes at the
University for the Spring 2020 semester.

69.     Excluded from the Classes are The Board of Trustees of Columbia University in

the City of New York, and any of their respective members, affiliates, parents, subsidiaries,

officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate

family members, and Court staff assigned to this case.  Plaintiffs reserves the right to modify or

amend the Class definitions, as appropriate, during the course of this litigation.

70.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because

Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims.

71.     This action has been brought and may be properly maintained on behalf of the

Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

72.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiffs is informed and believe that there are thousands of members of the Class, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendant's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

73.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether there is a difference in value between online distance learning and live, in-person instruction;

(c)     Whether Defendant breached its contracts with Plaintiffs and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and live, in-person instruction;

(d)     Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiffs and the Tuition Class representing the difference between the value of online distance learning and live in-person instruction;

(e)     Whether Defendant breached its contracts with Plaintiffs and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were intended to cover;

(f)     Whether Defendant was unjustly enriched by retaining fees of Plaintiffs and

the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g)     Whether Defendant committed conversion as detailed above against Plaintiffs and the other members of the Tuition Class;

(h)     Whether Defendant committed conversion as detailed above against Plaintiffs and the other members of the Fees Class;

(i)     Whether Defendant violated New York General Business Law § 349, *et seq.* as to Plaintiffs and the other members of the Tuition Class;

(j)     Whether Defendant violated New York General Business Law § 349, *et seq.* as to Plaintiffs and the other members of the Fees Class;

(k)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(l)     Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(m)     The amount and nature of relief to be awarded to Plaintiffs and the other Class members.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

74.     Plaintiffs' claims are typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

75.     Plaintiffs are adequate Class representative because their interests do not conflict with the interests of other members of the Class they seek to represent.  Plaintiffs have retained

counsel competent and experienced in complex litigation and Plaintiffs intend to prosecute the action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

76.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

77.     Even if Class members could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

78.     To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

79.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

**(Plaintiffs and Other Members of the Tuition Class)**

80.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

81.     Plaintiffs bring this count on behalf of themselves and other members of the Tuition Class.

82.     Plaintiffs and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiffs and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would provide live, in-person instruction in a physical classroom.

83.     The terms of this contract were set forth by Defendant through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications.

84.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to accept Defendant's offer to attend its University as opposed to other institutions of higher learning.

85.     These publications form the basis of the bargain on which prospective students agree to accept Defendant's offer and enroll in the University.

86.     Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

87.     Defendant specifically markets certain classes and degree programs as being offered on a fully online basis.

88.     Indeed, Defendant dedicates an entire section of its website to these programs,

known as "Columbia Online" which can be accessed at www.online.columbia.edu.

89.     Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, and the like.

90.     Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 31, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[19]

91.     In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model.  This is evident from the fact that the University had to cancel classes for two days while its professors hurriedly and ineffectively scrambled to make the switch.

92.     Defendant further emphasized the distinction between in-person and online class offerings through its academic catalogs and course listings on its website.

93.     Each of Defendant's academic programs is listed separately on the University's student financial services website with the specific tuition and fees charged for the specific program.

94.     That website is found at https://sfs.columbia.edu/tuitions-fees-listing.

95.     Each online program is specifically delineated as such, with the in-person programs not so delineated.

_____

[19] January 31, 2020 is the approximate date that students were permitted to withdraw from the University for the Spring 2020 term and receive a full tuition refund.

96.     Likewise, students in many of Defendant's on-campus schools and programs were subject to strict personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendant's requirement and the student's acceptance of the requirement that such students physically attend such classes on campus.

97.     That Defendant offered to provide, and members of the Tuition Class expected to receive, live, in-person instruction is further evidenced by the parties' prior course of conduct.

98.     Upon information and belief, prior to the start of the semester and as students were registering for classes, the classes were listed on the registration portal not only by description, but also meeting time and physical location.

99.     Those classes for which students expected to receive in-person instruction began the semester by offering in-person instruction.

100.    Each day for the weeks and months leading up to March 12, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

101.    Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

102.    Each day for the weeks and months prior to announced closures, students had access to the full campus.

103.    Accordingly, it is clear that Defendant offered to provide live, in-person education and that members of the Tuition Class accepted that offer by paying tuition and attending classes in January 2020.

104.    Based on this mutual assent, Plaintiffs and other members of the Tuition Class

fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

105.     However, the University breached the contract with Plaintiffs and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

106.     This cause of action does not seek to allege "academic malpractice."

107.     Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one being live, in-person education, with its ancillary and related services and the other being online distance education.

108.     Plaintiffs and members of the Tuition Class accepted Defendant's offer for live in-person education and paid valuable consideration in exchange.

