# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE COLUMBIA UNIVERSITY TUITION
REFUND ACTION

Lead Case No. 1:20-cv-3208

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK'S
## MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION
## <u>COMPLAINT</u>

Roberta A. Kaplan
Gabrielle E. Tenzer
Joshua Matz
David Shieh
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
212.763.0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
dshieh@kaplanhecker.com

June 22, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. i

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 5

I.      PLAINTIFFS' CONTRACT CLAIMS SHOULD BE DISMISSED ................................ 6

        A.      Plaintiffs Fail to Plausibly Plead a Specific, Enforceable Promise ...................... 6

        B.      Plaintiffs Fail to Allege Breach .......................................................................... 13

        C.      The University Was Excused from Performance After March 22 ........................ 18

        D.      Plaintiffs' Unjust Enrichment Claims Lack Merit ............................................... 19

II.     PLAINTIFFS' REMAINING STATE LAW CLAIMS SHOULD BE
        DISMISSED ......................................................................................................... 21

        A.      Conversion Claims ............................................................................................ 21

        B.      Section 349 and Section 350 Claims ................................................................ 21

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexson v. Hudson Valley Cmty. Coll.*,
  125 F. Supp. 2d 27 (N.D.N.Y. 2000) ................................................................................. 22

*Allaire Corp. v. Okumus*,
  433 F.3d 248 (2d Cir. 2006) .............................................................................................. 5

*Anthes v. N.Y. Univ.*,
  No. 17 Civ. 2511, 2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018) ........................................ 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 5

*Babiker v. Ross Univ. Sch. of Med.*,
  No. 98 Civ. 1429, 2000 WL 666342 (S.D.N.Y. May 19, 2000) ......................................... 13

*Baldridge v. State*,
  293 A.D.2d 941 (3d Dep't 2002) ................................................................................. 7, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 5

*Benham v. eCommission Sols., LLC*,
  118 A.D.3d 605 (1st Dep't 2014) ..................................................................................... 20

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .......................................................................................... 3, 5

*Cheves v. Trs. of Columbia Univ.*,
  89 A.D.3d 463, 464 (1st Dep't 2011) ............................................................................... 13

*Chira v. Columbia Univ. in N.Y. City*,
  289 F. Supp. 2d 477 (S.D.N.Y. 2003) ........................................................................... 8, 9

*Christe v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010) .............................................................................. 24

*Chufen Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020) ............................................................................................ 24

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
  123 F. Supp. 2d 133 (S.D.N.Y. 2000) .............................................................................. 21

*Clarke v. Trs. of Columbia Univ. of the City of N.Y.*,
   No. 95 Civ. 10627, 1996 WL 609271 (S.D.N.Y. Oct. 23, 1996) ............................................ 11

*Deneberg v. Rosen*,
   71 A.D.3d 187 (1st Dep't 2010) ........................................................................................ 24

*Downey v. Adloox Inc.*,
   238 F. Supp. 3d 514 (S.D.N.Y. 2017) ............................................................................... 19

*Ebert v. Holiday Inn*,
   628 F. App'x 21 (2d Cir. 2015) ......................................................................................... 18

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*,
   305 A.D.2d 268 (1st Dep't 2003) ...................................................................................... 21

*Gally v. Columbia Univ.*,
   22 F. Supp. 2d 199 (S.D.N.Y. 1998) ......................................................................... 7, 8, 14, 15

*Genet v. President of Del. & Hudson Canal*,
   136 N.Y. 593 (1893) ........................................................................................................ 8

*Gertler v. Goodgold*,
   107 A.D.2d 481 (1st Dep't 1985) ................................................................................. *passim*

*Goldstein v. Pataki*,
   516 F.3d 50 (2d Cir. 2008) ................................................................................................ 3

*Gomez-Jimenez v. N.Y. Law Sch.*,
   36 Misc.3d 230 (N.Y. Sup. Ct. 2012) ............................................................................... 23

*Gomez-Jimenez v. N.Y. Law Sch.*,
   103 A.D.3d 13 (1st Dep't 2012) ................................................................................... 23, 24

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
   98 N.Y.2d 314 (2002) ..................................................................................................... 24

*Heskiaoff v. Sling Media, Inc.*,
   719 F. App'x 28 (2d Cir. 2017) ................................................................................... 22, 23

*Hoffman v. Bd. of Educ. of City of N.Y.*,
   49 N.Y.2d 121 (1979) ....................................................................................................... 7

*In re Sling Media Slingbox Advertising Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016) ............................................................................... 23

*Jeffers v. Am. Univ. of Antigua*,
   125 A.D.3d 440 (1st Dep't 2015) ................................................................................. 20, 21

*Jones v. Trs. of Union Coll.*,
    92 A.D.3d 997 (3d Dep't 2012) ........................................................................... 8

*Kassman v. KPMG*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013) ................................................................ 5

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000) ....................................................................... 19, 20

*Kel Kim Corp. v. Cent. Mkts.*,
    70 N.Y.2d 900 (1987) ................................................................................. 18, 19

*Keles v. Trs. of Columbia Univ. in the City of N.Y.*,
    74 A.D.3d 435 (1st Dep't 2010) ......................................................................... 7

*Lowenschuss v. Kane*,
    520 F.2d 255 (2d Cir. 1975) ............................................................................. 18

*Maas v. Cornell Univ.*,
    94 N.Y.2d 87 (1999) ............................................................................... *passim*

*Matter of Susan M. v. N.Y. Law Sch.*,
    76 N.Y.2d 241 (1990) ....................................................................................... 14

*Menaker v. Hofstra Univ.*,
    935 F.3d 20 (2d Cir. 2019) ................................................................................. 7

*Munich Reins. Co. v. First Reins. Co. of Hartford*,
    6 F.2d 742 (2d Cir. 1925) ................................................................................... 3

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
    875 F.3d 107 (2d Cir. 2017) ............................................................................. 22

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016) ................................................................ 8

*Nungesser v. Columbia Univ.*,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017) .............................................................. 23

*Okoh v. Sullivan*,
    No. 10 Civ. 2547, 2011 WL 672420 (S.D.N.Y. Feb. 24, 2011) ........................ 8

*Olsson v. Bd. of Higher Ed.*,
    49 N.Y.2d 408 (1980) .......................................................................... 6, 13, 14

