UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                    :

IN RE COLUMBIA UNIVERSITY TUITION    :     Lead Case No. 1:20-cv-03208 (JMF)
REFUND ACTION                      :

                                    :    (ORAL ARGUMENT REQUESTED)

-----------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT .........................................................................................................................5

I.      STANDARD OF REVIEW ........................................................................................5

II.     DEFENDANT IS NOT ENTITLED TO ANY SPECIAL DEFERENCE .........................5

III.    THE COMPLAINT DOES NOT ALLEGE EDUCATIONAL MALPRACTICE ............7

IV.     PLAINTIFFS HAVE PROPERLY PLED A BREACH OF CONTRACT CLAIM ..........9

        A.      Plaintiffs Have Properly Pled A Specific Enforceable Promise ............................10

        B.      Plaintiffs Have Properly Pled That Defendant Breached The
                Contract ..................................................................................................................14

        C.      The Doctrine Of Impossibility Does Not Entitle Defendant To
                Keep All Monies Paid By Plaintiffs .......................................................................16

        D.      Plaintiffs Have Properly Pled A Claim For Unjust Enrichment ............................18

V.      PLAINTIFFS' REMAINING CLAIMS SHOULD NOT BE
        DISMISSED ................................................................................................................20

        A.      Plaintiffs Have Properly Pled A Claim For Conversion ........................................20

        B.      Plaintiffs Sufficiently Pled That Defendant Violated GBL § 349
                and § 350 ..................................................................................................................21

                (1)     Plaintiffs Have Properly Pled Consumer-Oriented Conduct ....................22

                (2)     Plaintiffs Have Properly Pled That Such Consumer Oriented Conduct
                        Was Materially Misleading ........................................................................23

                (3)     Plaintiffs Have Properly Pled Injury ........................................................24

CONCLUSION ......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Ackerman v. Coca-Cola Co.</u>
 CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156 (S.D.N.Y. July 21, 2010).......24

<u>Ancile Investment Co. Ltd. v. Archer Daniels Midland Co.</u>
 784 F. Supp. 2d 296 (S.D.N.Y. 2011)................................................................................12

<u>Ansari v. New York University</u>
 96 Civ. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997) ..................... 1, 8-9, 16

<u>Ashcroft v. Iqbal</u>
 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................................................5

<u>Babiker v. Ross Univ. Sch. of Med.</u>
 No. 98 CIV 1429 THK, 2000 WL 666342 (S.D.N.Y. May 19, 2000) ....................... 14-15

<u>Bailey v. N.Y. Law Sch.</u>
 16 Civ. 4283 (ER), 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017).......................................25

<u>Bell Atl. Corp. v. Twombly</u>
 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................................5

<u>Bierer v. Glaze, Inc.</u>
 No. CV-05-2459 (CPS), 2006 U.S. Dist. LEXIS 73042 (E.D.N.Y. Oct. 6, 2006)............17

<u>Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.</u>
 373 F.3d 296 (2d Cir. 2004)...............................................................................................18

<u>Brown Bros. Electrical Contractors, Inc. v. Beam Constr. Corp.</u>
 41 N.Y.2d 397, 393 N.Y.S.2d 350 (1977) ........................................................................10

<u>Buonasera v. Honest Co., Inc.</u>
 208 F. Supp. 3d 555 (S.D.N.Y. 2016).................................................................................23

<u>Carrillo v. Wells Fargo Bank NA</u>
 No. 18-CV-3095 (SJF) (SIL), 2019 U.S. Dist. LEXIS 80634, (E.D.N.Y. May 10, 2019),
 <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2019 U.S. Dist. LEXIS 141227 (E.D.N.Y. Aug. 20,
 2019) ...................................................................................................................................23

<u>Chais v Technical Career Insts.</u>
 2002 N.Y. Misc. LEXIS 2086, 2002 NY Slip Op 30082[U] (Sup. Ct., NY Cty Mar. 1
 2002) ............................................................................................................................. 22-23

Clarke v. Trs. of Columbia Univ. of City of New York
      No. 95 Civ. 10627 (PKL), 1996 U.S. Dist. LEXIS 15620 (S.D.N.Y. Oct. 23, 1996) .........9

Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.
      70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987) .......................................................................19

Dasrath v. Ross Univ. Sch. of Med.
      494 Fed. Appx. 177 (2d Cir. 2012)....................................................................................9

Duran v. Henkel of America, Inc.
      2020 WL 1503456 (S.D.N.Y. Mar. 30, 2020) ..................................................... 21, 23-24

Ebin v. Kangadis Food Inc.
      No. 13-CV-2311, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 11, 2013) ..................24

Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.
      375 F.3d 168 (2d Cir. 2004)...............................................................................................9

407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.
      23 N.Y.2d 275, 296 N.Y.S.2d 338 (1968) ................................................................. 16-17

Gally v. Columbia Univ.
      22 F. Supp. 2d 199 (S.D.N.Y. 1998)................................................................................10

Genet v. President of Del. & Hudson Canal
      136 N.Y. 593 (1893) .........................................................................................................13

Georgia Malone & Co. v. Rieder
      19 N.Y.3d 511, 950 N.Y.S.2d 333 (2012) .......................................................................18

Gertler v. Goodgold
      107 A.D.2d 481, 487 N.Y.S.2d 565 (1st Dep't 1985) ......................................................13

Gomez-Jimenez v New York Law Sch.
      103 A.D.3d 13, 956 N.Y.S.2d 54 (1st Dep't 2012) .........................................................22

Habitzreuther v. Cornell Univ.
      No. 14-cv-1229, 2015 U.S. Dist. LEXIS 112209 (N.D.N.Y. Aug. 25, 2015) ....................9

Health-Chem. Corp. v. Baker
      737 F. Supp. 770 (S.D.N.Y.), aff'd, 915 F.2d 805 (2d Cir. 1990)....................................17

In re Scotts EZ Seed Litig.
      304 F.R.D. 397 (S.D.N.Y. 2015) .....................................................................................23

Lazaroff v. Paraco Gas Corp.
        38 Misc. 3d 1217[A], 967 N.Y.S.2d 867 (Sup. Ct. Kings Cty 2011) ........................ 24-25

Leibowitz v. Cornell Univ.
        584 F.3d 487 (2d Cir. 2009)...................................................................10, 12

Lowenschuss v. Kane
        520 F.2d 255 (2d Cir. 1975).........................................................................17

Kaye v. Grossman
        202 F.3d 611 (2d Cir. 2000)..........................................................................17

Klinge v. Ithaca Coll.
        244 A.D.2d 611, 663 N.Y.S.2d 735 (3rd Dep't 1997).......................................6

Koch v. Acker, Merrall & Condit Co.
        18 N.Y.3d 940, 944 N.Y.S.2d 452 (2013) .......................................................21

Koenig v. Boulder Brands, Inc.
        995 F. Supp. 2d 274 (S.D.N.Y. 2014)..............................................................24

Manufacturers Hanover Trust Co. v. Chemical Bank
        160 A.D.2d 113, 559 N.Y.S.2d 704 (1st Dep't 1990) .......................................20

Maurizio v. Goldsmith
        230 F.3d 518 (2d Cir. 2000)...........................................................................21

