## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE COLUMBIA UNIVERSITY TUITION REFUND ACTION | Lead Case No. 1:20-cv-3208<br><br>ORAL ARGUMENT REQUESTED |

### REPLY IN SUPPORT OF DEFENDANT THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK'S MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Roberta A. Kaplan
Gabrielle E. Tenzer
Joshua Matz
David Shieh
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
212.763.0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
dshieh@kaplanhecker.com

August 21, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................ 1

I.       COLUMBIA'S EDUCATIONAL DETERMINATION MERITS JUDICIAL
         DEFERENCE ............................................................................................................... 1

         A.       Plaintiffs Misstate the Law of Judicial Deference to Universities ......................... 2

         B.       Plaintiffs Challenge Academic and Educational Judgments ................................. 4

II.      PLAINTIFFS' CONTRACT CLAIMS FAIL AS A MATTER OF LAW ...................... 5

         A.       The Complaint Does Not Adequately Allege a Specific Enforceable
                  Promise .................................................................................................................. 5

         B.       The Complaint Does Not Adequately Allege Breach ............................................ 7

         C.       Columbia Was Excused from Performance After March 22, 2020 ...................... 8

         D.       Plaintiffs' Unjust Enrichment & Restitution Arguments Lack Merit .................... 9

III.     PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW .................... 10

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ancile Inv. Co. v. Archer Daniels Midland Co.*,
    784 F. Supp. 2d 296 (S.D.N.Y. 2011)........................................................................... 6

*Anthes v. N.Y. Univ.*,
    No. 17 Civ. 2511, 2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018) ............................. 2

*Ansari v. N.Y. Univ.*,
    No. 96 Civ. 5280, 1997 WL 257473 (S.D.N.Y. May 16, 1997)................................. 4

*Babiker v. Ross Univ. Sch. of Med.*,
    No. 98 Civ. 1429, 2000 WL 666342 (S.D.N.Y. May 19, 2000)................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................. 10

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006)....................................................................................... 9

*Cheves v. Trs. of Columbia Univ.*,
    89 A.D.3d 463 (1st Dep't 2011) ............................................................................ 2, 7

*Chira v. Columbia Univ.*,
    289 F. Supp. 2d 477 (S.D.N.Y. 2003)....................................................................... 2

*Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.*,
    70 N.Y.2d 382 (1987) .............................................................................................. 10

*Conopco, Inc. v. Roll Int'l*,
    231 F.3d 82 (2d Cir. 2000)......................................................................................... 9

*Cuesnongle v. Ramos*,
    713 F.2d 881 (1st Cir. 1983)...................................................................................... 7

*Gertler v. Goodgold*,
    107 A.D.2d 481 (1st Dep't 1985) ..................................................................... 2, 3, 6, 7

*Maas v. Cornell Univ.*,
    94 N.Y.2d 87 (1999) ................................................................................................ 2, 3, 6

*Olsson v. Bd. of Higher Ed.*,
    49 N.Y.2d 408 (1980) ............................................................................................. 7, 8

*O'Neill v. N.Y. Univ.*,
    97 A.D.3d 199 (1st Dep't 2012) ................................................................. 3, 4

*Paladino v. Adelphi Univ.*,
    89 A.D.2d 85 (2d Dep't 1982) .................................................................... 5, 7

*Paynter v. N.Y. Univ.*,
    319 N.Y.S.2d 893 (N.Y. App. Term 1971) ................................................ 2, 3, 4

*Pearson v. Walden Univ.*,
    144 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................................. 8

*Pell v. Trs. of Columbia Univ. in City of N.Y.*,
    No. 97 Civ. 0193, 1998 WL 19989 (S.D.N.Y. Jan. 21, 1998) ........................... 8

*Rodriguez v. N.Y. Univ.*,
    No. 05 Civ. 7374, 2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) .......................... 8

*Superintendent of Ins. v. Ochs*,
    377 F.3d 209 (2d Cir. 2004) ......................................................................... 9

*Ward v. N.Y. Univ.*,
    No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ................... 3, 4

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ............................................................ 10

**Rules**

Fed. R. Civ. P. 8(a) .......................................................................................... 10

Defendant The Trustees of Columbia University in the City of New York ("Columbia" or the "University") respectfully submits this reply in support of its motion to dismiss the Second Consolidated Amended Class Action Complaint (the "Complaint").