109.     However, after accepting such consideration from Plaintiffs and the Tuition Class, Defendant provided an entirely different product, which deprived Plaintiffs and the Tuition Class of the benefit of the bargain for which they had already paid.

110.     Defendant retained tuition monies paid by Plaintiffs and other members of the Tuition Class, without providing them the full benefit of their bargain.

111.     Plaintiffs and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted and the services and access which they actually received.

112.     As a direct and proximate result of Defendant's breach, Plaintiffs and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning

provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus for which they contracted.

### FOR A SECOND COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT

### (Plaintiffs and Other Members of the Tuition Class)

113.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

114.    Plaintiffs bring this count on behalf of themselves and other members of the Tuition Class.

115.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

116.    Plaintiffs and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus.

117.    Plaintiffs and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

118.    Defendant has realized this benefit by accepting such payment.

119.    However, Plaintiffs and members of the Tuition Class did not receive the full benefit of their bargain.

120.    Instead, Plaintiffs and members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, i.e. live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a completely different product carrying a different fair market value, i.e., online instruction devoid of the on-campus experience, access, and services.

121.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

122.    Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiffs and other members of the Tuition Class.

123.    This cause of action does not seek to allege "academic malpractice."

124.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION
BREACH OF CONTRACT**

**<u>(Plaintiffs and Other Members of the Fees Class)</u>**

125.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

126.    Plaintiffs bring this count on behalf of themselves and other members of the Fees Class.

127.    In addition to tuition, Defendant charges a number of mandatory fees.

128.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

129.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

130.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

131.    As such, it is axiomatic that the monies Plaintiffs and other members of the Fees

Class paid towards these fees were intended by both the students and Defendant to cover the services for which the fees were described and billed.

132.    By way of example, Defendant describes, at

https://sfs.columbia.edu/content/undergraduate-24,  its "Student Life Fee" as follows:

> All undergraduate students registered in Columbia College, the Fu Foundation School of Engineering and Applied Science, and the School of General Studies shall be charged a Student Life Fee. This fee combines the student activity fee, career education fee, house system fee, printing fee, the recreational facilities fee, information technology fee, the Lerner fee, which supports activities at the student center, and the Cross-cutting Multi-school Activities fee, which supports new University-wide student activities.

133.    Likewise, Defendant describes, at https://sfs.columbia.edu/content/residence-unit-53, its "University Facilities Fee" as follows:

> All students registered on the Morningside Campus shall be charged a University Facilities Fee. Each program calculates the amount of the fee differently, depending on the student's status. This fee combines the Recreational Facilities Fee, Information Technology fee, the Lerner Fee which supports activities at the student life center, and the Cross-cutting Multi-school Activities Fee which supports new University-wide student activities.

134.    It is undisputed that Defendant did not provide student activities, on-campus printing facilities, access to recreational facilities, access to campus-based information technology resources, or access to the Lerner Student Center for some portion of the Spring 2020 Semester.

135.    Although the foregoing are just two of many examples, Defendant specifically defines each fee in its various publications to students and prospective students.

136.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiffs, including the Fees Class, and Defendant, which provided that Plaintiffs and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, benefits and/or programs

related to those fees, as advertised.

137.    Plaintiffs and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

138.    However, Defendant breached the contract with Plaintiffs and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

139.    Defendant has acknowledged such breach and has already refunded or offered to refund some of these fees.

140.    However, such refunds are arbitrary and wholly insufficient.

141.    By way of non-exclusive example, Student A paid total fees for the Spring 2020 semester in the amount of $1,065.

142.    However, Student A received a refund of only $119, or roughly 11%.

143.    Defendant's calculation for refunding Spring 2020 fees is not only at odds with common sense and the terms of the above described contract, but also conflicts with Defendant's own admissions.

144.    For example, at https://sfs.columbia.edu/content/advanced-architectural-design-14, Defendant has already conceded that, as long as campus is closed, Defendant is unable to provide at least 50% of the services for which the University Facilities Fee is intended to cover, and that the fee would be reduced accordingly for the upcoming summer term:

> Note: Due to campus disruption as a result of COVID-19, the Morningside Facilities fee (Student Life fee for undergraduates) will be reduced in recognition that certain services are not available. In the summer term, the fee which covers Athletic facilities will not be included.  As a result, all students assessed will pay only the IT portion. Those who have been assessed $496 will only be assessed $249. Those that would have been assessed $247, will not be assessed this term.

145.     Likewise, although Defendant's admissions serve as a starting point for the analysis and support this cause of action, there are yet other fees that Defendant has refused and continues to refuse to refund.