*Paladino v. Adelphi Univ.*,
    89 A.D.2d 85 (2d Dep't 1982) ........................................................................... 7

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)..................................................................................... 3

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011)........................................................................... 6, 13, 19

*Paramount Film Distr. Corp. v. State*,
    30 N.Y.2d 415 (1972) ............................................................................................ 20

*Paynter v. N.Y. Univ.*,
    64 Misc. 2d 226 (N.Y. Civ. Ct. 1970).................................................................. 17

*Paynter v. N.Y. Univ.*,
    319 N.Y.S.2d 893 (N.Y. App. Term 1971)...................................................... 16, 17

*Pearson v. Walden Univ.*,
    144 F. Supp. 3d 503 (S.D.N.Y. 2015).................................................................. 14

*Pell v. Trs. of Columbia Univ. in City of N.Y.*,
    No. 97 Civ. 0193, 1998 WL 19989 (S.D.N.Y. Jan. 21, 1998)............................... 13, 14, 15, 16

*People v. Trump Entrepreneur Initiative LLC*,
    26 N.Y.S.3d 66 (1st Dep't 2016) ......................................................................... 22

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
    No. 04 Civ. 704, 2005 WL 1214281 (S.D.N.Y. May 20, 2005)............................. 15

*Rodriguez v. N.Y. Univ.*,
    No. 05 Civ. 7374, 2007 WL 117775 (S.D.N.Y. Jan. 16, 2007)............................. 14

*Sarwar v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*,
    150 A.D.3d 913 (2d Dep't 2017) ......................................................................... 14

*Sirohi v. Lee*,
    222 A.D.2d 222 (1st Dep't 1995) ........................................................................... 7

*State v. Colorado State Christian Coll. of Church of Inner Power, Inc.*,
    346 N.Y.S.2d 482 (N.Y. Sup. Ct. 1973)............................................................... 22

*Studio No. 54 Disco, Inc. v. Pee Dee Jay Amusement Corp.*,
    81 A.D.3d 911 (2d Dep't 1981) ........................................................................... 18

*Tedeschi v. Wagner Coll.*,
    49 N.Y.2d 652 (1980) ............................................................................................ 14

*Torres v. Little Flower Children's Servs.*,
    64 N.Y.2d 119 (1984) ........................................................................................... 6, 7

*Town of N. Hempstead v. Pub. Serv. Corp. of Long Island*,
    107 Misc. 19 (N.Y. Sup. Ct. 1919) ...................................................................... 18, 19

*Ward v. N.Y. Univ.*,
    No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ............................. 11, 14, 16

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
    579 F. Supp. 2d 334 (E.D.N.Y. 2008) ...................................................................... 21

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ........................................................................ 21, 23

*Yalincak v. N.Y. Univ.*,
    No. 08 Civ. 773, 2009 WL 10714654 (D. Conn. Sept. 3, 2009) ............................. 20

**Statutes**

New York G.B.L. Section 349 .......................................................................... 21, 22, 23, 24

New York G.B.L. Section 350 ........................................................................................ 24

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 1, 3, 5

**Other Authorities**

Centers for Disease Control and Prevention, *Interim Guidance for Administrators of U.S.
    Institutions of Higher Education* ........................................................................... 15

N.Y. Exec. Order No. 202 (Mar. 7, 2020) ............................................................... 3

N.Y. Exec. Order No. 202.6 (Mar. 18, 2020) .............................................................. 3

N.Y. Exec. Order No. 202.8 (Mar. 20, 2020) .............................................................. 4

N.Y.S. Dep't of Econ. Dev., *Guidance for Determining Whether a Business Enterprise
    Is Subject to a Workforce Reduction Under Recent Executive Orders* .................................. 4, 5

Defendant The Trustees of Columbia University in the City of New York ("Columbia" or the "University")[1] respectfully submits this memorandum of law in support of its motion (the "Motion") to dismiss the Consolidated Amended Class Action Complaint (the "Complaint") (ECF 30) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The current moment is one of unprecedented difficulty and challenge for the nation and the world, no less so for members of the Columbia community. Amidst the COVID-19 global pandemic, the already significant sacrifices that so many Columbia students make to pursue their educations have undoubtedly become even more difficult. The University recognizes this and has been grappling with how best to carry out its educational mission during these challenging times. As always, Columbia's top priority remains providing the best possible education and protecting the well-being of its students.

For decades, however, the New York courts have made it clear that as a matter of public policy, courts should be extremely wary of doing what Plaintiffs effectively ask this Court to do here—overrule educators in the exercise of their professional judgment in administering their own institutions. This practical policy determination of deference to the decisions of educational institutions is reflected in doctrines limiting contract liability to clear and specific promises by a university to provide particular services distinct from its core educational mission, and requiring a plaintiff to plead that a university acted arbitrarily or in bad faith in order to establish a breach of contract.

---

[1]   Columbia is incorporated under the name "The Trustees of Columbia University in the City of New York" and is therefore the sole defendant in this action.

Plaintiffs do not (and cannot) satisfy these well-established common law standards here. Their Complaint fails to cite any statement or document promising that Columbia students would always receive in-person instruction and access to on-campus facilities no matter what, *i.e.*, without regard for the health and safety of the University community. Plaintiffs similarly do not allege that Columbia breached any such implied agreement by acting arbitrarily or in bad faith as required by New York law; in fact, they plead the opposite—namely, that the University acted *in good faith* in reasonably deciding to transition to remote instruction under exigent circumstances. Plaintiffs' allegations thus rest upon a strained theory of implied contracts and a rigid conception of breach, both of which are foreclosed by clear New York precedents.

The University certainly appreciates that its students would prefer that their college or graduate school experiences had not been affected by the global pandemic. That is completely understandable under the circumstances. Indeed, the University and its faculty would have preferred that, too. But relief for the current predicament does not lie in the courts. New York law recognizes that universities may reasonably and lawfully account for the welfare of their communities in making judgments about how best to educate their students—and that is exactly what Columbia has done here. Because the University has acted in good faith to educate its students, manage its affairs, and preserve public health and safety on its campus amidst an unprecedented public health crisis, there is no basis under New York law for imposing liability in this case. Plaintiffs' Complaint should be dismissed.