Maas v. Cornell Univ.
        94 N.Y.2d 87, 699 N.Y.S.2d 716 (1999) ..............................................5-6, 12-13

New York Univ. v. Cont'l Ins. Co.
        87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) .......................................................22

Olsson v. Bd. Of Higher Ed.
        49 N.Y.2d 408, 426 N.Y.S.2d 248 (1980) ...................................................6, 14

O'Neill v. New York Univ.
        97 A.D.3d 199, 944 N.Y.S.2d 503 (1st Dep't 2012) ....................................6, 16

Orlander v. Staples, Inc.
        802 F.3d 289 (2d Cir. 2015)...........................................................................21

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank
        85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) .........................................................22

iv

Paladino v. Adelphi University
    89 A.D.2d 85, 454 N.Y.S.2d 868 (2nd Dep't 1982) .......................................................1, 7

Papaspiridakos v. Educ. Affiliates, Inc.
    No. 10-cv-5628-RJD, 2013 U.S. Dist. LEXIS 129748 (E.D.N.Y. Sept. 11, 2013), aff'd,
    580 Fed. Appx. 17 (2d Cir. 2014) .....................................................................................10

Papelino v. Albany Coll. of Pharm. of Union Univ.
    633 F.3d 81 (2d Cir. 2011) ......................................................................................6, 12, 14

Paynter v. New York University
    319 N.Y.S.2d 893 (N.Y. App. Term 1971) .......................................................................15

Pearson v. Walden Univ.
    144 F. Supp.3d 503 (S.D.N.Y. Jan 21, 1998) ...................................................................15

Pelman ex rel. Pelman v. McDonald's Corp.
    396 F.3d 508 (2d Cir 2005) .........................................................................................21, 25

Radin v. Albert Einstein Coll. Of Med. Of Yeshiva Univ.
    No. 04 Civ. 704, 2005 WL 1214281 (S.D.N.Y. May 20, 2005) .......................................15

Rodriguez v. New York University
    No. 05 Civ. 704, 2005 WL 1214281 (S.D.N.Y. Jan 16, 2007) .........................................15

Sirohi v. Lee
    222 A.D.2d 222, 634 N.Y.S.2d 119 (1st Dep't 1995) .........................................................7

Spagnola v. Chubb Corp.
    574 F.3d 64 (2d Cir. 2009) ................................................................................................25

Superintendent of Ins. v. Ochs
    377 F.3d 209 (2d Cir. 2004) ..............................................................................................19

Susan M. v. New York Law Sch.
    76 N.Y.2d 241, 557 N.Y.S.2d 297 (1990) ..........................................................................7

Stutman v. Chem. Bank
    95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000) ..........................................................................23

Tedeschi v. Wagner Coll.
    49 N.Y.2d 652, 427 N.Y.S.2d 760 (1980) ................................................................... 15-16

Thys v. Fortis Securities LLC
    74 A.D.3d 546, 903 N.Y.S.2d 368 (1st Dep't 2010) ........................................................20

Torres v. Little Flower Children's Servs.
        64 N.Y.2d 119, 485 N.Y.S.2d 15 (1984) ...........................................................7

Village Community School v. Adler
        124 Misc.2d 817, 478 N.Y.S.2d 546 (Civ. Ct. 1984) .............................1, 12, 16

Ward v. New York Univ.
        No. 99 CIV. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)........................... 14-15

Wilson v. Nw. Mut. Ins. Co.
        625 F.3d 54 (2d Cir. 2010)..............................................................................22

Yalincak v. New York Univ.
        No. 3:08cv773 (PCD), 2009 WL 10714654 (D. Conn. Sept. 3, 2009)...................... 19-20

Yu v. Vassar Coll.
        97 F. Supp. 3d 448 (S.D.N.Y. 2015)...............................................................10

## STATUTES AND RULES

N.Y. CPLR Article 78.......................................................................................... 5-6, 14

N.Y. GBL § 349.................................................................................................... 20-25

N.Y. GBL § 350.................................................................................................... 20-25

FRCP Rule 8(a)........................................................................................................21, 25

FRCP Rule 9(b).......................................................................................................21

## SECONDARY SOURCES

1 Williston, Contracts § 1:5, at 20 [4th ed 1990].........................................................13

Restatement (Second) of Contracts § 4................................................................... 12-13

Restatement (Third) of Restitution and Unjust Enrichment § 1 (Am. Law Inst. 2011) ...............17

Plaintiffs Student A, Chris Riotta, Lisa Guerra and Alexandra Taylor-Gutt ("Plaintiffs") submit this Memorandum in Opposition to Defendant's Motion to Dismiss (ECF 35 and 36) ("MTD")[1] and respectfully request that the motion be denied for the reasons set forth below.

## PRELIMINARY STATEMENT

Contrary to Defendant's contentions, universities do not get special treatment with respect to commercial transactions in the public marketplace.  They are not subject to their own special set of laws, nor immune from basic contractual principles simply by virtue of their status as academic institutions.  Defendant essentially argues that, in all instances, a university like Columbia is entitled to do as it pleases without legal repercussion, because it is entitled to vast deference from the Court.  In this vein, Defendant creates its own unique standard, suggesting that it can never make an enforceable contractual promise absent a showing of some overwhelming specificity, which Defendant insinuates can almost never be satisfied.  Likewise, Defendant argues that because it is an academic institution, it cannot be liable for breaching a contract unless it is found to have done so arbitrarily or in bad faith.  This is simply not the law with respect to a university's commercial activities.[2]

It is true that a university is entitled to judicial deference with respect to matters involving purely academic judgment.  However, this deference does not extend broadly to all decisions or actions by universities.  Universities are not entitled to such deference in basic transactions not involving academic judgment.  For example, if a university contracts to sell one of its buildings

---

[1] Defendant filed the operative Motion to Dismiss (ECF 35 and 36) against Plaintiffs' Consolidated Amended Class Action Complaint (ECF 30).  Subsequently, Plaintiffs filed a Consolidated Second Amended Class Action Complaint ("SAC" or "Complaint") (ECF 42).  Defendant thereafter rested on the previously filed Motion to Dismiss.  Citations to "¶" herein shall refer to paragraphs in the SAC (ECF 42). Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Complaint.

[2] New York courts have held that a student can sue a school for breach of contract.  See Paladino v. Adelphi University, 89 A.D.2d 85, 92, 454 N.Y.S.2d 868, 873 (2nd Dep't 1982); Ansari v. New York University, 96 Civ. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997); Village Community School v. Adler, 124 Misc.2d 817, 478 N.Y.S.2d 546 (Civ. Ct. 1984).

1

and then reneges on the deal, the putative buyer is not required to prove that the university acted arbitrarily or in bad faith in a breach of contract action.

Here, Plaintiffs' claims are plainly not academic in nature, but rather commercial, based on fundamental principles of contract law. The Complaint does not take issue with the specific ways that individual professors elected to teach their classes once remote learning was mandated. Plaintiffs do not suggest, for example, that classes should have been taught for a longer period online, or that the content of lesson plans should have been adjusted. Rather, Plaintiffs paid a large amount of money to Defendant (often by taking on onerous student debt) to purchase an on-campus educational experience with multiple benefits, services, experiences and opportunities.