## PRELIMINARY STATEMENT

It is settled law in New York that courts afford universities broad deference when exercising professional judgment about how to educate their students. This principle is reflected in decades of precedent warning against the invocation of "implied" contract claims to second-guess educational judgments by schools, colleges and universities. All but conceding that they cannot satisfy the standard articulated in these cases—which require specific promises and bad faith—Plaintiffs insist that Columbia has not exercised academic judgment in deciding how to educate its students safely and effectively amid the pandemic. In their telling, Columbia's decision about what "educational experience" to provide in these circumstances is not actually an educational or academic judgment at all; instead, they say, it is a workaday commercial decision analogous to Columbia deciding to sell one of its buildings. Opp'n at 1-2.

Even affording Plaintiffs every reasonable inference, this argument fails as a matter of law. The same is true of their remaining efforts to cabin judicial deference, which are foreclosed by precedent. Applying that very same precedent to the allegations here, the Complaint should be dismissed: it does not allege the existence of any specific promise to educate students in a particular place or manner regardless of the consequences; it does not allege that Columbia acted arbitrarily or in bad faith when transitioning to virtual instruction; and each of Plaintiffs' other, non-contract claims falls short when measured against settled requirements of New York law.

## I.    COLUMBIA'S EDUCATIONAL DETERMINATION MERITS JUDICIAL DEFERENCE

Plaintiffs argue that educational deference principles do not apply here because their claims

are "commercial" rather than "academic" in nature. *Id.* at 2. This contention not only rests on a mistaken, unduly circumscribed view of the educational and academic judgments to which New York courts consistently defer, but also turns on an implausible characterization of the Complaint's allegations.

### A.    Plaintiffs Misstate the Law of Judicial Deference to Universities

First and most fundamentally, Plaintiffs err in their statement of the law. According to Plaintiffs, deference principles apply only in an extremely limited category of cases—*e.g.*, where a court is asked to overrule specific decisions by a teacher about how to teach a class, or to second-guess a school's assessment of a student's academic performance. *See id.* at 5-8. Plaintiffs further suggest that the zone of deference to universities is confined procedurally to Article 78 proceedings in state court. *See id.* at 5-6.

Neither of these contentions is accurate. Judges have applied established deference principles in evaluating the judgment of university officials in a wide range of circumstances, including the temporary suspension of instruction during protests on campus that made in-class lessons unsafe, *see Paynter v. N.Y. Univ.*, 319 N.Y.S.2d 893, 893-94 (N.Y. App. Term 1971), the allocation of office space to tenured faculty, *see Gertler v. Goodgold*, 107 A.D.2d 481, 485-86 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 946 (1985), the assignment of faculty mentors to students, *Chira v. Columbia Univ.*, 289 F. Supp. 2d 477, 485 (S.D.N.Y. 2003), the provision of campus access to former students who seek that access based on alumni relations brochures, *Cheves v. Trs. of Columbia Univ.*, 89 A.D.3d 463, 464 (1st Dep't 2011), job placement assistance programs, *Anthes v. N.Y. Univ.*, No. 17 Civ. 2511, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), and the application of internal procedures for resolving claims of sexual harassment, *e.g.*, *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92-94 (1999). Read together, these cases are unmistakably inconsistent with

Plaintiffs' view that deference attaches only where a lawsuit takes aim at a university's degree requirements, a teacher's lecture style, the textbooks assigned, or the grade for a course or term paper. The reported cases instead require a far more robust conception of the academic and educational judgments for which university officials receive deference under New York law.

Precedent similarly forecloses Plaintiffs' assertion that deference principles are somehow confined to Article 78 proceedings in state court. *See, e.g.*, *Ward v. N.Y. Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, at *3-5, *7 (S.D.N.Y. Sept. 28, 2000) (applying deference principles to dismiss implied contract claim and later holding the suit was not an Article 78 proceeding); *Maas*, 94 N.Y.2d at 93-94 (declining to convert suit alleging implied contract claim into Article 78 proceeding and then dismissing contract claim based on deference); *Gertler*, 107 A.D.2d at 484-87 (finding implied contract claim meritless based on deference principles and then separately declining to convert suit into Article 78 proceeding); *Paynter*, 319 N.Y.S.2d at 894 (applying deference principles—and not even mentioning Article 78—while dismissing implied contract claim against university for cancelling in-class instruction during on-campus protests). These cases exemplify the general rule that educational deference under New York law is not confined to any particular procedural setting. Rather, deference applies wherever plaintiffs ask courts to second-guess academic and educational judgments, including contract cases in federal court.