146.     By retaining fees paid by Plaintiffs and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has not performed its contract.

147.     Plaintiffs and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the benefits services and/or programs the fees were intended to cover.

148.     As a direct and proximate result of Defendant's breach, Plaintiffs and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**<u>(Plaintiffs and Other Members of the Fees Class)</u>**

149.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

150.     Plaintiffs bring this count on behalf of themselves and other members of the Fees Class.

151.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

152.     Defendant has received a benefit at the expense of Plaintiffs and other members of the Fees Class to which it is not entitled.

153.     Plaintiffs and other members of the Fees Class paid substantial student fees for on-campus benefits, access and services and did not receive the full benefit of the bargain.

154.     Plaintiffs and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

155.     Defendant realized this benefit by accepting such payment.

156.     Defendant has retained this benefit, even though Defendant has failed to provide the services, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

157.     Equity and good conscience require that Defendant return a *pro-rata* portion of the monies paid in fees to Plaintiffs and other members of the Fees Class.

158.     Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION
## CONVERSION

### (Plaintiffs and Other Members of the Tuition Class)

159.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

160.     Plaintiffs bring this count on behalf of themselves and other members of the Tuition Class.

161.     The two key elements of conversion are (1) Plaintiffs' legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendant's unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiffs' right.

162.     Plaintiffs and members of the Tuition Class have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid tuition funds for the same.

163.     As set forth above, Defendant has not provided those services or access to the exclusion of Plaintiffs' and other members of the Tuition Class's rights.

164.     As set forth above, Plaintiffs and the Tuition Class have not, to date, received from Defendant a proper reimbursement for tuition paid to Defendant for the 2020 Spring semester.

165.     Defendant has received and retained possession of Plaintiffs' and the Tuition Class's full payments for tuition for the 2020 Spring semester.

166.     Defendant's continued possession of the full payments for the 2020 Spring semester tuition is adverse and in derogation of Plaintiffs' and the Tuition Class's entitlement to such funds.

167.     Defendant refuses to remit Plaintiffs' and the Tuition Class's reimbursement for tuition paid for the 2020 Spring semester.

168.     Defendant has therefore converted and continues to convert Plaintiffs' and the Tuition Class's 2020 Spring semester tuition.

**FOR A SIXTH COLLECTIVE CAUSE OF ACTION**
**CONVERSION**

**(Plaintiffs and Other Members of the Fees Class)**

169.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

170.     Plaintiffs bring this count on behalf of themselves and other members of the Fees Class.

171.     The two key elements of conversion are (1) Plaintiffs' legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendant's

unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiffs' right.

172.    Plaintiffs, and members of the Fees Class, have an identifiable legal ownership to the right and services of an in-person, on-campus educational experience and paid fees for the same.

173.    As set forth above, Defendant has not provided or made available those services, benefits, programs and/or access thereto, to the exclusion of Plaintiffs' and other members of the Fee Class's rights.

174.    As set forth above, Plaintiffs have not, to date, received from Defendant a proper reimbursement for fees paid to Defendant for the 2020 Spring semester.

175.    Defendant has received and retained possession of Plaintiffs' full payments for fees for the 2020 Spring semester.

176.    Defendant's continued possession of the full payments for 2020 Spring semester fees is adverse and in derogation of Plaintiffs' entitlement to such funds.

177.    Defendant refuses to remit to Plaintiffs a reimbursement for fees paid for the 2020 Spring semester.

178.    Defendant has therefore converted and continues to convert Plaintiffs' 2020 Spring semester fees.

**FOR A SEVENTH COLLECTIVE CAUSE OF ACTION**
**VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, § 350, *ET SEQ.***

**(Plaintiffs and Other Members of the Tuition Class)**

179.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

180.    Plaintiffs bring this count on behalf of themselves and other members of the Tuition

Class.

181.    New York General Business Law § 349: Deceptive Acts and Practices Unlawful provides for consumer protection by declaring as unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."[20]

182.    New York General business Law § 350: False Advertising Unlawful provides for "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."[21]

183.    Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of New York General Business Law § 349, § 350, *et. seq.* by engaging in the activities described herein.

184.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiffs.

185.    Plaintiffs are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's University for the Spring 2020 semester.

186.    Defendant's efforts to sell its services to prospective students, which included Plaintiffs, was "consumer-oriented."

187.    As part of its marketing practices and recruitment efforts, as described above, Defendant made numerous statements, representations and omissions to the public (including Plaintiffs and members of the Tuition Class) with respect to the in-person educational opportunity and on-campus experience that students who enrolled at the Defendant would receive.  Such statements, representations and omissions, which were uniform and identical in nature, were

---

[20] *See* New York General Business Law § 349.
[21] *See* New York General Business Law § 350.

intended to induce potential students to enroll at the University for the Spring 2020 semester.