## BACKGROUND[2]

Plaintiffs were each enrolled as students for the spring semester of Columbia's 2019-20 academic year. ¶¶ 20, 21, 35.[3] Roughly six weeks after spring classes began, on March 7, New York Governor Andrew M. Cuomo declared a state of emergency in New York in response to the public health threat posed by COVID-19. N.Y. Exec. Order No. 202 (Mar. 7, 2020).[4] The very next day, after a member of the University community was quarantined as a result of exposure to COVID-19, Columbia announced that it would suspend classes on March 9 and 10 so that the University could transition to remote instruction for the rest of that week. ¶ 52 & n.13.

On March 12, the University announced that all classes for the rest of the spring semester would be conducted remotely. ¶ 53 n.14. Three days later, the University began closing non-essential facilities and told undergraduates that they would be required to move out of the University's residence halls by March 17. ¶¶ 54 & n.15, 55. The day after that move-out deadline, Governor Cuomo issued an executive order requiring non-essential businesses to reduce their in-person workforce by 50 percent. N.Y. Exec. Order No. 202.6 (Mar. 18, 2020). Two days later, the

---

[2]   As required by precedent, the Complaint's factual allegations are accepted as true solely for purposes of this Motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[3]   Citations denoted as "¶ __" are taken from the Consolidated Amended Class Action Complaint (ECF 30) filed on June 10, 2020.

[4]   Matters of which judicial notice may be taken may be considered in connection with a Rule 12(b)(6) motion. *Chambers*, 282 F.3d at 153. Here, this includes the issuance of Governor Cuomo's executive orders and their terms. *See, e.g., Munich Reins. Co. v. First Reins. Co. of Hartford*, 6 F.2d 742, 746 (2d Cir. 1925); *see also Goldstein v. Pataki*, 516 F.3d 50, 60 n.7 (2d Cir. 2008); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). Similarly, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference," such as the webpages linked in the Complaint. *Chambers*, 282 F.3d at 153 (internal quotation marks omitted).

required reduction was increased to 100 percent, effective March 22, 2020. N.Y. Exec. Order No. 202.8 (Mar. 20, 2020).[5]

As Plaintiffs acknowledge, taking these steps was "the right thing for [Columbia] to do," ¶ 2, and students were able to continue their "academic instruction via online classes" despite the suspension of in-person instruction, ¶ 60. But Plaintiffs contend that the University's actions, while appropriate in light of the pandemic, nonetheless deprived them of "benefits and services above and beyond basic academic instruction" that they "expect[ed] to receive" as part of an on-campus education—including (but not limited to) "[f]ace-to-face interaction with professors, mentors, and peers"; "[s]tudent art, cultures, and other activities"; and "[s]ocial development and independence." ¶ 27. Accordingly, on behalf of a class of all people who paid tuition to Columbia for the spring 2020 semester, Plaintiffs seek damages representing the "difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom," ¶¶ 68, 112, and/or an equivalent refund, ¶¶ 122, 167, 189.

Plaintiffs also seek refunds for certain "mandatory fees" paid for the spring 2020 semester. ¶ 127. Those fees include a University Facilities Fee, ¶¶ 41, 133; Student Life Fee, ¶¶ 42, 132; Student Activity Fee, ¶ 43; and Health and Related Services Fee, ¶ 44. In addition to these "broad-based mandatory fees," Plaintiffs allege that certain of the Plaintiffs paid "other program or course specific fees," including a "technology fee" and "Visual Arts Fee and Creative Writing Fee" that the Complaint does not otherwise define. ¶ 40. Plaintiffs contend that "[a]s a result of the actions

---

[5]   Guidance issued pursuant to Governor Cuomo's executive orders allowed for "remote instruction or streaming of classes from public or private schools . . . provided, however, that no in-person congregate classes are permitted." N.Y.S. Dep't of Econ. Dev., *Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders*, https://esd.ny.gov/guidance-executive-order-2026 (last visited June 22, 2020).

and announcements of Defendant during the Spring 2020 term," students "no longer had the benefit of the services for which these fees were paid" because "the Dodge Center and Lerner Hall were closed, student events and activities were cancelled, student organizations were no longer operational, and students who moved home no longer had the need for or access to the various health facilities." ¶ 45. Although Plaintiffs acknowledge that the University has refunded some of these fees, they allege that "such refund has come with no explanation, appears to be arbitrary, and in any event, is wholly insufficient." ¶ 63. Accordingly, Plaintiffs seek *pro rata* refunds for a class of all people who paid fees (other than for room and board) for the spring 2020 semester. ¶¶ 148, 157, 177, 208.[6]

## ARGUMENT

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Kassman v. KPMG*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[6]   Plaintiffs do not seek refunds for fees charged for room and board because the University "has announced that it will be issuing full *pro-rata* refunds" for such fees. ¶ 66.

## I.     PLAINTIFFS' CONTRACT CLAIMS SHOULD BE DISMISSED

Plaintiffs' contract claims (Counts I & III) should be dismissed for three independent reasons: first, because the Complaint fails to adequately plead a specific, enforceable promise to provide in-person instruction or on-campus services and facilities; second, because Plaintiffs fail to adequately plead breach, *i.e.*, that the University acted in bad faith or arbitrarily in failing to fulfill any such promises; and third, because at least as of March 22, 2020, it would have been impossible for the University to perform any such promises due to Governor Cuomo's executive orders. Plaintiffs' unjust enrichment claims (Counts II & IV) should be dismissed for the same reasons and also because New York law does not recognize quasi-contract claims like unjust enrichment in the student-university context.

### A.     Plaintiffs Fail to Plausibly Plead a Specific, Enforceable Promise

#### 1.     Applicable Standard

New York courts have long recognized that courts "retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999). Simply stated, courts "exercise[] the utmost restraint in applying traditional legal rules to disputes within the academic community." *Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 413 (1980); *see also Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011). This proscription on judicial interference with the "academic and administrative decisions" of educators reflects a policy determination that educational institutions "are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence." *Gertler v. Goodgold*, 107 A.D.2d 481, 485-86 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 946 (1985). New York courts therefore guard against "be[ing] thrust into the position of reviewing the wisdom of educators' choices and evaluations," *Torres v. Little Flower Children's Servs.*, 64 N.Y.2d 119,

126-27 (1984), or "substitut[ing] their judgment for that of university officials," *Sirohi v. Lee*, 222 A.D.2d 222, 222 (1st Dep't 1995).