Once the switch to online learning was mandated, not even the most venerated professor exercising the best academic judgment could have given his or her students what they were deprived of and that which forms the basis of this lawsuit – the on-campus experience for which they bargained and paid handsomely, including interaction with other students, the use of Defendant's infrastructure, buildings, libraries, labs, computers, movie cameras, etc. in the particular student's chosen discipline. Plaintiffs, like all parties to a contract, are entitled to receive the benefit of their bargain. The denial and deprivation of the rights, privileges and in-person education afforded students of Defendant for the past 250+ years was a breach of the agreement between Plaintiffs and Defendant. Defendant intended for the students to rely upon the promises Defendant made as part of its offers of admission and the students did, in fact, rely upon Defendant's offers, to their detriment.

In fact, Defendant offers two separate and distinct products. One product is an online-only degree program. The other product is an on-campus, in-person degree program, each offered on separate web sites. Defendant markets these as separate and distinct products, which it regulates

2

and manages differently. Plaintiffs purchased the on-campus product and paid the on-campus price. In return, Defendant agreed to provide the students with the on-campus experience touted in myriad instances throughout Defendant's literature. Instead, Defendant provided students with the completely different online product affording none of the benefits of the on-campus experience. Irrespective of the differences in academic quality between the two, there is no dispute that the products are simply different and not what Plaintiffs bargained and paid for. When Defendant offered the on-campus product and Plaintiffs accepted the offer and paid tuition and fees for the same, Plaintiffs were entitled to receive numerous benefits and experiences that have nothing to do with the quality of the education, including those specified in ¶ 27 of the Complaint. Defendant did not provide Plaintiffs with the services that it enthusiastically marketed to the public in order to distinguish its unique array of offerings from other competitors, even though Plaintiffs bargained and paid for them. Defendant refused to issue appropriate refunds and insists that Plaintiffs should bear 100% of the loss. Fortunately, the law does not protect such conduct.

## BACKGROUND

Plaintiffs were enrolled as students at Defendant's institution for the Spring semester of Defendant's 2019-20 academic year. ¶¶ 11-14. Defendant is a university that offers both in-person, hands-on degree programs and fully online distance learning degree programs. ¶ 24. Plaintiffs chose to attend Defendant's on-campus program relying upon all of the offers of services that Defendant promised to provide in consideration of Plaintiffs' enrollment. ¶ 25.

Defendant promised that upon registration and payment of tuition and fees, students were entitled to "the full rights and privileges of student status." ¶¶ 83, 85. One such right was access to the campus, and to enjoy the facilities, services, equipment, and opportunities provided thereon, including the campus' location and surrounding opportunities within New York City. ¶ 88. In

defining this right, among many other statements and promises alleged throughout the Complaint, Defendant promised that "you are living in New York City!  Students also find New York to be an incredible extended classroom" ¶ 103; "going to Columbia gives you a kind of dual citizenship – you are a Columbian and a New Yorker" ¶ 104; "Columbia is an in-person kind of place" ¶ 104; and "we hope you enjoy imagining yourself joining us in Morningside heights." ¶ 122.  Defendant acknowledged that "undeniably, many students choose Columbia for its location." ¶ 118.

In addition to tuition, Defendant charged substantial mandatory fees. ¶ 30.  These included a University Facilities Fee, a Student Life Fee, a Student Activity Fee, and a Health and Related Services Fee.  Id. The Student Life Fee and University Facilities Fee were specifically promised to "provide students access to the facilities at the Dodge Physical Fitness Center and Lerner Hall, and library and computer network privileges."  ¶¶ 179, 181.  The Health and Related Services Fee was specifically promised to provide "access [to] to the programs and services provided through Columbia Health's five departments." ¶ 182.

Plaintiffs paid all required tuition and fees for the Spring 2020 semester.  ¶ 21.  However, on March 9, 2020, Defendant suspended all in-person classes, resuming classes in an online-only format on March 12, 2020.  This continued through the remainder of the semester. ¶ 52.  On March 15, 2020, Defendant closed all on-campus student facilities, and announced students needed to vacate entirely by March 17, 2020.  ¶¶ 54, 55.  Plaintiffs were thus deprived of the benefit of their agreement to receive an on-campus product, upon which they relied and for which they paid tuition and fees, for approximately 55% of the spring 2020 semester. ¶ 59.  Defendant has refused to reduce or refund the pre-paid tuition accordingly. ¶ 61.  Likewise, while Defendant has admitted that it is required to refund certain mandatory fees, it has only refunded 10-11% of such fees, rather than the full pro-rated 55%. ¶¶ 64, 65.  This action seeks refunds of such tuition and fees. ¶ 4.

4

<u>**ARGUMENT**</u>

**I.      STANDARD OF REVIEW**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

**II.     DEFENDANT IS NOT ENTITLED TO ANY SPECIAL DEFERENCE**

Defendant argues that educational institutions are automatically entitled to great deference and/or subject to their own special set of rules.  While it is true that such deference is due in certain instances pertaining to specialized educational judgment, this deference does not apply in the commercial context to any and all contract or tort claims that may ever be brought against such an institution, as Defendant contends.

Defendant relies on <u>Maas v. Cornell Univ.</u>, 94 N.Y.2d 87, 699 N.Y.S.2d 716 (1999), arguing that "New York Courts have long recognized that courts 'retain a restricted role in dealing with and reviewing controversies involving colleges and universities.'" <u>See</u> MTD at 6.  However, such a blanket generalization is inaccurate and misleading.  <u>Maas</u> involved a professor's dispute over his employment contract with the University.   The professor alleged a breach of his employment contract related to certain disciplinary actions taken against him by the school, specifically with respect to sexual harassment accusations that had been leveled against him by four students. The New York Court of Appeals ruled that the action should have been brought as a CPLR Article 78 proceeding.  <u>Maas</u>, 94 N.Y.2d at 92, 699 N.Y.S.2d at 719 ("In these so-called 'university' cases, CPLR article 78 proceedings are the appropriate vehicle because they ensure that the over-all integrity of the educational institution is maintained and, therefore, protect more

than just the individual's right to employment) (citing <u>Klinge v. Ithaca Coll.</u>, 244 A.D.2d 611, 613, 663 N.Y.S.2d 735, 736 (3rd Dep't 1997)).

Indeed, many of the cases cited by Defendant are entirely inapplicable because they relate only to Article 78 proceedings.  <u>See</u>, <u>e.g.</u>, <u>Olsson v. Bd. Of Higher Ed.</u>, 49 N.Y.2d 408, 426 N.Y.S.2d 248 (1980); and <u>Papelino v. Albany Coll. of Pharm. of Union Univ.</u>, 633 F.3d 81 (2d Cir. 2011).  Article 78 proceedings apply a different, heightened, and deferential standard that is not applicable here.  The <u>Olsson</u> Court defended this deference as follows:

> This judicial reluctance to intervene in controversies involving academic standards is founded upon sound considerations of public policy. When an educational institution issues a diploma to one of its students, it is, in effect, certifying to society that the student possesses all of the knowledge and skills that are required by his chosen discipline. In order for society to be able to have complete confidence in the credentials dispensed by academic institutions, however, it is essential that the decisions surrounding the issuance of these credentials be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis.