Against this weight of authority, Plaintiffs rely on two cases, neither of which supports their restricted view of New York law. They first cite *O'Neill v. New York University*, 97 A.D.3d 199 (1st Dep't 2012), which does not diminish or even purport to define the scope of judicial deference to university officials. Instead, after painstakingly reviewing the text of an employment renewal letter and NYU's Faculty Handbook, *O'Neill* reached only the fact-bound conclusion that NYU had specifically promised not to fire a particular professor without a showing of good cause.

*See id.* at 205-14. And because the plaintiff had indeed alleged an arbitrary and capricious violation of that promise, *O'Neill* separately held, in evaluating his Article 78 claims, that there were no specialized judgments at stake evoking deference. *See id.* at 213. *O'Neill* thus does not support Plaintiffs' efforts to cabin principles of deference in this field. Nor does *Ansari v. New York University*—the other case cited by Plaintiffs—which turned on a fact-intensive conclusion that NYU had made sufficiently specific promises to dental students about specific and specialized aspects of its dental degree program (*e.g.*, the availability of an x-ray machine) to support an implied contract claim. *See* No. 96 Civ. 5280, 1997 WL 257473, at *3-4 (S.D.N.Y. May 16, 1997). As *Ansari* itself emphasized, an evaluation of the claims at issue in that case would not require a court to "review any educational decisions of the sort which should be left to educators." *Id.* at *3.

### B.     Plaintiffs Challenge Academic and Educational Judgments

Columbia's decision to move instruction online for the second half of the Spring 2020 semester reflected the University's obviously reasonable judgment about how best to educate its students amid a global pandemic. On its face, this judgment is academic and educational in nature: it addressed the University's method of educating students, and ensuring progress toward degrees, while protecting community safety. *See Paynter*, 319 N.Y.S.2d at 894.

Plaintiffs seek to evade that logic by constructing an argument that Columbia offered two entirely different services—in-person and online instruction—and made an exclusively commercial decision when it transitioned students from in-person to online courses. *See* Opp'n at 2-3, 6-7. This theory does not withstand scrutiny. For starters, it loads the dice by presuming that the "in-person" offering contained an implicit promise to remain in-person notwithstanding any threats to health and safety. If the in-person offering lacked such a categorical promise, which cannot reasonably be inferred from any allegation in the Complaint, then Columbia instead made

a permissible *academic* judgment in deciding to temporarily transition in-person to online instruction. In any event, Plaintiffs' theory would still mire the Court in distinctively academic judgments and determinations—for example, the Court would have to assess the value and quality of Columbia's post-transition online instructional and student community experience, whether the University's wholesale transition to online offerings resulted in a service that was different in pedagogical quality and value than its pre-pandemic online program, and the wisdom and consequences of counting post-transition online courses toward satisfaction of Columbia's degree program for students who began the Spring 2020 semester with in-person instruction. Further, to the extent the Court concludes that the case turns on issues sounding in equity—for instance, if it recognizes the legal impossibility that confronted Columbia in March 2020—the Court would have to evaluate the University's good faith, wisdom, and overall fairness in making countless unquestionably academic decisions while transitioning to an online environment and proceeding to educate its students in a virtual setting.

Simply put, there is no version of this litigation in which the Court does not "enter the classroom" and second-guess Columbia officials on core academic judgments. *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 87 (2d Dep't 1982). As a result, New York law requires Plaintiffs to allege their claims with special care and precision: they must plausibly allege that Columbia breached a *specific* promise and evinced *bad faith* or *arbitrariness* in doing so. This rule ensures that implied contract claims are not invoked in a manner that places judges—rather than educational professionals—at the helm of the State's academic institutions.

## II.     PLAINTIFFS' CONTRACT CLAIMS FAIL AS A MATTER OF LAW

### A.     The Complaint Does Not Adequately Allege a Specific Enforceable Promise

Where a plaintiff sues a university on an implied contract theory and contests an academic

or educational judgment, it is black letter law that she must allege a specific enforceable promise. *See* MTD Br. at 6-13. Plaintiffs raise four responses to this point, none of which succeeds.

*First*, Plaintiffs simply deny that the law requires them to allege a specific promise. This contention can be set aside given the lack of any case citations or analysis. *See* Opp'n at 10-11.

*Second*, Plaintiffs argue that a school's oral representations can give rise to a specific enforceable promise. *See id.* at 12-13. That proposition is irrelevant here since Plaintiffs do not allege or base their contract claims on any such oral representations.