188.    With the reasonable expectation that students who enrolled at the University would receive in-person academic instruction with an on-campus experience for the entire 2020 Spring semester, Plaintiffs and other members of the Tuition Class paid tuition to Defendant.

189.    However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire 2020 Spring semester.  As a result, Plaintiffs and other members of the Tuition Class were proximately caused to pay inflated tuition because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

190.    Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading and deceptive to Plaintiffs and the other Tuition Class Members, as well as the public at large.

191.    Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiffs and other members of the Tuition Class because students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

192.    In fact, Plaintiffs and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

193.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

194.    Plaintiffs and the other Tuition Class Members were deceived and injured because

students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

195.    As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et seq.*, Defendants have directly and proximately caused damage to Plaintiffs and other members of the Tuition Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

**FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION**
**VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, § 350 *ET SEQ.***

**(Plaintiffs and Other Members of the Fees Class)**

196.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

197.    Plaintiffs bring this count on behalf of themselves and other members of the Fees Class.

198.    Defendant's actions constitute unlawful, unfair, deceptive and fraudulent practices as defined by New York's Deceptive Acts and Practices Law, NY General Business Law § 349, § 350, *et seq.*

199.    Consumer-oriented conduct has been defined as conduct that potentially affects similarly situated consumers.

200.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiffs and its efforts to sell its services to prospective students, which included Plaintiffs were "consumer-oriented."

201.    Plaintiffs and other members of the Fees Class were required to pay certain mandatory fees as a condition to student enrollment at the University for the Spring 2020 semester, including, but not limited to, a Facilities Fee, Student Activity Fee, and a Health and Related

Services Fee.

202.     As discussed above, Defendant made statements, representations and omissions to the public, including Plaintiffs and other members of the Fees Class, with respect to such fees.

203.     These statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students, including Plaintiffs and members of the Fees Class, to enroll at the University and pay or cause to have paid mandatory fees for the Spring 2020 semester.

204.     With the reasonable expectation that students who enrolled at the University would be entitled to receive services, programs and/or benefits for which fees were charged for the entire Spring 2020 semester, Plaintiffs and other members of the Fees Class agreed to pay such fees.

205.     However, students did not receive the services, programs and/or benefits for which fees were charged for the entire Spring 2020 semester.  As a result, Plaintiffs and other members of the Fees class were proximately caused to overpay such fees because the related services, programs and/or benefits were not available to students for the entire Spring 2020 semester.

206.     Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading and deceptive to Plaintiffs and the other Fee Members, as well as the public at large.

207.     Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiffs and other members of the Fees Class because students enrolled at the University did not receive services, programs and/or benefits for which fees were paid for the entire Spring 2020 semester.   In fact, Plaintiffs and other students were not permitted to remain on-campus for the entire Spring 2020 semester and University facilities were closed before the semester concluded.

208.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University and paid the mandatory fees then they would be entitled receive the services, programs and/or benefits for which such fees were charged and paid for the entire Spring 2020 semester.

209.    Plaintiffs and the other Fees Class Members were deceived and injured because students were not entitled to receive the services, programs and/or benefits for which the mandatory fees were charged and paid for the entire Spring 2020 semester.

210.    As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et. seq.* Defendants have directly and proximately caused damage to Plaintiffs and other members of the Fees Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.    Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

F.      Scheduling a trial by jury in this action;

G.      Awarding Plaintiffs' reasonable attorney's fees, costs and expenses, as permitted by law;

H.       Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury in this action of all issues so triable.

Dated June 5, 2020

**GAINEY McKENNA & EGLESTON**

By:  */s/ Thomas J. McKenna*_____
 Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel.: (212) 983-1300
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

**TOPTANI LAW PLLC**
Edward Toptani
375 Pearl Street, Suite 14106
New York, NY 10038
Tel: (212) 699-8930
Email: edward@toptanilaw.com

**ANASTOPOULO LAW FIRM, LLC**

By:  */s/ Roy T. Willey IV*
Roy T. Willey IV*
Eric M. Poulin**
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: roy@akimlawfirm.com
Email: eric@akimlawfirm.com

**MOREA SCHWARTZ BRADHAM FRIEDMAN & BROWN LLP**
John M. Bradham
444 Madison Avenue, 4th Floor
New York, NY 10022
Tel: (212) 695-8050
Email: jbradham@msbllp.com

*Admitted pro hac vice*
**Pro hac vice motion forthcoming*