This public policy determination has been operationalized into New York contract law. "The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998). Specifically, although "[w]hen a student is admitted to a university, an implied contract arises between the parties" under New York law, *Baldridge v. State*, 293 A.D.2d 941, 942-43 (3d Dep't 2002), a student suing for breach of such contract must point to a specific, enforceable promise to provide "certain specified services." *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89 (2d Dep't 1982); *see also Torres*, 64 N.Y.2d at 128. And these specified services cannot simply restate the school's basic educational offerings; they must be "distinct from any overall obligation to offer a reasonable program." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 n.45 (2d Cir. 2019) (internal quotation marks omitted); *see also Gally*, 22 F. Supp. 2d at 206-07 ("Not every dispute between a student and a university is amenable to a breach of contract claim . . . . Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'").[7]

As a matter of law, such promises may be "implied only where [the court] may rightfully assume that it would have been made if attention had been drawn to it . . . and that it is to be raised

---

[7]   To the extent that Plaintiffs are alleging that by transitioning to online instruction, Columbia failed to provide an effective education, the Complaint should be dismissed on the alternative ground that it constitutes an impermissible attempted "end run" around the rule that there is no claim for educational malpractice in New York. *See, e.g., Hoffman v. Bd. of Educ. of City of N.Y.*, 49 N.Y.2d 121, 125-26 (1979); *Keles v. Trs. of Columbia Univ. in the City of N.Y.*, 74 A.D.3d 435, 435-36 (1st Dep't 2010).

only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate they intended to effect." *Gertler*, 107 A.D.2d at 485 (quoting *Genet v. President of Del. & Hudson Canal*, 136 N.Y. 593, 609 (1893)). In the university context, this requires a plaintiff to "establish a clear contractual right," *id.* at 487, whereby the university "relinquished its authority to make its own academic judgments and to administer and allocate its resources" and "expressly, by contract or otherwise, obligated itself to provide" the specific services claimed by the plaintiff, *id.* at 485. In performing this analysis, "the university's academic and administrative prerogatives" are not presumed to be "impliedly limited by custom, or by a strained theory of contractual construction." *Id.*; *see also Maas*, 94 N.Y.2d at 94.

On a motion to dismiss, these principles require a plaintiff to allege, among other things, a specific provision in a particular document that gives rise to an enforceable promise. "[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." *Gally*, 22 F. Supp. 2d at 207. In *Chira v. Columbia University in New York City*, plaintiff alleged the existence of an implied contract, but "point[ed] to no document or conversation that g[ave] rise to a promise which Columbia breached." 289 F. Supp. 2d 477, 485-86 (S.D.N.Y. 2003). That failure made it "very difficult" for the court to discern whether the claim was a "challenge[] to determinations within the wide discretion of the university or . . . a genuine breach of contract" claim, resulting in dismissal of the breach of contract claim. *Id.* at 486. Applying these principles, many other courts have dismissed implied contract claims against colleges and universities on similar grounds. *See, e.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016); *Jones v. Trs. of Union Coll.*, 92 A.D.3d 997, 999 (3d Dep't 2012); *Okoh v. Sullivan*, No. 10 Civ. 2547, 2011 WL 672420, at *7 (S.D.N.Y. Feb. 24, 2011), *aff'd*, 441 F. App'x 813 (2d Cir. 2011); *Gally*, 22 F. Supp. 2d at 209.

8

### 2.   Plaintiffs Fail to Allege a Specific, Enforceable Promise as to Tuition

Plaintiffs' tuition-based implied contract claims in this case (Count I) do not meet these straightforward, but stringent, requirements. The Complaint alleges broadly that the University promised to "provide live, in-person instruction in a physical classroom" in exchange for tuition. ¶ 82. But Plaintiffs do not allege any specific provision in any document or statement by the University either making that particular promise or linking it to tuition payments. Indeed, despite describing assorted materials from which such a promise might have arisen, *see* ¶ 83 ("The terms of this contract were set forth by [Columbia] through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications."), the Complaint does not quote or even paraphrase a single document in support of Plaintiffs' theory that the University made an enforceable promise to provide live, in-person instruction in a physical classroom. This sort of conclusory pleading is precisely what the New York Court of Appeals has warned against in the educational context. *See Maas*, 94 N.Y.2d at 93. For this reason alone, dismissal of Plaintiffs' tuition-based contract claims is required. *Chira*, 289 F. Supp. 2d at 485.

Unable to identify a specific promise, Plaintiffs instead attempt to formulate an implied promise by cataloguing materials in which Columbia allegedly "recognized and admitted the inherent difference between its in-person and online products." ¶ 26. These materials include "publications with respect to non-online classes . . . full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, and the like," ¶ 89; "academic catalogs and course listings" where "[e]ach online program is specifically delineated as such, with the in-person programs not so delineated," ¶¶ 92, 95; and "syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements," ¶ 101. From this impressionistic description of assorted University publications, Plaintiffs attempt to deduce a long

list of implied promises, each of which they contend can support contract liability here. These include promises to provide "live, in-person instruction in a physical classroom," along with intangibles like "[s]tudent art, cultures, and other activities" and "[s]ocial development and independence." ¶ 27.

But none of this comes close to satisfying the demanding requirements of New York law, which requires Plaintiffs to allege specific promises in specific documents. Under the cases cited above, the allegation that Columbia has elsewhere described the experience of campus life, and has separately described on-campus versus online offerings, is not the same thing as an allegation that Columbia made a concrete, judicially enforceable promise to provide Plaintiffs with a specified manner of education.