<u>Olsson</u>, 29 N.Y.2d 408 at 413, 426 N.Y.S.2d at 251.  In order to prevail in an Article 78 proceeding, or other action challenging the exercise of highly specialized academic discretion, a plaintiff must prove that the institution exercised its discretion in an arbitrary and irrational fashion.  <u>Id.</u>

However, in cases that do not involve the university's exercise of academic or specialized discretion, like in this case, the institution is entitled to no more deference than any other defendant.  <u>See</u> <u>O'Neill v. New York Univ.</u>, 97 A.D.3d 199, 212, 944 N.Y.S.2d 503, 514 (1st Dep't 2012) ("[a]lthough <u>Maas</u> noted that courts retain a limited role in reviewing 'highly specialized' academic judgments, that kind of action is not at issue in this case.  Rather, petitioner's allegations concern NYU's failure to follow its conduct and disciplinary policies and not any 'highly specialized' judgment associated with the research he and his colleagues were conducting in the Vaccine Lab.").

In sum, the deference granted to educational institutions in certain matters is plainly not as broad or all-encompassing as Defendant contends. Instead, such deference is granted only in cases involving highly specialized academic judgments. The decision to retain monies paid for products and services that were never delivered is a standard commercial business decision, and one encountered by all market participants who take money in return for the promise to deliver services and/or products. Defendant's decision to retain such monies in this case was not academic in nature and clearly not a highly specialized academic judgment. It was, however, illegal and unjust.

## III.      THE COMPLAINT DOES NOT ALLEGE EDUCATIONAL MALPRACTICE

The other cases[3] cited by Defendant with respect to deferential treatment toward academic institutions involve claims of pure educational malpractice which are not advanced in this action.[4] "Strong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance." Susan M. v. New York Law Sch., 76 N.Y.2d 241, 245, 557 N.Y.S.2d 297, 299 (1990). "[I]nstitutional assessments of a student's academic performance, whether in the form of particular grades received or actions taken because a student has been judged to be scholastically deficient, necessarily involve academic determinations requiring the special expertise of educators." Id.

Every action by a student against a school, however, is not an educational malpractice claim. Where the breach of contract claim does not ask the court to "evaluate the course of instruction" or allege that "that the school breached its agreement by failing to provide an effective education," but instead alleges failure to provide specified services, the action may be properly maintained. Paladino v. Adelphi Univ., 89 A.D.2d 85, 454 N.Y.S.2d 868 (2nd Dep't 1982).

---

[3] Torres v. Little Flower Children's Servs., 64 N.Y.2d 119, 485 N.Y.S.2d 15 (1984) and Sirohi v. Lee, 222 A.D.2d 222, 634 N.Y.S.2d 119 (1st Dep't 1995).
[4] In fact, Plaintiffs' Complaint expressly disclaims a claim of educational malpractice: "This cause of action does not seek to allege 'academic malpractice.'" ¶ 149.

Such was the case in <u>Ansari v. New York University</u>, 96 Civ. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997).  In <u>Ansari</u>, the court determined that promotional literature and written and oral communications between defendant and plaintiff comprised the terms of a contract and were the equivalent of promises that bound the university.  <u>Id.</u> These materials included promises to provide state-of-the-art-facilities, hands-on training, and program activities from 9:00am to 4:00pm every day.  <u>Id.</u>, at *3.  The plaintiff alleged that the defendant failed to deliver the hands-on training and facilities promised.  Defendant argued that it delivered substantially what it promised and the deviations alleged by plaintiff were insubstantial.  <u>Id.</u>  The court correctly determined that neither the court nor the jury were required to review any educational decisions because the fact-finding was limited to whether the promises represented by the institution were provided, and denied the motion to dismiss.  <u>Id.</u>

Just as in <u>Ansari</u>, Plaintiffs' claims in the present case do not allege educational malpractice.  ¶¶ 149, 169.  Rather, as set forth more fully herein, Plaintiffs allege that they paid tuition and fees in exchange for the full rights and privileges of on-campus student status at Defendant's University. ¶ 82.  Plaintiffs allege that such rights included the right to access campus buildings, participate in campus activities, receive hands-on training and face-to-face instruction, and numerous other services and opportunities, as promised by Defendant.  ¶¶ 27, 102-104.  It is undisputed that Defendant failed to provide these things during the majority of the Spring 2020 semester, and instead provided Plaintiffs with on-line remote learning devoid of any campus experience, which Defendant acknowledges is a materially different product.   Plaintiffs' allegations in no way ask the Court to review the educational decisions made by Defendant.

## IV.    PLAINTIFFS HAVE PROPERLY PLED A BREACH OF CONTRACT CLAIM

A claim for breach of contract must allege facts which show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." Habitzreuther v. Cornell Univ., No. 14-cv-1229, 2015 U.S. Dist. LEXIS 112209, at *14 (N.D.N.Y. Aug. 25, 2015) (quoting Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)).[5]   In cases finding a viable breach of contract action, "the services identified were specifically designated and discrete promises," such as the provision of a designated number of hours of instruction, state of the art facilities, or supervision by field supervisors.  See, e.g., Clarke v. Trs. of Columbia Univ. of City of New York, No. 95 Civ. 10627 (PKL), 1996 U.S. Dist. LEXIS 15620 (S.D.N.Y. Oct. 23, 1996) (field supervisor); Ansari, supra, 1997 WL 257473 S.D.N.Y. May 12, 1997) (designated number of hours of instruction).

Here, Plaintiffs have shown the existence of an agreement (¶¶ 148,183); that Plaintiffs have adequately performed their obligations under the agreement (¶¶ 151, 185); that Defendant breached the agreement (¶¶ 152, 186); and that Plaintiffs and the putative classes have suffered damages (¶¶ 155, 195).

Defendant contends that Plaintiffs' contractual claims should be dismissed for three reasons: (1) the Complaint fails to plead a specific, enforceable promise; (2) the Complaint fails to plead breach; and (3) Defendant is protected by the doctrine of impossibility.  See MTD at p. 4. Defendant also contends that Plaintiffs' alternative unjust enrichment claims should be dismissed for the exact same reasons.  Id.  As demonstrated below, Defendant's arguments are without merit.

---

[5] Further, under New York law, "when a student is admitted to a school, an implied contract arises between the student and the school."  Dasrath v. Ross Univ. Sch. of Med., 494 Fed. Appx. 177, 178 (2d Cir. 2012) (summary order) (internal quotation marks omitted).  The contract's terms "are supplied by the bulletins, circulars and regulations made available to the student."  Id. (internal quotation marks omitted).

## A.      **Plaintiffs Have Properly Pled A Specific Enforceable Promise**

"In New York, the relationship between a university and its students is contractual in nature."  Yu v. Vassar Coll., 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015) (quoting Papaspiridakos v. Educ. Affiliates, Inc., No. 10-cv-5628-RJD, 2013 U.S. Dist. LEXIS 129748, at *9 (E.D.N.Y. Sept. 11, 2013), aff'd, 580 Fed. Appx. 17 (2d Cir. 2014)).  "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound."  Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009).

> In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.

Id. at 787-88 (quoting Brown Bros. Electrical Contractors, Inc. v. Beam Constr. Corp., 41 N.Y.2d 397, 399-400, 393 N.Y.S.2d 350, 352 (1977)).