*Third*, Plaintiffs contend that the parties' course of conduct may give rise to a specific enforceable promise. *See id.* at 13 (citing *Maas*, 94 N.Y.2d at 93). But Plaintiffs do not cite any case in which a New York court held a university to an implied specific promise based principally on prior conduct. And "as a general rule, a prior course of dealing in and of itself is not a source of future contractual obligation." *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 305 (S.D.N.Y. 2011). Indeed, in expressly rejecting such a "course of conduct" argument, the court in *Gertler* made clear that New York courts take an extremely narrow view of the circumstances in which prior conduct can anchor a specific enforceable promise limiting a university's academic judgment. *See* 107 A.D.2d at 485 ("Nor can the university's academic and administrative prerogatives be impliedly limited by custom, or by a strained theory of contractual construction. Implied promises are to be cautiously and not hastily raised." (citation omitted)). Here, it would be especially improper to infer a specific promise from prior conduct because the terms of that supposed promise are at best murky: Columbia offers in-person instruction when not in a time of crisis, but the Complaint's allegations offer no basis for a reasonable inference that the University—if presented with the question—would have promised such in-person instruction no matter the circumstances, including during a global pandemic which presented a grave threat to

6

public health. *See id.* ("This case is precisely the instance where such an assumption may not be made."); *Cuesnongle v. Ramos*, 713 F.2d 881, 885 (1st Cir. 1983) ("Even to think that a university could be found to have broken its contract when it changed the dates of classes, or the curriculum, for reasons beyond its control, or changed teachers, should startle anyone at all familiar with university life.").

*Finally*, Plaintiffs cite allegations supposedly describing specific promises by Columbia. As for fees, Plaintiffs' contentions fail for the reasons set forth in Columbia's motion to dismiss—to which Plaintiffs offer no response. *Compare* MTD Br. at 12 *with* Opp'n at 11-12. With respect to tuition, Plaintiffs' allegations offer little more than statements from Columbia's website and admissions materials highlighting the school's New York City location and campus opportunities. None of the alleged statements can reasonably be interpreted as a binding promise to provide "certain specified services," *Paladino*, 89 A.D.2d at 92, or to "guarantee[] unfettered, irrevocable access . . . to the campus or its facilities" even at times of crisis, *Cheves*, 89 A.D.3d at 464. Because Plaintiffs have not adequately alleged a specific enforceable promise, their contract claims should be dismissed.[1]

### B.    The Complaint Does Not Adequately Allege Breach

"The essence of the implied contract is that an academic institution must act in good faith in its dealings with its students." *Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 414 (1980). For that reason, when university officials are sued for exercises of academic and educational judgment,

---

[1]    Attached as exhibits to Plaintiffs' opposition are two state court decisions from Michigan and Ohio allowing tuition refund cases to proceed beyond the pleading stage. *See* ECF 45-1. Neither case is persuasive since both decisions were issued in notice pleading states that lack the pleading-stage requirements established by Rule 12(b)(6). Further, Michigan and Ohio courts apply different legal standards to the university setting than does New York; the Michigan plaintiffs attached portions of express contractual agreements with the defendants; and the Ohio plaintiff alleged the existence of a written contract.

they may be held liable only for "arbitrary or irrational" conduct that breached a specific promise. *Id.* Plaintiffs disagree, noting that *Olsson* involved an Article 78 proceeding, Opp'n at 14, but judges in this District have followed *Olsson* when considering breach of contract claims. *See, e.g.*, *Pell v. Trs. of Columbia Univ. in City of N.Y.*, No. 97 Civ. 0193, 1998 WL 19989, at *20 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.); *Babiker v. Ross Univ. Sch. of Med.*, No. 98 Civ. 1429, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd*, 86 F. App'x 457 (2d Cir. 2004). Indeed, courts have reiterated this standard in other cases as well. *See Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (addressing whether the university "breached its contract by acting in bad faith" and concluding that the "conclusory allegations" did not show "the type of arbitrary action that merits judicial intervention"); *Rodriguez v. N.Y. Univ.*, No. 05 Civ. 7374, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007) ("Breach of contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational.'").