The First Department's reasoning in *Gertler*, affirmed and adopted by the Court of Appeals, explains why. 107 A.D.2d 481, *aff'd*, 66 N.Y.2d 946; *see also Maas*, 94 N.Y.2d at 91-93 (relying on *Gertler*). In *Gertler*, a tenured faculty member brought breach of implied contract claims against New York University after he was ordered to relocate out of 1,720 square feet of office space that he and his five-person staff had occupied for more than a decade. *Gertler*, 107 A.D.2d at 484. The faculty member contended that he had a contractual right to the office space, and that the relocation would make it impossible for him to conduct his "advanced experiment[al]" work, thereby "render[ing] meaningless his ability to research or teach." *Id.* In rejecting his claim, the First Department reasoned that the faculty member had not established "a clear contractual right to the amenities of tenure claimed." *Id.* at 487. The fact that certain "perquisites of faculty life" were customarily associated with tenure or commonly provided to faculty members was not enough to transform those benefits into "contract entitlements." *Id.* at 485. Absent a showing that the university had "expressly, by contract or otherwise, obligated itself to provide" office space

and "relinquished its authority to make its own academic judgments and to administer and allocate its resources," the *Gertler* court concluded that there was no viable implied contract claim. *Id.* [8]

This reasoning has also been applied in cases involving implied promises alleged by students, as opposed to faculty members. In *Anthes v. New York University*, for example, the court dismissed a breach of contract claim brought by a student because "even if [p]laintiff *expected* . . . assistance" in finding a job, the student failed to plausibly plead that "there was ever an agreement, express or implied, to do so," No. 17 Civ. 2511, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018) (emphasis added), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (affirming "for substantially the reasons stated by the district court"). Similarly, in *Clarke v. Trustees of Columbia University of the City of New York*, the court dismissed breach of contract claims brought by a student who expected that she would receive assistance with reapplying for admission to Columbia, consistent with the school's "stellar reputation" and apparently based on "[i]mplicit" duties that Columbia purportedly assumed during a committee hearing. No. 95 Civ. 10627, 1996 WL 609271, at *1, *8 (S.D.N.Y. Oct. 23, 1996). And in *Ward v. New York University*, the court dismissed a student's breach of contract claim where her instructor's "intimidating and militaristic" teaching style may have been unexpected and "personally offensive," but did not violate "specifically designated and discrete promises." No. 99 Civ. 8733, 2000 WL 1448641, at *4-5 (S.D.N.Y. Sept. 28, 2000).

---

[8] *Gertler* also answers Plaintiffs' suggestion that an implied contract was formed when "[e]ach day for the weeks and months leading up to March 12, 2020, students attended physical classrooms to receive in-person instruction, and [the University] provided such in-person instruction." ¶ 100. Just as use of office space for more than a decade did not give rise to a "contract entitlement[]" in *Gertler*, neither does attending in-person classroom instruction give rise to the contract right asserted here. 107 A.D.2d at 485.

This same logic applies here. Reduced to its essence, Plaintiffs' claim is that Columbia students have been deprived of aspects of an on-campus experience that were never contractually promised to them, but that are customarily associated with campus life. But as *Gertler*, *Anthes*, and other New York precedents make clear, the mere fact that an on-campus experience often comes with benefits like "[f]ace-to-face interaction with professors, mentors, and peers" and opportunities for "[s]ocial development and independence," ¶ 27, does not transform those benefits into "contract entitlements" actionable in a court of law.

### 3.    Plaintiffs Fail to Allege a Specific, Enforceable Promise as to Fees

Plaintiffs' implied contract claim for a refund of "mandatory fees" (Count III) fares no better. The language quoted by Plaintiffs describes the benefits and services supported by those fees: the Student Activity Fee, for example, "help[s] cover the costs of student events, activities, and . . . fund[s] student organizations," ¶ 43; and the Health and Related Services Fee supports "access [to] the programs and services provided through Columbia Health's five departments, including 24/7 support from Counseling & Psychological Services, Medical Services, and Sexual Violence Response," ¶ 44. But nothing in that language expressly commits Columbia to providing these particular benefits and services without regard to general campus policy and the safety of the University community. Nor do Plaintiffs' allegations point to any specific, enforceable promise. This deficiency is particularly acute with respect to the "technology fee" and a "Visual Arts Fee and Creative Writing Fee" that Plaintiffs allege were paid by certain of the Plaintiffs, ¶ 40 (characterizing these as "program or course specific fees"), but are not otherwise defined in the Complaint.

The First Department addressed this failure to specify an enforceable promise in *Cheves v. Trustees of Columbia University*, a case in which a Columbia alumnus who had been banned from campus brought an implied contract claim based on the fact that "the [University's] Alumni

Relations brochure lists certain benefits and services generally available to alumni." 89 A.D.3d 463, 464 (1st Dep't 2011). In concluding that the plaintiff in *Cheves* had not plausibly alleged a specific, enforceable promise, the First Department noted that "nothing in that document guarantees unfettered, irrevocable access for alumni to the campus or its facilities." *Id.* So, too, here. Even assuming that the University promised certain on-campus services and facilities in exchange for the payment of mandatory fees—which Plaintiffs do not specifically allege—it never promised "unfettered, irrevocable access" to those services and facilities divorced from health and safety concerns. Indeed, it would have reflected poor judgment on the University's part to do so, binding Columbia to provide services to students without condition, even when doing so would endanger the health and safety of students or public health more broadly. Put differently, such an unconditional promise is not one this Court can "rightfully assume" Columbia would have made "if attention had been drawn to it." *Gertler*, 107 A.D.2d at 485 (quoting *Genet*, 137 N.Y. at 609).

### B.     Plaintiffs Fail to Allege Breach

#### 1.     Applicable Standard

"The essence of the implied [student-university] contract is that an academic institution must act in good faith in its dealings with its students." *Olsson*, 49 N.Y.2d at 414; *accord Papelino*, 633 F.3d at 93. Accordingly, unlike in the commercial context, in assessing whether a plaintiff has adequately pleaded breach of an implied contract in the university context, courts do not require literal or even material compliance. Instead, they look to whether the university "acted in 'bad faith or in an arbitrary or irrational manner,' thus giving rise to a viable breach of contract claim." *Pell v. Trs. of Columbia Univ. in City of N.Y.*, No. 97 Civ. 0193, 1998 WL 19989, at *20 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.); *see also Babiker v. Ross Univ. Sch. of Med.*, No. 98 Civ. 1429, 2000 WL 666342, at *6-7 (S.D.N.Y. May 19, 2000) (same), *aff'd*, 86 F. App'x 457 (2d Cir. 2004);

*Rodriguez v. N.Y. Univ.*, No. 05 Civ. 7374, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007) (same); *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015) (same). Courts can and do assess a university's good faith on a Rule 12(b)(6) motion in order to determine whether breach has been adequately pleaded. *See Pell*, 1998 WL 19989, at *20. Where a complaint fails to adequately plead that the university has acted in bad faith or arbitrarily, the complaint must be dismissed. *See, e.g.*, *Pearson*, 144 F. Supp. 3d at 511; *Ward*, 2000 WL 1448641, at *5; *Gally*, 22 F. Supp. 2d at 206, 208-09; *Pell*, 1998 WL 19989, at *20.