Defendant first contends that it is subject to a special heightened standard with respect to contract formation.  However, none of the cases cited by Defendant hold that the standard for forming a contract with a university is any different than with any other commercial party.

Of course, the general elements of contract formation must still be met.  The plaintiff must still properly allege the existence of a contract and its terms.  Defendant cites to a number of cases where this basic threshold was not met and the complaints were dismissed.[6]  However, none of these cases establish a heightened pleading standard and none is required here.  Defendant attempts

---

[6] See, e.g., Gally v. Columbia Univ., 22 F. Supp. 2d 199, 204 (S.D.N.Y. 1998), in which a disgruntled student alleged that the school "looked the other way" to other students' cheating which "deeply offended and upset" her and that she failed a certain examination (for the third time) because her professor had a "middling command of English and [had] difficulty in framing clear and coherent questions."  This action was correctly dismissed, not because it failed to meet some heightened and "demanding" standard for contract formation, but because it failed to meet even the most basic and rudimentary standards for contract formation.

to create a new standard of contract formation for itself by contending, without support, that students are required to meet its self-created special "demanding requirement" "to allege specific promises in specific documents." See MTD at p. 10.  Such attempt is without merit.

Regardless, Plaintiffs' Complaint contains 59 paragraphs (or sub-paragraphs) directly quoting numerous specific promises made by Defendant.  Among them, Defendant promised Plaintiffs and members of the proposed Tuition Class that it would: (i) provide enrolled students full rights and privileges of student status (¶ 85); (ii) provide four years of alternation between [Manhattan and Columbia] (¶ 98); (iii) allow students to hold on-campus jobs and pursue internships in the city (¶ 103); (iv) provide education in New York City and access to internships (¶ 103); (v) provide access to more than 200 research institutes and centers, including a wide range of world-class laboratories (¶ 103); (vi) provide research opportunities in labs, partnerships in New York City, and global field work (¶ 103); (vii) challenge and develop abilities of admitted students on campus (¶ 111); and (viii) provide an interdisciplinary and hands-on approach to modern education (¶ 117).  In sum, as Defendant represented, "Columbia is an in-person kind of place." ¶ 104.

Likewise, Defendant made specific promises to Plaintiffs and members of the proposed Fees Class.[7]  For example, Defendant promised that it would: (i) provide students access to the facilities at the Dodge Physical Fitness Center and Lerner Hall, and support enhancements for the libraries and computer networks (¶ 41); (ii) support student activities (¶ 42); (iii) help cover the costs of student events, activities, and help fund student organizations (¶ 43); (iv) provide access to the programs and services provided through Columbia Health's five departments, including 24/7

---

[7] These fees were not paid for the education provided by Defendant, but for separate services, access, and programs not covered by tuition.

support from Counseling and Psychological Services, Medical Services, and Sexual Violence Response (¶ 44); and (v) provide services for program and course specific fees (¶ 40).

Defendant ignores these specific promises and contends that a contractual relationship can never be implied through spoken words, actions, or course of dealing, which is plainly not an accurate reflection of the law.  "[A]n implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree. The terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student." Papelino v. Albany College of Pharm. of Union Univ., 633 F.3d 81, 93 (2d Cir. 2011) (internal quotation marks and citations omitted).  Likewise, an implied contract is formed when it can be inferred from the parties' conduct.  See Ancile Investment Co. Ltd. v. Archer Daniels Midland Co., 784 F. Supp. 2d 296, 303 (S.D.N.Y. 2011) ("[C]ourts will also find a contract 'implied in fact' based on 'inference from the facts and circumstances of the case, . . . derived from the presumed intention of the parties as indicated by their conduct.'") (quoting Leibowitz, supra, 584 F.3d at 506-07).  An implied-in-fact contract is "as binding as one that is express, and similarly 'requires such elements as consideration, mutual assent, legal capacity and legal subject matter." Leibowitz, 584 F.3d at 507 (quoting Maas, supra, 94 N.Y.2d at 94, 699 N.Y.S.2d 716 at 720).

In Village Community School v. Adler, 124 Misc.2d 817, 478 N.Y.S.2d 546 (Civ. Ct. 1984), the court refused to dismiss Adler's counterclaim for breach of contract that was based on oral representations from the school's agents.  Likewise, in Maas, the New York Court of Appeals acknowledged that a contract "may be stated in words either oral or written, or may be inferred wholly or partly from conduct," though it ultimately found that such inference was not reasonable in that case.  Maas, supra, 94 N.Y.2d at 93, 699 N.Y.S.2d at 719 (quoting Restatement (Second)

of Contracts § 4).  The <u>Maas</u> Court noted "[a]n implied-in-fact contract would arise from a mutual agreement and an 'intent to promise, when the agreement and promise simply have not been expressed in words'" <u>Id.</u> (quoting 1 Williston, Contracts § 1:5, at 20 [4th ed 1990]).

As Defendant concedes, promises may be implied "where [the court] may rightfully assume that it would have been made if attention had been drawn to it . . . and that it is to be raised only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate they intended to effect." <u>Gertler v. Goodgold</u>, 107 A.D.2d 481, 485, 487 N.Y.S.2d 565, 568 (1st Dep't 1985) (quoting <u>Genet v. President of Del. & Hudson Canal</u>, 136 N.Y. 593, 609 (1893)).  There is no doubt here that the parties unequivocally had a meeting of the minds for students to take classes in person and have the many benefits of access to Defendant's physical campus for the entire semester.  This is clear not only from the specific statements above, but also from the parties' prior course of conduct.  As noted in ¶¶ 136-140 of the Complaint, Plaintiffs showed up for in-person classes, and otherwise had access to campus facilities and services, every day for the weeks and months leading up to the time that they were evicted from campus. Regardless, even assuming *arguendo* there was no specific promise, the Court should rightfully assume that an implied contract exists because Defendant would have made the specific promise had attention been drawn to it.  It would be highly disingenuous for Defendant to suggest that, prior to COVID-19, their official response to students asking if classes were provided in-person or whether a student was permitted access to campus facilities would have been "no."  Indeed, prior to COVID-19, physical attendance at class, for example, was *required* of most students. ¶ 139.

Moreover, this action also seeks to prevent a manifest inequity.  Despite its large endowment, government funding and cost savings by closing its campus, Defendant contends that

13

the students, many of whom undertook significant student debt to pay Defendant tens or hundreds of thousands of dollars, should be deprived of what they paid for and bear all of the loss.

### B.   Plaintiffs Have Properly Pled That Defendant Breached The Contract

Defendant next argues that, even if there were a contract, the Complaint does not "plausibly" plead a breach.   To the contrary, Plaintiffs have more than "plausibly" pled that Defendant kept 100% of the money it was paid for on-campus and in-person services and products, for which it only delivered 45%.  ¶ 59.  Nothing more needs to be pled.

Undaunted, Defendant again makes its case for another special contract standard, contending that "unlike in the commercial context, in assessing whether a plaintiff has adequately pleaded breach of an implied contract in the university context, courts do not require literal or even material compliance.   Instead, they look to whether the university 'acted in bad faith or in an arbitrary or irrational manner.'"  See MTD at 13.  Defendant's contentions that a "bad faith" standard is applicable to all contract actions against a university are plainly without merit.