In their original Complaint, Plaintiffs recognized that the University's decision to cancel in-person classes and transition to online instruction was "the right thing . . . to do." ECF 30 ¶ 2. They have since decided to remove that allegation. Nonetheless, the Complaint lacks any allegations from which it can reasonably be inferred that Columbia acted arbitrarily or in bad faith when it decided to transition students from in-person environments to an online setting as they continued their degree programs. *See* MTD Br. at 3-4; *see also Pell*, 1998 WL 19989, at *20.[2]

### C.    Columbia Was Excused from Performance After March 22, 2020

Independent of Plaintiffs' failure to allege a specific enforceable promise, or to allege any

---

[2]    Plaintiffs' argument that Columbia acted in bad faith appears to rest solely on the conclusory allegation that the refunds given by the University have been "arbitrary and wholly insufficient." ¶ 187; *see also* Opp'n at 16. As explained in Columbia's opening brief, however, this allegation may bear on damages but is legally irrelevant to breach. *See* MTD Br. at 16.

cognizable breach of that promise, Plaintiffs' contract claims must be dismissed from March 22, 2020 onwards because compliance was legally impossible since that date. Plaintiffs do not purport to allege otherwise. Instead, they observe that impossibility is not typically resolved at the pleading stage. *See* Opp'n at 17. We do not disagree. But dismissal on the basis of an affirmative defense is appropriate where—as here—"it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000); *see also* MTD Br. at 18-19.

### D.     Plaintiffs' Unjust Enrichment & Restitution Arguments Lack Merit

Although Plaintiffs assert that they are entitled to recover on a theory of unjust enrichment (or restitution, though the Complaint does not actually plead a restitution claim in the event that Columbia's legal impossibility defense is upheld), their arguments are mistaken. On the one hand, Plaintiffs and Columbia disagree over the terms of the implied contract that governs their relationship. On the other hand, Plaintiffs and Columbia agree that an implied contract *does* govern that relationship. *See* MTD Br. at 19-20; Opp'n at 9-16. And where the relationship between two parties is governed by a contract, the existence of that contract precludes recovery on a theory of unjust enrichment for events arising out of the same subject matter—a longstanding principle that has been held specifically applicable to the student-university setting. *See* MTD Br. at 20.

To be sure, Plaintiffs seek to resist that conclusion by citing *Superintendent of Insurance v. Ochs* for the proposition that only written contracts can preclude unjust enrichment claims. *See* 377 F.3d 209, 213 (2d Cir. 2004). But *Ochs* does not hold that *only* written contracts can have this effect. And the Second Circuit has squarely held that New York law "precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." *Beth Israel Med. Ctr. v. Horizon Blue*

*Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (collecting cases) (citing *Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.*, 70 N.Y.2d 382 (1987)).[3]

## III.   PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW

As discussed in Columbia's opening brief, Plaintiffs' conversion claims fail because they are indistinguishable from their breach of contract claims. *See* MTD Br. at 21. Although Plaintiffs attempt to remedy this deficiency by identifying "additional wrongful acts" in their opposition brief, those acts are the very same allegations underlying their contract claims. *See* Opp'n at 20.

As for their GBL §§ 349 and 350 claims, Plaintiffs assert that they have met the "bare-bones notice-pleading requirements of FRCP Rule 8(a)." *Id.* at 21. But on top of the fact that "bare-bones notice-pleading" is no longer the standard in the federal courts, *see, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiffs do not (and cannot) dispute that such claims have generally succeeded in the education context *only* where an entity that purported to be a college was actually a sham or was otherwise engaged in overtly fraudulent conduct. *See* MTD Br. at 22. Regardless, Plaintiffs have not adequately alleged that Columbia engaged in "consumer-oriented . . . conduct [that] was materially misleading." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). Plaintiffs again gesture at statements by Columbia concerning its New York City location and on-campus facilities, but even read in the light most favorable to Plaintiffs, these are not affirmative representations concerning what Columbia would provide in exchange for tuition and fees no matter the consequences for health and safety. *See* MTD Br. at 22-23. Nor would a reasonable consumer interpret Columbia's statements that way. *See id.* at 23-24.

---

[3]   Plaintiffs' unjust enrichment claim—as well as the restitution claim that they mention in their brief but have not in fact pleaded, *see* Opp'n at 17—also fail on an independent legal ground: failure to allege in non-conclusory, non-speculative terms that "equity and good conscience require restitution." *See* MTD Br. at 20 (collecting cases requiring such allegations).

**CONCLUSION**

For the foregoing reasons, Columbia respectfully requests that the Court dismiss the Complaint.

Dated: August 21, 2020                     Respectfully submitted,


By:

Roberta A. Kaplan
Gabrielle E. Tenzer
Joshua Matz
David Shieh
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
212.763.0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
jmatz@kaplanhecker.com
dshieh@kaplanhecker.com