This good faith standard for assessing breach of a student-university contract is another outgrowth of New York's policy determination that the courts must "exercise[] the utmost restraint in applying traditional legal rules to disputes within the academic community." *Olsson*, 49 N.Y.2d at 413. It protects the subjective judgment of professional educators against second guessing by the courts by limiting judicial intervention to those situations in which "an institution exercises its discretion in an arbitrary or irrational fashion." *Id.* at 414. And it relaxes traditional contract principles that might otherwise "foreclose[] inquiry into, and a balancing of, the countervailing interests of the student on the one hand and the institution on the other." *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652, 658 (1980).[9]

For these same reasons, in alleging breach of the implied contract, a student cannot rely on "bald assertions and conclusory allegations." *Ward*, 2000 WL 1448641, at *5. Rather, in order "to state a valid claim for a breach of contract, a plaintiff must state when and how the defendant

---

[9]   The good faith standard is a familiar one in the educational context since it is the standard that New York courts apply in reviewing universities' academic and disciplinary determinations in Article 78 proceedings, where "review is limited to the question of whether the challenged determination was arbitrary and capricious, irrational, made in bad faith or contrary to Constitution or statute." *Matter of Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 246 (1990); *accord Sarwar v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 150 A.D.3d 913, 914 (2d Dep't 2017).

breached the specific contractual promise." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 Civ. 704, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005); *see also, e.g.*, *Gally*, 22 F. Supp. 2d at 208.

### 2.     Plaintiffs Do Not Plausibly Plead Breach

The Complaint in this case is remarkably silent with respect to any action taken by Columbia that allegedly constituted a breach of the alleged implied agreements. On inspection, the Complaint alleges merely that the University took a few specific steps: "cancel in-person classes and change all classes to an online/remote format, close most campus buildings, and require all students who could leave campus to leave as a result of . . . COVID-19." ¶ 1; *see also* ¶ 55 (alleging that Columbia closed "on campus student facilities such as libraries and other buildings and non-essential offices").

But fatal to Plaintiffs' claims is the fact that they explicitly concede that these steps were "the right thing for [the University] to do." ¶ 2. With this concession, Plaintiffs have effectively pleaded themselves out of a breach of contract claim because they foreclose any argument that Columbia "acted in 'bad faith or in an arbitrary or irrational manner.'" *Pell*, 1998 WL 19989, at *20. And there can be no question that Plaintiffs could not have pleaded otherwise since actions taken by the University to limit the spread of a highly contagious and easily transmitted disease were obviously taken in good faith. *See, e.g.*, Centers for Disease Control and Prevention, *Interim Guidance for Administrators of U.S. Institutions of Higher Education*, https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-ihe-response.html (last updated Mar. 18, 2020).

To be sure, the Complaint alleges that Plaintiffs suffered in other ways from the supposed breach of their agreements with Columbia. But it does not allege that the University itself did anything to cause that injury or to breach those alleged agreements. For example, in challenging

15

the Student Activity, Student Life, and University Facilities Fees, Plaintiffs employ the passive voice and allege that "student events and activities *were* cancelled [and] student organizations *were* no longer operational." ¶ 45 (emphasis added). Plaintiffs do not allege that the University, as opposed to the student groups themselves, cancelled these events. Nor do they allege that it was the University that required student groups to cease operating. Similarly, in challenging the "Health and Related Services Fee," Plaintiffs contend that "students who moved home no longer had the need for or access to the various health facilities." ¶¶ 44-45; *see also* ¶ 47. But they do not allege that Columbia actually closed those facilities or stopped offering health services remotely.

The only actions actually taken by Columbia that Plaintiffs appear to challenge relate to its issuance of *pro rata* fee refunds, which Plaintiffs allege have "come with no explanation, appear[] to be arbitrary, and in any event, [are] wholly insufficient." ¶ 63. As a threshold matter, labeling a refund "arbitrary" does not make it so. *See Ward*, 2000 WL 1448641, at *5 (rejecting pleading of breach based on "bald assertions and conclusory allegations"). More fundamentally, however, the fact that Plaintiffs allege that *pro rata* fee refunds were arbitrarily calculated does not establish breach. In order to plead breach, Plaintiffs must allege that the University's failure to provide the benefits and services for which the mandatory fees were paid was in "bad faith or in an arbitrary or irrational manner." *Pell*, 1998 WL 19989, at *20 (internal quotation marks omitted). In other words, whether or not the *pro rata* refunds that Columbia voluntarily provided to students were sufficient may be relevant to the question of whether Plaintiffs have any damages, but it has no bearing on the separate question of whether the University breached its obligations in the first place.

The fact that the University acted in good faith and within its discretion in transitioning to online classes and closing non-essential campus facilities is demonstrated by *Paynter v. New York*

16

*University*, 319 N.Y.S.2d 893 (N.Y. App. Term 1971), which involved a previous instance where a university in New York canceled in-person classes. In *Paynter*, plaintiff sought a tuition refund from New York University after the university cancelled 19 days of classes due to student anti-war protests following the American invasion of Cambodia and the killings at Kent State University. *Id.* at 893; *see also Paynter v. N.Y. Univ.*, 64 Misc. 2d 226, 227 (N.Y. Civ. Ct. 1970). In rejecting plaintiff's claim for a refund, the Appellate Term acknowledged that "in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year." 319 N.Y.S.2d at 894. But the Appellate Term did not require strict compliance with any such implied contract, noting that universities "are governed on the principle of self-regulation, free to a large degree, from judicial restraints" and "have inherent authority to maintain order on their campuses." *Id.* As a result, the Appellate Term concluded that "[t]he insubstantial change made in the schedule of classes does not permit a recovery of tuition." *Id.*

*Paynter* underscores the demanding standard that courts apply in determining whether a student-university contract has been breached. Even where a university has arguably made promises to students that may be sufficiently specific and concrete to suggest a contractual obligation, the university nonetheless retains the freedom to exercise its discretion in fulfilling those obligations in light of the circumstances before it. When student anti-war protests counseled in favor of cancelling classes for nearly a month in 1970, a university could do so without breaching any implied obligation because the decision was within the university's discretion to manage its affairs and provide for the well-being of its students. Likewise, when Columbia acted to transition instruction online and close non-essential campus facilities in light of the highly contagious and potentially deadly nature of COVID-19 in 2020, the University cannot be deemed to have breached any implied contractual obligation.