The cases cited by Defendant on this point do not support Defendant's contentions.  As discussed in Section II, supra, the bad faith standard is only applicable in Article 78 proceedings and cases involving the subjective judgment of professional educators.  For example, Defendant cites Olsson and Papelino, supra, which are Article 78 cases, and not applicable to the present case. Likewise, Defendant cites Babiker v. Ross Univ. Sch. of Med., No. 98 CIV 1429 THK, 2000 WL 666342 (S.D.N.Y. May 19, 2000),[8] and Ward v. New York Univ., No. 99 CIV. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)[9] in which this Court applied the bad faith standard after finding

---

[8] Babiker involved a medical student that was terminated from enrollment.  Among other causes of action, the plaintiff alleged that he was unjustly dismissed in violation of the defendant's rules and regulations.
[9] Ward likewise involved a student who was terminated from enrollment.

that the claims involved "academic standards" involving the subjective judgment of professional educators. <u>Babiker</u>, 2000 WL 666342, at *6; <u>Ward</u>, 2000 WL 1448641, at *3.

The remaining cases cited by Defendant – <u>Rodriguez</u>,[10] <u>Pearson</u>,[11] and <u>Radin</u>[12] – are equally inapplicable. These cases were not dismissed for failure to prove bad faith. Rather, the claims in these cases were dismissed for failure to establish contractual terms in the first instance, with the courts holding that the breach of contract claims were "mere allegations of mistreatment." <u>Rodriguez</u>, 2005 WL 1214281, at *4-6; <u>Pearson</u>, 144 F. Supp.3d at 511,[13] <u>Radin</u>, 2005 WL 1214281, at *11.[14] Likewise, Defendant's reliance on <u>Paynter v. New York University</u>, 319 N.Y.S.2d 893 (N.Y. App. Term 1971), a five decades old small claims case involving a judgment and not a motion to dismiss, is equally misplaced.[15] To the contrary, courts around the country dealing with nearly identical actions have recently denied motions to dismiss on the grounds raised by Defendant here. <u>See</u>, <u>e.g.</u>, **Exhibits A & B.**

Indeed, <u>Tedeschi v. Wagner Coll.</u>, 49 N.Y.2d 652, 427 N.Y.S.2d 760 (1980), a case cited by Defendant, directly contradicts Defendant's position that the bad faith standard must *always* be applied in university cases. In <u>Tedeschi</u>, the New York Court of Appeals aptly notes, "when urged

---

[10] <u>Rodriguez v. New York University</u>, No. 05 Civ. 704, 2005 WL 1214281 (S.D.N.Y. Jan 16, 2007) (a *pro se* plaintiff that alleged discrimination in disciplinary decisions).

[11] <u>Pearson v. Walden Univ.</u>, 144 F. Supp.3d 503 (S.D.N.Y. Jan 21, 1998) (a *pro se* student that alleged that it took her too long to graduate because her professors were unresponsive).

[12] <u>Radin v. Albert Einstein Coll. Of Med. Of Yeshiva Univ.</u>, No. 04 Civ. 704, 2005 WL 1214281 (S.D.N.Y. May 20, 2005) (a student, dissatisfied with her assigned lab partners, was ultimately expelled due to a slew of other problems and grievances).

[13] The court in <u>Pearson</u> suggests that at least one of the claims (the policy regarding professor response time) could be subject to the good faith standard, but concludes that "to the extent that Plaintiff was unhappy with professor's response, faculty review of a student's work is, at core, precisely the type of professional judgment due deference from the Court." <u>Pearson</u>, 144 F. Supp.3d at 510.

[14] Some of Radin's claims were dismissed on statute of limitations and educational malpractice grounds as well, but none based on the good faith standard.

[15] In <u>Paynter</u>, the First Department reversed a judgment by the small claims court that held the University was unjustified in cancelling certain classes, which is not the issue here. The reversal was a mere two paragraphs and was issued, it seems, in response to a lengthy opinion by the small claims court that could only be described as a misplaced educational manifesto.

in academic achievement as distinct from nonacademic matters the contract tends to be limited to the implied in law condition of good faith, *i.e.*, not to act arbitrarily." Id. at 659, 763.  In short, a showing of bad faith is *only* required in actions alleging breach of contracts related to academic achievement or cases involving the subjective judgment of professional educators.

To highlight this distinction, one need only look to the university cases that do not involve highly specialized academic issues.  In neither Ansari, O'Neill, nor Adler, do the courts apply the bad faith standard when discussing the various breach of contract claims.  As addressed herein, Plaintiffs' Complaint pertains to the unwillingness of Defendant to provide the services for which it was paid and its refusal to issue proper refunds.  As such, the bad faith analysis does not apply.

Regardless, even if the "bad faith" analysis were somehow applicable to this breach of contract claim, the Motion to Dismiss still must be denied.  Defendant's arbitrary bad faith conduct is specifically set forth in and around paragraphs 187-191 of the Complaint.  Defendant has admitted that it did not provide certain promised access and services during a portion of the Spring 2020 semester.  It is undisputed that this portion amounted to approximately 55% of the semester. Likewise, Defendant has recognized that it must issue refunds for access and services that were not provided.  Nonetheless, Defendant refunded only roughly 11% of mandatory fees and has not offered to refund any tuition.  There is no logical explanation for why mandatory fees and tuition have been treated differently, nor for Defendant's 11% calculation with respect to mandatory fees. Defendant's decision is completely arbitrary and seemingly plucked from thin air.  To the extent Defendant challenges this assertion, it is a factual question not appropriate for a motion to dismiss.

### C.    The Doctrine Of Impossibility Does Not Entitle Defendant To Keep All Monies Paid By Plaintiffs

Under New York law, a defendant may be excused from a contractual obligation where performance is impossible due to "the destruction of the means of performance by act of God, vis

major, or by law." 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp., 23 N.Y.2d 275, 281, 296

N.Y.S.2d 338, 343-44 (1968).  Economic hardship, even to the extent of bankruptcy or insolvency,

does not excuse performance.  See, e.g., Id.; Health-Chem. Corp. v. Baker, 737 F. Supp. 770, 776

(S.D.N.Y.), aff'd, 915 F.2d 805 (2d Cir. 1990); see also Bierer v. Glaze, Inc., No. CV-05-2459

(CPS), 2006 U.S. Dist. LEXIS 73042 (E.D.N.Y. Oct. 6, 2006) (loss of primary contract for

products plaintiff was hired to market did not constitute impossibility).

Defendant contends that even if there were a valid contract, Defendant was excused from

performance under the doctrine of impossibility.  As an initial matter, as Defendant admits, this

doctrine is an affirmative defense that is not appropriate for application on a motion to dismiss.

See Lowenschuss v. Kane, 520 F.2d 255 (2d Cir. 1975).  Moreover, even if proven at trial, this

defense would not permit Defendant to keep all student money that was paid for products, access,

programs and services that it did not deliver.  Rather, Defendant would be required to return that

portion of monies collected for items that were not provided to students.[16]  Defendant fails to

address this, but simply claims in footnote 10 that "restitution would also be unavailable for all the

reasons stated in this brief" and cites the case of Kaye v. Grossman, 202 F.3d 611 (2d Cir. 2000).