17

### C.     Columbia Was Excused from Performance After March 22

Even assuming for the sake of argument that Plaintiffs could identify a specific, enforceable promise that the University breached, Columbia was nevertheless excused from performance from at least March 22, 2020 onwards—the date when Governor Cuomo's executive order and its implementing guidance prohibited universities from holding in-person classes. *See supra* at 3-4.

Under New York law, the defense of impossibility excuses a party from performing its obligations under a contract where (a) "the means of performance makes performance objectively impossible," and (b) "the impossibility [was] produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim Corp. v. Cent. Mkts.*, 70 N.Y.2d 900, 902 (1987). Under this doctrine, "a defendant may be excused from a contractual obligation where performance is impossible . . . by law.'" *Ebert v. Holiday Inn*, 628 F. App'x 21, 23 (2d Cir. 2015) (citation omitted)). To assess whether performance is "impossible . . . by law," New York courts look to whether "fulfilling the obligation assumed by the defendant was forbidden or rendered illegal by any act of the law." *Town of N. Hempstead v. Pub. Serv. Corp. of Long Island*, 107 Misc. 19, 24-25 (N.Y. Sup. Ct. 1919), *aff'd*, 192 A.D. 924 (2d Dep't 1920); *see also Studio No. 54 Disco, Inc. v. Pee Dee Jay Amusement Corp.*, 81 A.D.3d 911, 912 (2d Dep't 1981).

While the defense of impossibility is typically resolved "only after the parties have had adequate opportunity to investigate and present their evidence," *Lowenschuss v. Kane*, 520 F.2d 255, 266 (2d Cir. 1975), here, there can be no legitimate factual dispute that it was legally impossible from at least March 22 onwards for Columbia to provide "live, in-person instruction in a physical classroom." ¶¶ 82, 112. Specifically, the language of Governor Cuomo's executive orders and implementing guidance, effective March 22, 2020, was clear, requiring non-essential

18

businesses to reduce their in-person workforce by 100 percent and prohibiting private educational institutions from holding in-person classes, thereby making performance of any obligation to provide in-person instruction "forbidden or rendered illegal by an[] act of the 'law.'" *Town of N. Hempstead*, 107 Misc. at 25. Of course, the issuance of such statewide executive orders in light of COVID-19 was unanticipated in the sense that it could not have been foreseen when students paid tuition or started classes last fall. *See Kel Kim*, 70 N.Y.2d at 902. Accordingly, even assuming that the University had an implied contractual obligation to provide in-person classroom instruction and breached that obligation when it transitioned to online instruction, Plaintiffs' tuition-based claims should be dismissed on grounds of impossibility to the extent they call for the refund of any tuition paid for the period after March 22, 2020.[10]

### D.    Plaintiffs' Unjust Enrichment Claims Lack Merit

Under "well-settled principles of New York law," the existence of a contract "governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017). "Unjust enrichment may be pleaded in the alternative," *id.*; *see also* ¶¶ 115, 151, but "only where there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue," *Downey*, 238 F. Supp. 3d at 526. In this case, while Plaintiffs may disagree with the University as to the nature and scope of the "implied contract . . . formed when [Columbia] accepts a student for enrollment," *Papelino*, 633 F.3d at 93, there can be no question that such an implied contract exists under New York law and that it governs the student-university relationship, *see id.*; *see also Baldridge*, 293 A.D.2d at 943 ("The rights and obligations of the parties to this contractual

---

[10]   Restitution would also be unavailable for all the reasons stated in this brief, *see infra* at 20, including Plaintiffs' concession that Columbia acted in good faith. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

relationship flow from 'the university's bulletins, circulars and regulations made available to the student, which become a part of this contract.'").

For these reasons, courts have recognized that a student generally "cannot bring an action for unjust enrichment" against her university, *Yalincak v. N.Y. Univ.*, No. 08 Civ. 773, 2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009) (applying New York law), and that such quasi-contract claims should be dismissed when they are "indistinguishable" from what the student seeks in contract, *Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015); *see also Benham v. eCommission Sols., LLC*, 118 A.D.3d 605, 607 (1st Dep't 2014). To conclude otherwise and allow Plaintiffs to recover from Columbia on an unjust enrichment theory—despite having failed to locate a specific, enforceable promise that was breached—would create a loophole that would swallow the rule carefully developed by New York courts to protect the ability of universities to exercise discretion in managing their academic and administrative affairs. *See Gertler*, 107 A.D.2d at 485; *Maas*, 94 N.Y.2d at 93.

Plaintiffs' unjust enrichment claims would fail for the same reasons as their contract claims in any event. Unjust enrichment requires a plaintiff to "establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye*, 202 F.3d at 616; *see also Paramount Film Distr. Corp. v. State*, 30 N.Y.2d 415, 421 (1972) (noting that courts ask whether "defendant's conduct was tortious or fraudulent"). Plaintiffs allege no facts showing that the University acted outside its considerable discretion in transitioning to online instruction and closing non-essential campus facilities in light of the COVID-19 pandemic. In fact, they concede that those steps were "the right thing for [the University] to do." ¶ 2. Under these circumstances, "equity and good conscience" clearly do not require restitution, and Plaintiffs' unjust enrichment claims should be dismissed. *Kaye*, 202 F.3d at 616.

## II.     PLAINTIFFS' REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiffs also assert claims for conversion (Counts V-VI) and violation of New York G.B.L. Sections 349 ("Section 349") and 350 ("Section 350") (Counts VII-VIII). These claims should be dismissed for similar reasons.

### A.     Conversion Claims

A claim for conversion "cannot be predicated on a mere breach of contract." *Jeffers*, 125 A.D.3d at 443. Rather, in order "[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000); *see also Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 269 (1st Dep't 2003) (rejecting conversion claim where it "alleged no independent facts sufficient to give rise to tort liability" beyond those asserted in connection with contract claim). Here, Plaintiffs' conversion claims are indistinguishable from their contract claims—they call for a refund of tuition and fees premised on the same allegations. Moreover, there is no allegation of any wrongful act by Columbia that is separately actionable. Plaintiffs' conversion claims should therefore be dismissed.