See MTD at p. 19, n. 10.  Neither Defendant's brief nor Kaye supports this novel position.

As there is no governing law to support its position, Defendant once again creates an

entirely novel standard by inventing a mix-matched hybrid of academic malpractice and unjust

enrichment standards, arguing that Kaye, when applied to the university context, requires a

showing of bad faith on the part of the defendant.  In fact, Kaye does not support this novel

proposition, much less even involve a university.  The hybrid standard for restitution that

Defendant seeks to fabricate is unsupported and patently without merit.

---

[16] RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (AM. LAW INST. 2011)
("A person who is unjustly enriched at the expense of another is subject to liability in restitution.").

### D.    Plaintiffs Have Properly Pled A Claim For Unjust Enrichment

"[A]n unjust enrichment claim in New York require[s] proof that (1) [D]efendant was enriched, (2) at [P]laintiff's expense, and (3) equity and good conscience militate against permitting [D]efendant to retain what [P]laintiff is seeking to recover." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004); see also Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516, 950 N.Y.S.2d 333, 336 (2012).

Here, there is no dispute that Plaintiffs conferred a benefit upon Defendant by paying tuition and fees (¶¶ 160-62 and 200-02) and that Defendant has accepted and retained those tuition and fee payments (less the arbitrary fee refunds discussed above).  ¶¶ 161-64 and 203-04.

Likewise, Plaintiffs plead that equity and good conscience require disgorgement, as they do.  ¶¶ 168 and 205.  It would be inequitable and unconscionable not to require disgorgement in this matter.  As a result of closing campus and moving classes online, Defendant saved significant sums of money in operational costs.  ¶ 166.  At the same time, Defendant received significant aid from the federal government, of which Defendant has announced that it intends to retain roughly $6.4 million for itself, as opposed to passing it along to students.  ¶¶ 9-10.  This is on top of Defendant's endowment, which is estimated at $10.9 billion. ¶ 8.  Therefore, at the same time Defendant has profited off the pandemic, Defendant expects students (most of whom have incurred substantial debt in order to finance their purchases from Defendant) to continue to pay for 100% of products, programs, access and services that were never provided.

Defendant concedes that "unjust enrichment may be plead in the alternative where there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue." Id.; see also MTD at p. 19. Remarkably, however, Defendant then does an about-face on page 20 of its brief to claim that there is no bona fide dispute as to the existence of a contract or its scope.

Defendant makes this argument after 19 pages of arguments disputing the nature and existence of the very same contract.  Furthermore, the contract that Defendant on page 20 now claims to be indisputable is, according to Defendant, an implied contract – the same implied contract Defendant contends did not exist in the first 19 pages of its brief.

Moreover, Defendant's contention that an implied contract can preclude a bona fide dispute is directly contrary to Superintendent of Ins. v. Ochs, 377 F.3d 209, 213 (2d Cir. 2004) (citing Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987)).  Under Ochs, unless there is (1) a valid and enforceable *written* contract governing a particular subject matter, and (2) events arising out of the same subject matter; then an alternative pleading is permitted and a bona fide dispute is deemed to exist.  (Emphasis added).

Defendant then continues to argue for special deference and the application of a "bad faith standard," while again citing no cases that would entitle it to such protection in a claim for unjust enrichment.  Instead, Defendant partially quotes Yalincak v. New York Univ., No. 3:08cv773 (PCD), 2009 WL 10714654 (D. Conn. Sept. 3, 2009) for the proposition that "a student generally "cannot bring an action for unjust enrichment' against her university."  MTD at p. 20.  Defendant grossly mischaracterizes Yalincak.  The court in Yalincak held that "[b]ecause Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment." Yalincak, 2009 WL 10714654, at *14.  This language was directed at the particular facts of the Yalincak case, not toward the student/university relationship generally as Defendant disingenuously contends.  Specifically, Yalincak involved a student who failed two classes and was eight credits short of receiving his degree, but sued for the degree anyway.  The Court found that there was a contract and the contractual term at issue was for the school to "confer upon the student the degree he or she seeks upon the student's completion of all of the stated requirements therefor."  The Court held that the

student did not satisfy the contractual requirements and could not maintain a claim for unjust enrichment because there was a contract. Id., at *10.  That was the limited holding in Yalincak.

## V.    PLAINTIFFS' REMAINING CLAIMS SHOULD NOT BE DISMISSED

Plaintiff's claims for conversion and violation of New York General Business Law ("GBL") Sections 349 and 350 should not be dismissed for the reasons demonstrated below.

### A.    Plaintiffs Have Properly Pled A Claim For Conversion

"An action for conversion of money may be made out 'where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.'" See Thys v. Fortis Securities LLC, 74 A.D.3d 546, 547, 903 N.Y.S.2d 368, 369 (1st Dep't 2010) (quoting Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D.2d 113, 124, 559 N.Y.S.2d 704, 712 (1st Dep't 1990)).

Defendant argues that Plaintiffs' cause of action for conversion should be dismissed because the Complaint fails to plead additional wrongful acts done by Defendant.  Defendant's argument is without merit as the Complaint clearly identifies Defendant's tortious conduct with respect to Plaintiffs' and the classes' legitimate property rights.  See ¶¶ 214, 216, 224-25.

In Thys, the Court held that "[t]he allegations that specified funds were entrusted to [the defendants'] custody only for a particular purpose . . . and that instead defendants improperly retained the funds without making [use of them for that purpose], state a cause of action for conversion." Thys, supra, 74 A.D.3d at 547, 903 N.Y.S.2d at 369.  Here, the Plaintiffs allege that they had identifiable legal rights to an in-person, on-campus experience when they paid tuition and fees in exchange for that particular purpose. ¶¶ 210, 220.  Plaintiffs further allege that Defendant retained possession of those funds, to the exclusion of Plaintiffs, and that such retention was

unauthorized because Defendant failed to apply the funds to the particular purpose for which they were paid. ¶¶ 211, 221.

Accordingly, Plaintiffs' causes of action for conversion are properly pled.

### B.    Plaintiffs Sufficiently Pled That Defendant Violated GBL § 349 and § 350

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

To assert a claim under *either* GBL § 349 or GBL § 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."  Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citing Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 944 N.Y.S.2d 452 (2013)); see Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing the elements for a prima facie case under section 349).

"The standard for recovery under [GBL] § 350, while specific to false advertising, is otherwise identical to Section 349."  See Duran v. Henkel of America, Inc., 2020 WL 1503456, at *4 (S.D.N.Y. Mar. 30, 2020).  Due to this overlap, courts have found that the scope of a GBL § 350 claim is as broad as that of GBL § 349 claim and that their essential elements are the same. Id.

Claims under GBL §§ 349 and 350 are not subject to the heightened particularity requirements of FRCP Rule 9(b), but need only meet the bare-bones notice-pleading requirements of FRCP Rule 8(a).  See Id.; Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir 2005).  Plaintiffs have clearly met these requirements.

**(1)**     **Plaintiffs Have Properly Pled Consumer-Oriented Conduct**

Consumer-oriented conduct consists of "acts or practices [that] have broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995). Moreover, GBL § 349 does not require a repetition or pattern of deceptive behavior. Id. (citation and quotation marks omitted). Plaintiffs may satisfy the consumer-oriented conduct requirement by showing that the conduct at issue "potentially affects similarly situated consumers." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010) (quoting Oswego, supra, 85 N.Y.2d at 27, 623 N.Y.S.2d at 532-33).