### B.     Section 349 and Section 350 Claims

To state a claim under Section 349, "a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). Section 349 was intended "to empower consumers, especially the disadvantaged and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008) (internal quotation marks omitted). The "adoption of an 'objective definition of deceptive acts and practices'" by the New York courts

"was intended to avoid 'a tidal wave of litigation against businesses that was not intended by the Legislature,'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017).

While Section 349 claims have been pursued in the educational context, they have generally succeeded only where an entity that purported to be a college was in fact a sham, or otherwise was engaged in overtly fraudulent conduct. Thus, in *State v. Colorado State Christian College of Church of Inner Power, Inc.*, 346 N.Y.S.2d 482, 484 (N.Y. Sup. Ct. 1973), the court granted the New York Attorney General's application for an injunction when the defendant, which sold doctoral degrees through the mail, had no trained faculty, no formal entrance requirements, no accredited curriculum, no physical presence, and therefore did not "qualify as a college or institution of higher learning." *Id.* Similarly, in *People v. Trump Entrepreneur Initiative LLC*, 26 N.Y.S.3d 66, 68-69 (1st Dep't 2016), the New York Attorney General pursued a Section 349 claim based on the theory that Trump University was violating New York education law because it was not chartered as a university and had no license to offer instruction or training. *See also Alexson v. Hudson Valley Cmty. Coll.*, 125 F. Supp. 2d 27, 30-31 (N.D.N.Y. 2000) (recognizing Section 349 claim where there was no dispute that community college offered legitimate educational services, but where deceptive debt collection practices were not fully disclosed). No such sham or fraud theory is (or could be) pleaded by Plaintiffs against Columbia here.

Plaintiffs' Section 349 claim also fails because they do not point to any "affirmative statement made by [the University]" concerning what it would provide in exchange for tuition and fees—a fatal threshold deficiency. *Heskiaoff v. Sling Media, Inc.*, 719 F. App'x 28, 32 (2d Cir. 2017). Rather, in conclusory fashion, Plaintiffs assert that Columbia "made numerous statements, representations and omissions to the public . . . with respect to the in-person educational opportunity and on-campus experience that students who enrolled at [the University] would

receive" in exchange for tuition, along with "statements, representations and omissions to the public . . . with respect to [mandatory] fees." ¶¶ 187, 202. Plaintiffs do not otherwise identify a specific document in which the University actually stated that it would provide live, in-person instruction in a physical classroom or that it would provide certain services and benefits in exchange for fees. *See supra* at 9-10, 12-13. Nor do they identify with any specificity any of the alleged "omissions," much less allege facts showing that the University had knowledge of material information, but failed to disclose or actively concealed it. *See In re Sling Media Slingbox Advertising Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016).

Similarly, Plaintiffs' allegations that the University made numerous "statements, representations and omissions to the public . . . with respect to" tuition and fees, ¶¶ 187, 202, do not plausibly plead the "consumer-oriented" conduct that Section 349 requires, *Weisblum*, 88 F. Supp. 3d at 292. The allegations in this case differ dramatically from the case brought against New York Law School, where plaintiffs alleged that the school's recruiting materials effectively represented that nearly all of its students would get a job as a lawyer upon graduation. *See Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 17 (1st Dep't 2012); *Gomez-Jimenez v. N.Y. Law Sch.*, 36 Misc.3d 230, 240-46 (N.Y. Sup. Ct. 2012). In sharp contrast, Columbia never promised that it would never, under any circumstances, cancel in-person instruction in favor of online learning. Plaintiffs' allegations in this regard thus amount to nothing more than "conclusory allegation[s] that Columbia was 'engaged in consumer oriented conduct' and that its conduct was 'aimed at the consumer public at large.'" *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 377 (S.D.N.Y. 2017).

Finally, Plaintiffs similarly fail to allege that any of the University's purported statements or omissions were "deceptive." *See Heskiaoff*, 719 F. App'x at 32. The First Department affirmed

a trial court's dismissal of a Section 349 claim in the New York Law School case because even though the postgraduate employment statistics and salary data that it published were "incomplete" and "less than candid," a party does not violate Section 349 by "simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Gomez-Jimenez*, 956 N.Y.S.2d at 59. Here, no "reasonable consumer acting reasonably under the circumstances" could plausibly interpret a representation that certain services and benefits would be provided by Columbia in exchange for tuition and fees to include an absolute pledge to provide on-campus instruction without exception, even in the event of an unprecedented global pandemic. *See Christe v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404-05 (S.D.N.Y. 2010) ("[Section 349] requires that the alleged deceptive act be 'likely to mislead a *reasonable* consumer acting *reasonably* under the circumstances.'").[11]

*     *     *

Columbia recognizes the frustration and disappointment that many students pursuing their educations amidst the COVID-19 pandemic may be experiencing. But the courts of this State have made a considered public policy determination that educators should be free from judicial interference, except where they have made and memorialized clear promises and then breached those promises by acting arbitrarily or in bad faith. Here, Columbia never promised in-person instruction or access to on-campus facilities without regard to the health and safety of the

---

[11]   While Plaintiffs also bring claims (Counts VII-VIII) under Section 350, which relates specifically to false advertising, the "standard for recovery under [Section 350], while specific to false advertising, is otherwise identical to [S]ection 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002). Accordingly, Plaintiffs' Section 350 claims should be dismissed for the same reasons as their Section 349 claims. *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) ("Under either [Section 349 or Section 350], '[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'").

University community. And Plaintiffs themselves concede that the University acted in good faith in deciding to transition to online instruction, in accordance with Governor Cuomo's executive orders and to protect against transmission of COVID-19, a dangerous, sometimes deadly, and highly-contagious virus. As a result, there is no basis under New York law for imposing liability and the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Columbia respectfully requests that the Court dismiss the Consolidated Amended Class Action Complaint.

Dated: June 22, 2020                    Respectfully submitted,

By: _____
                                        Roberta A. Kaplan
                                        Gabrielle E. Tenzer
                                        Joshua Matz
                                        David Shieh
                                        KAPLAN HECKER & FINK LLP
                                        350 Fifth Avenue, Suite 7110
                                        New York, NY 10118
                                        212.763.0883
                                        rkaplan@kaplanhecker.com
                                        gtenzer@kaplanhecker.com
                                        jmatz@kaplanhecker.com
                                        dshieh@kaplanhecker.com