Here, Plaintiffs have properly pled that Defendant, in presenting itself as an institution of higher learning for students to attend in exchange for payment of tuition, is engaged in consumer-oriented conduct. See ¶¶ 234-235 ("such statements, presentations and omissions, which are uniform and identical in nature, were intended to induce potential students to enroll at the University for the Spring 2020 semester"); see also ¶¶ 248-251 ("these statements, representations, and omissions, which were uniform and identical in nature, were intended to induce potential students, including Plaintiffs and members of the Fees Class, to enroll at the University and pay or cause to have paid mandatory fees for the Spring 2020 semester."). These GBL §§ 349 and 350 claims are more than a mere private contract dispute that is unique to the parties in this lawsuit; Defendant's conduct affects the consuming public at large, including, without limitation, prospective students that are considering attending the Defendant's university. See New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995); see also Chais v Technical Career Insts., 2002 N.Y. Misc. LEXIS 2086, 2002 NY Slip Op 30082[U], at *11-12 (Sup. Ct., NY Cty Mar. 1 2002); and Gomez-Jimenez v New York Law Sch., 103 A.D.3d 13, 956 N.Y.S.2d 54 (1st Dep't 2012).

    **(2)**    **Plaintiffs Have Properly Pled That Such Consumer-Oriented Conduct Was Materially Misleading**

The inquiry regarding whether an act or practice is materially misleading is whether, objectively, Defendant's acts are "likely to mislead a reasonable consumer acting reasonably under the circumstances." See Duran, supra, 2020 WL 1503456, at *4. GBL § 349 does not require a deceptive practice to "reach the level of common law fraud to be actionable," nor does it require proof of reliance. Stutman v. Chem. Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 896 (2000).[17] Fraudulent intent is not required, the material must only be misleading. Chais, LEXIS 2086, at *16.

Further, "[c]ourts have generally held that since the materially misleading conduct factor requires a reasonableness analysis best suited for a jury, it cannot be resolved on a motion to dismiss." Carrillo v. Wells Fargo Bank NA, No. 18-CV-3095 (SJF) (SIL), 2019 U.S. Dist. LEXIS 80634, (E.D.N.Y. May 10, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 141227 (E.D.N.Y. Aug. 20, 2019) (citation and quotation marks omitted); see also Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (collecting cases).[18] Accordingly, the issue of whether Defendant's acts were materially misleading cannot be resolved at this stage.

Regardless, Defendant's acts were materially misleading. Defendant advertises its in-person, on campus product to the *public at large* with the intent to induce prospective students to enroll at the University in order to receive its on-campus product through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications.

---

[17] GBL §§ 349 and 350 do not contain a reliance requirement, and a proper claim does not require proof that a consumer actually relied on the misrepresentation. See In re Scotts EZ Seed Litig., 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("neither Section 349 nor 350 require proof of reliance"); Stutman, supra, 95 N.Y.2d at 29, 709 N.Y.S.2d at 896 ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim." (citations omitted)).

[18] Although puffery, i.e. "an exaggeration or overstatement expressed in broad, vague, and commendatory language" that is subjective and cannot be proven true or false, is an exception to this general rule, Defendant's acts here are more than mere puffery. See Duran, supra, 2020 WL 1503456, at *4. They were objective statements that specifically mislead prospective students into believing that they would receive an in-person educational experience.

¶ 241. Further, Defendant's material representations and omissions were advertised to all prospective students, and Plaintiffs and other members of the Classes were entitled to a reasonable expectation of the same when they enrolled at Columbia. ¶¶ 236 & 252.

### (3) **Plaintiffs Have Properly Pled Injury**

"An actual injury claim under [s]ection[s] 349 [and 350] typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" See Duran, supra, 2020 WL 1503456, at *7. Plaintiffs have clearly alleged that, due to Defendant's inaccurate representations, they paid substantial sums of money to Defendant for the right to attend Defendant's University in-person and did not receive the full value of what they purchased.

Had Plaintiffs known that Defendant's claims regarding the provision of the on-campus experience were false or subject to change, Plaintiffs would not have paid the price for in-person, on-campus learning or the campus related fees. See ¶¶ 25. These allegations are sufficient to state an injury under GBL §§ 349 and 350 because they "claim that [] [P]laintiff paid a premium for a product based on [Defendant's] inaccurate representations." See Ackerman v. Coca-Cola Co., CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156 (S.D.N.Y. July 21, 2010); see also Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding a sufficiently-pled GBL § 349 injury where the plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); Ebin v. Kangadis Food Inc., No. 13-CV-2311, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 11, 2013) (deeming the plaintiff's allegations sufficient to state a claim under GBL 349 where "[t]he deception is the false and misleading label, and the injury is the purchase price"); Lazaroff v. Paraco Gas Corp., 38 Misc. 3d 1217[A], 967 N.Y.S.2d 867 (Sup. Ct. Kings Cty 2011) (finding a sufficiently-pled § 349 injury where plaintiff alleged that

24

he would not have paid the price for a "[twenty] pound" propane cylinder had he known it contained only fifteen pounds of propane).

Moreover, "monetary loss is a sufficient injury to satisfy the requirement under § 349," when that loss is independent of a loss caused by a breach of contract.  Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).  Plaintiffs' have properly alleged that in-person, on-campus learning is more expensive than on-line learning.  Plaintiffs' also allege that they paid fees for services that were not delivered.  These allegations, taken as true, adequately assert a monetary loss.

Plaintiffs have alleged specific facts in the Complaint that Defendant engaged in false and misleading practices that impacted the entire student body at Columbia University. ¶ 237. Further, Defendant's material representations and omissions were advertised to all prospective students. Plaintiffs and other members of the Class were entitled to reasonably expect that the representations were true when they enrolled at Columbia University.  ¶ 235.

As stated above, the allegations for GBL §§ 349 and 350 claims need only meet the bare-bones notice-pleading requirements of FRCP Rule 8(a) and are not subject to heightened particularity.  See Pelman ex rel. Pelman, supra, 396 F.3d at 511; see also Bailey v. N.Y. Law Sch., 16 Civ. 4283 (ER), 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017). Plaintiffs have clearly met this requirement.  Accordingly, Counts VII & VIII should not be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

[SIGNATURES ON FOLLOWING PAGE]

25

**GAINEY McKENNA & EGLESTON**

By: */s/ Thomas J. McKenna*
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel.: (212) 983-1300
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

**TOPTANI LAW PLLC**
Edward Toptani
375 Pearl Street, Suite 1406
New York, NY 10038
Tel: (212) 699-8930
Email: edward@toptanilaw.com

**ANASTOPOULO LAW FIRM, LLC**

By: */s/ Roy T. Willey IV*
Roy T. Willey IV (admitted *pro hac vice*)
Eric M. Poulin (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: roy@akimlawfirm.com
Email: eric@akimlawfirm.com

**MOREA SCHWARTZ BRADHAM FRIEDMAN & BROWN LLP**
John M. Bradham
444 Madison Avenue, 4th Floor
New York, NY 10022
Tel: (212) 695-8050
Email: jbradham@msbllp.com