# <u>Exhibit 4</u>

**Verlanga, et al. v. Univ. of San Francisco,**

**Case No. CGC-20-584829 (San. Fran. Sup. Ct. Nov. 12, 2020)**

Prepared by Court.

F I L E D
San Francisco County Superior Court

NOV 1 2 2020

CLERK OF THE COURT
BY: _____
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| SAMANTHA VERLANGA, JASMINE MOORE and AMBER KAISER, individually and as representatives of their class,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF SAN FRANCISCO,<br><br>Defendant. | Case No.  CGC-20-584829<br><br>**ORDER ON DEFENDANT UNIVERSITY OF SAN FRANCISCO'S DEMURRER TO COMPLAINT** |

Defendant University of San Francisco's demurrer to the complaint came on regularly for hearing before the Hon. Ethan P. Schulman, on November 12, 2020 at 9:30 a.m. in Department 302.  Both parties appeared via videoconference by their counsel of record.

The Court, having considered the papers and pleadings filed in connection with the motion, and the arguments of counsel presented at the hearing, and good cause appearing therefor, hereby rules as follows:

-1-

1  Defendant University of San Francisco's demurrer to the complaint is overruled as to the

2  first cause of action for breach of contract, sustained with leave to amend as to the second cause

3  of action for violation of the Unfair Competition Law and without leave to amend as to the third

4  cause of action for conversion, and sustained with leave to amend as to the fourth cause of action

5  for quasi-contract and the fifth cause of action for promissory estoppel.

6

7  **FACTUAL ALLEGATIONS**

8  This is a putative class action on behalf of all California citizens who paid tuition and

9  other fees for the Spring 2020 academic semester at USF and who, because of USF's response to

10  the global COVID-19 pandemic, did not receive the full benefit of the educational services,

11  facilities, and other services for which they allegedly contracted and paid.  Plaintiffs Samantha

12  Berlanga and Jasmine Moore, both undergraduates at USF, allege they were each charged

13  approximately $26,000 in tuition and fees to attend USF in person for the Spring 2020 semester,

14  which began on January 21, 2020 and ended with final exams around May 14, 2020.  Plaintiffs

15  allege that effective March 11, 2020, USF suspended all classes and closed its campus because

16  of the pandemic; that students were notified that they needed to vacate their residence halls no

17  later than March 21, 2020; and that USF has not held any in-person classes since March 11,

18  2020, but instead has moved all educational instruction online (so-called "distance learning").

19  Plaintiffs allege that the online learning options offered to USF students are "subpar" and

20  "deprive students of the full university learning experience, because of the lack of facilities,

21  materials, and access to faculty"; and that online learning has deprived them of "the opportunity

22  for collaborative learning and in-person dialogue, feedback and critique" and of "the full

23  academic and social university experience" for which they paid.  Plaintiffs allege further that

24  USF has announced that it will not refund any tuition or fees for the Spring 2020 semester.  They

25  seek a refund of tuition for in-person educational services, facilities, access and/or opportunities

26  that USF has not provided, and a refund of other fees for services that USF is not providing.

27

**DISCUSSION**

1

2    While USF admittedly did not meet and confer with Plaintiffs before filing its demurrer

3    as required by Code of Civil Procedure section 430.41, the Court does not believe there is any

4    realistic prospect that an agreement could have been reached that would have resolved the

5    objections raised in the demurrer, and accordingly will decide the demurrer on its merits.

6         At the outset, the Court declines to consider the declaration of Dr. Tyrone Heath Cannon.

7    It is elementary that a demurrer can be used only to challenge defects that appear on the face of

8    the complaint, or from matters outside the pleading that are judicially noticeable. (*Blank v.*

9    *Kirwan* (1985) 39 Cal.3d 311, 318; *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th

10   968, 994.) "No other extrinsic evidence can be considered." (*Kerivan v. Title Ins. & Trust Co.*

11   (1983) 147 Cal.App.3d 225, 229.) The Court likewise denies USF's request for judicial notice of

12   its catalog, including the refund policy and the university's reservation of rights to modify its

13   regulations and programs. "Although the *existence* of a document may be judicially noticeable,

14   the truth of statements contained in the document and its proper interpretation are not subject to

15   judicial notice if those matters are reasonably disputable." (*Fremont Indemnity Co. v. Fremont*

16   *General Corp.* (2007) 148 Cal.App.4th 97, 113 [error to take judicial notice of parties' letter

17   agreement on demurrer] (emphasis in original); see also *Joslin v. H.A.S. Ins. Brokerage* (1986)

18   184 Cal.App.3d 369, 374 [demurrer may not be turned into contested evidentiary hearing].)

19   Plaintiffs do not refer to USF's catalogs or published policies in their complaint, nor do they

20   allege that any statements in those materials form a basis for their claims. (Compare *Kashmiri v.*

21   *Regents of University of California* (2007) 156 Cal.App.4th 809, 828 ["[plaintiffs] contend that

22   the University breached its express promise on its websites and its catalogues not to increase the

23   [professional degree fee] for continuing students."].) They therefore are not properly considered

24   by the Court on demurrer.

25        USF's demurrer to the claims asserted by Plaintiff Amber Kaiser, the parent of Plaintiff

26   Jasmine Moore, on the ground that she lacks standing to assert claims on behalf of an adult

27

-3-

ORDER ON DEFENDANT UNIVERSITY OF SAN FRANCISCO'S DEMURRER TO COMPLAINT
Case No. CGC-20-584829

student is overruled.  Plaintiffs do not allege that Ms. Moore was an adult when her Spring 2020

fees were paid and, as noted, the Court cannot consider extrinsic evidence on demurrer to

determine that issue.

The Court overrules USF's demurrer to the first cause of action for breach of contract.

"[T]he basic legal relationship between a student and a private university is contractual."

(*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 823-824; see also

*Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 10.)  "By the act of

matriculation, together with payment of required fees, a contract between the student and the

institution is created."  (*Id.* at 824.)  Absent a formal agreement between the student and the

university, the agreement is an implied-in-fact contract.  "The terms of an express contract 'are

stated in words,' while the terms and the existence of an implied contract 'are manifested by

conduct.'"  (*Id.* at 827.)  Statements in university catalogues, student manuals, and registration

materials may become part of the implied-in-fact contract.  (*Id.* at 828-829.)  Significantly at this

stage of the proceedings, "the question whether the parties' conduct creates such an implied

agreement is generally a question of fact."  (*Id.* at 829.)

Plaintiffs have adequately pled each of the basic elements of a claim for breach of

contract: (1) the existence of the contract, (2) plaintiff's performance or excuse for

nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.  (*Oasis*

*West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)  Thus, Plaintiffs allege that through

the admission agreement and payment of tuition and fees, they entered into a binding contract

with USF.  (Compl. ¶ 44.)  Specifically, they allege that tuition for Spring semester 2020 was

"intended to cover in-person educational services from January through May 2020."  (*Id.* ¶ 45.)

Finally, they allege that they have suffered damage as a direct and proximate result of USF's

contractual breaches, including being deprived of "the in-person education, experience, and

services . . . which they were promised and for which they have already paid."  (*Id.* ¶ 51.)  While

it is true, as USF argues, that Plaintiffs do not identify any express or specific promise that was

ORDER ON DEFENDANT UNIVERSITY OF SAN FRANCISCO'S DEMURRER TO COMPLAINT
Case No. CGC-20-584829

1  breached, they allege that tuition and fees at USF are paid in exchange for, among other things,

2  in-person coursework; face-to-face interaction and collaboration with professors, advisors, and

3  peers; access to facilities such as libraries, laboratories, computer labs, and study rooms; access

4  to technology, graphic design computer programs, and equipment; visits and tours of advertising

5  agencies, including in-person presentations and interviews; student governance and student

6  unions; extra-curricular activities, groups, intramural sports, and related activities; student art,

7  cultures, church access, and other activities; social development, fraternal organizations, and

8  independence; hands-on learning and experimentation; and networking and mentorship

9  opportunities.  (Compl. ¶ 33.)

10      Construing the complaint liberally, as required (Code Civ. Proc. § 452), these allegations

11  are sufficient to state a claim for breach of an implied-in-fact contract.  As one federal court

12  recently concluded in a closely analogous case,

13      Throughout the amended complaint, [plaintiff] alleges that the College's publications
14      clearly implied that courses would be conducted in-person.  The College's materials also
        touted its many resources and facilities—of which were located on the campus thereby
15      implying in-person participation.  These allegations are sufficient at this early stage,
        especially because Florida law recognizes that the college/student contract is typically
16      implied in the College's publications.

17

18  (*Salerno v. Florida Southern College* (M.D. Fla. Sept. 16, 2020) --- F.Supp.3d ----, 2020 WL

19  5583522, at *5;[1] see also *Zumbrun*, 25 Cal.App.3d at 10-11 [allegations that USC contracted to

20  give course consisting of a given number of lectures and a final examination in exchange for

21  tuition and fees paid by plaintiff, and that professor refused to give all promised lectures and to

22  conduct a final exam because of faculty strike protesting United States foreign policy in

23  ──────────────
    [1] Other courts have begun to hand down rulings on initial motions to dismiss actions brought
24  against public and private universities by students seeking tuition and fee refunds as a result of
    the COVID-19 pandemic. Those courts largely have denied those motions based on reasoning
25  similar to that set forth here. (See, e.g., *Rosado v. Barry University Inc.* (S.D. Fla. Oct. 30, 2020
    --- F.Supp.3d ----, 2020 WL 6438684; *Chong v. Northeastern University* (D. Mass. Oct. 1, 2020)
26  --- F.Supp.3d ----, 2020 WL 5847626; *Waitt v. Kent State University* (Oh. Ct. Cl. Sept. 28, 2020)
    2020 WL 5894543; *McDermott v. The Ohio State University* (Oh. Ct. Cl. Aug 24, 2020); *Cross
27  v. University of Toledo* (Oh. Ct. Cl. July 8, 2020) 2020 WL 4726814.)

ORDER ON DEFENDANT UNIVERSITY OF SAN FRANCISCO'S DEMURRER TO COMPLAINT
Case No. CGC-20-584829

1   Cambodia, stated claim for breach of contract].) USF's arguments regarding damages and

2   proximate cause raise factual issues that cannot be resolved on demurrer.  (See *Zumbrun*, 25

3   Cal.App.3d at 11 [whether alleged breach "justifies refund of a portion of the tuition and fee

4   allocable to the course is a matter of proof, under the present state of the pleadings, at trial in an

5   appropriate forum"].)

6          In *Kashmiri*, the Court of Appeal affirmed summary judgment for plaintiff students in a

7   class action against the University of California seeking injunctive and declaratory relief and

8   damages after the university increased various fees.  The court concluded that implied contracts

9   were formed between the university and students, and that the university breached its contracts in

10  two respects: by raising the professional educational fees for continuing students after promising

11  on its website and in its catalogues that such fees would not be raised for the duration of the

12  students' enrollment in the professional program; and by raising the educational fees for the

13  spring and summer sessions in 2013 after the students had received bills specifying the exact

14  amount to be paid.  That case is closely instructive here.

15         Plaintiffs' allegations here are most comparable to the second claim in *Kashmiri*, that the

16  university billed students for the spring and summer terms, but then increased the fees after the

17  students had received their bills.  (*Id.* at 841-848.)  The court determined that "it was reasonable

18  for the student to expect that once he or she received an actual bill for a specific amount to be

19  paid by a particular date, and that bill did not indicate there could be any further change, the

20  University had established the actual fee as reflected by the bill." (*Id.* at 844.)  The university's

21  general disclaimer on its website that it retained the right to increase the fees without providing

22  any notice could not overcome the reasonable expectations of the parties at the time the contract

23  was formed.  (*Id.* at 842-843.)  "[O]nce the student is told that he or she can enroll at a particular

24  price and must pay that particular sum by a certain date, the student should reasonably be able to

25  expect that fee has now become firm." (*Id.* at 848.)  Thus, the University breached its contracts

26

27

ORDER ON DEFENDANT UNIVERSITY OF SAN FRANCISCO'S DEMURRER TO COMPLAINT
Case No. CGC-20-584829

1  with the students attending the two terms when it raised the educational fees for these terms after

2  the students had received bills charging them a set fee to be paid by a particular date. (*Id.*)

3      Here, likewise, USF billed students such as Plaintiffs for tuition and fees for the Spring

4  semester, and Plaintiffs allege they paid those amounts.  It was reasonable for Plaintiffs to expect

5  when they were billed for the Spring semester that they would receive the services, including in-

6  person instruction and lodging in university residence halls, that were allegedly promised to

7  them.  When USF changed the nature of the educational and other services students reasonably

8  expected to receive in exchange for their payments, it arguably breached its contracts with

9  Plaintiffs and other students.

10      USF contends that although Plaintiffs have framed their claims as contractual in nature,

11  they are actually attempting to challenge academic decisions regarding USF's "mode of

12  instruction" (i.e., shifting from in-person to online), which amounts to a forbidden claim of

13  "educational malpractice."  (Dem. at 4-7.) The Court disagrees.  As the *Kashmiri* court

14  acknowledged, "it is well settled that contract law is not always rigidly applied, especially in

15  actions challenging the academic decision of a university or a student's qualifications for a

16  degree." (*Id.* at 825.)  "Courts have applied contract law flexibly to actions involving academic

17  and disciplinary decisions by educational institutions because of the lack of a satisfactory

18  standard of care by which to evaluate these decisions." (*Id.* at 826; see also *id.* at 835 ["Courts

19  have consistently refused to interfere with the educational curriculum and selection, retention,

20  and conditions of employment of academic personnel, which is not at issue in the case before

21  us."].)  "Courts have, however, not been hesitant to apply contract law when the educational

22  institution makes a specific promise to provide an educational service, such as a failure to offer

23  any classes or a failure to deliver a promised number of hours of instruction." (*Id.*)  This action,

24  like *Kashmiri*, "does not involve what is essentially an educational malpractice claim or a

25  decision that involves disciplinary discretion. . . . 'Ruling on this [fee dispute] would not require

26  an inquiry into the nuances of educational processes and theories, but rather than objective

27

-7-

1   assessment of the University's performance of its promise." (*Id.* at 826-827.) Just as in *Salerno*,

2   "this case is not about the quality of the [University's] education" or its decision to move to

3   online learning; "This case is simply about an alleged promise to provide in-person learning that

4   was allegedly breached." (2020 WL 5583522, at *5.)

5       USF also contends that its decision to suspend in-person instruction was "a reasonable

6   response to emergency conditions and required by government orders" concerning the pandemic.

7   (Dem. at 6:7-17.) That may well be, but it is not dispositive of Plaintiffs's claims at the pleading

8   stage. "[E]conomic crises do not excuse performance on a contract. 'Facts which may make

9   performance more difficult or costly than contemplated when the agreement was executed do not

10  constitute impossibility.'" (*Kashmiri*, 156 Cal.App.4th at 839 [rejecting argument by University

11  of California that state fiscal crisis constituted an emergency that excused its performance of a

12  contractual promise not to raise certain student fees].)

13      Because the first cause of action states a claim for breach of contract, the Court need not

14  address USF's additional argument regarding the included claim for breach of the implied

15  covenant of good faith and fair dealing. A general demurrer may not be sustained as to a portion

16  of a cause of action. (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150,

17  1167; see also *Franklin v. The Monadnock Co.* (2007) 151 Cal.App.4th 252, 257 ["It is error for

18  a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any

19  possible legal theory."].)

20      The Court sustains USF's demurrer to the second cause of action for violation of the

21  Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, with leave to amend. Plaintiffs

22  apparently seek to predicate the UCL claim on a purported violation of the Consumer Legal

23  Remedies Act (Compl. ¶ 58(a)), but do not actually allege any claim for violation of the CLRA

24  or the factual basis for such a claim. Nor do Plaintiffs allege sufficient facts to state a claim

25  under the UCL's "unfair" or "fraud" prongs. Plaintiffs do not allege that members of the public

26  are likely to be deceived by the challenged conduct. (*Schnall v. Hertz Corp.* (2000) 78

27

-8-

1   Cal.App.4th 1144, 1167.)  Nor do they allege (nor, presumably, could they) that USF's

2   statements were fraudulent *when made*—i.e., before the pandemic.  Finally, although Plaintiffs

3   seek injunctive relief, they do not allege that USF is engaged in any *ongoing* conduct that could

4   properly be enjoined.  An injunction under the UCL "is designed to prevent further harm to the

5   public at large rather than to redress or prevent injury to a plaintiff." (*Cruz v. PacifiCare Health

6   Systems, Inc.* (2003) 30 Cal.4th 303, 315-316.)  Plaintiffs have leave to amend to clarify the

7   factual basis for their UCL claim under one or more of the statutory prongs.

8         The Court sustains USF's demurrer to the third cause of action for conversion without

9   leave to amend.  "Conversion is the wrongful exercise of dominion over the property of another.

10  The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

11  property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and

12  (3) damages." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.)  "Money cannot be the subject of a

13  cause of action for conversion unless there is a specific, identifiable sum involved, such as where

14  an agent accepts a sum of money to be paid to another and fails to make the payment.  A

15  generalized claim for money [is] not actionable as conversion." (*PCO, Inc. v. Christensen,

16  Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395.)

17  "[A]ctions for the conversion of money have not been permitted where the amount of money

18  involved is not a definite sum." (*Id.*)

19        Here, Plaintiffs are not seeking to recover all of the tuition and fees they paid to USF, but

20  rather only an unspecified "prorated portion" of that tuition and fees.  (Compl. ¶¶ 39(e) ["that

21  portion of the tuition and fees attributable to the services that USF did not provide"], 70, 73.)

22  Moreover, that prorated amount presumably is different for each Plaintiff (and every member of

23  the putative class), depending on the tuition and fees each paid, whether such amounts were

24  covered in whole or in part by grants or other forms of financial aid, whether they had lodging in

25  USF residence halls and, if so, when they moved out, and the extent to which their individual

26  undergraduate or graduate programs involved areas of concentration where in-person instruction

27

1   and access to technology is or is not crucial.  (See Compl. ¶¶ 13, 14, 27.)  Plaintiffs' counsel

2   conceded at the hearing that the specific amount that was allegedly converted is "unknown."

3   Thus, the complaint does not state a claim for conversion.  (See *PCO, Inc.*, 150 Cal.App.4th at

4   395 [affirming summary judgment on conversion claim where "plaintiffs could only estimate the

5   amount of cash" allegedly converted]; see also *Salerno*, 2020 WL 5583522, at *5 [dismissing

6   conversion claim with prejudice where "an obligation to pay money, like [plaintiff's] claim for

7   tuition reimbursement, is also insufficiently tangible to qualify as 'property' under these facts"]

8   [applying Florida law].)  Plaintiffs have not shown a reasonable likelihood that they could amend

9   to overcome this defect.

10      USF's demurrers to Plaintiffs' claims in the fourth cause of action for quasi-contract and

11   in the fifth cause of action for promissory estoppel are sustained with leave to amend.  " '[A]n

12   action based on an implied-in-fact or quasi-contract cannot lie where there exists between the

13   parties a valid express contract covering the same subject matter." (*Rutherford Holdings, LLC v.*

14   *Plaza Del Rey* (2014) 223 Cal.App.4th 221, 231-232.)  "Although a plaintiff may plead

15   inconsistent claims that allege both the existence of an enforceable agreement and the absence of

16   an enforceable agreement, that is not what occurred here.  Instead, plaintiffs' breach of contact

17   claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did

18   not deny the existence or enforceability of that agreement.  Plaintiffs are therefore precluded

19   from asserting a quasi-contract under the theory of unjust enrichment." (*Klein v. Chevron USA,*

20   *Inc.* (2012) 202 Cal.App.4th 1342, 1389-1390.)  The same is true here.  (See Compl. ¶ 44

21   [alleging Plaintiffs "entered a binding contract with USF"].)  Plaintiffs have leave to amend to

22   allege facts supporting an alternative theory of recovery.

23      Likewise, promissory estoppel is an equitable doctrine that allows enforcement of a

24   promise that would otherwise be unenforceable because of lack of consideration.  (*US Ecology,*

25   *Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901-902.)  "The elements of a promissory

26   estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to

27

1  whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4)

2  the party asserting the estoppel must be injured by his reliance.'" (*Id.* at 901.) Promissory

3  estoppel is not available here because Plaintiffs allege that the underlying contract was entered

4  into for consideration. (Compl. ¶ 45.) Again, however, Plaintiffs have leave to amend to plead

5  such an alternative theory.

6         Finally, USF's demurrer to Plaintiffs' prayer for punitive damages and injunctive relief is

7  unavailing. "[A] demurrer cannot rightfully be sustained to part of a cause of action or to a

8  particular type of damage or remedy." (*Kong v. City of Hawaiian Gardens Redevelopment*

9  *Agency* (2002) 108 Cal.App.4th 1028, 1047; *Venice Town Council, Inc. v. City of Los Angeles*

10 (1996) 47 Cal.App.4th 1547, 1562 ["a demurrer tests the sufficiency of the factual allegations of

11 the complaint rather than the relief suggested in the prayer of the complaint"]; *Grieves v.*

12 *Superior Court* (1984) 157 Cal.App.3d 159, 163 [punitive damage allegations were not subject to

13 demurrer].)

14

15                                    **CONCLUSION**

16         In the Spring of this year, USF, like countless other educational institutions in the United

17 States and around the world, was confronted with an unprecedented public health crisis that

18 dramatically affected its ability to continue holding classes and providing education as it had in

19 the past. Nothing in this order is intended to suggest that USF did anything improper in acting as

20 it did to shift from in-person to online instruction. The Court merely finds that Plaintiffs have

21 pled certain viable causes of action. Whether Plaintiffs can prevail on those causes of action and,

22 if so, the amount of tuition and fees which they may be entitled to recover, if any, present factual

23 issues that will have to await decision on a complete record at a later stage of the litigation.

24 (*Kerivan*, 147 Cal.App.3d at 229 ["plaintiff's possible inability or difficulty in proving the

25 allegations of the complaint is of no concern."]; see *Salerno*, 2020 WL 5583522, at *1

26 ["[Plaintiff], a student, has alleged the elements of a breach of contract claim against Florida

27

Southern College in her amended complaint.  At this early stage in the case, that is all that is necessary.  The more difficult issues will come later, at the summary judgment stage."].)

Plaintiffs have 20 days leave to amend.

**IT IS SO ORDERED.**

Dated:  November 12, 2020

HON. ETHAN P. SCHULMAN

JUDGE OF THE SUPERIOR COURT

-12-

Case 3:20-cv-03208-JMF   Document 53-4   Filed 12/08/20   Page 14 of 14

I, the undersigned, certify that I am an employee of the Superior Court of California, County Of San Francisco and not a party to the above-entitled cause and that on November 12, 2020 I served the foregoing ORDER ON DEFENDANT UNIVERSITY OF SAN FRANCISCO'S DEMURER TO COMPLAINT  on each counsel of record or party appearing in propria persona by causing a copy thereof to be enclosed in a postage paid sealed envelope and deposited in the United States Postal Service mail box located at 400 McAllister Street, San Francisco CA  94102-4514 pursuant to standard court practice.

STEPHEN M. FISHBACK  (191646)
KELLER, FISHBACK & JACKSON LLP
28720 CANWOOD STREET
AGOURA HILLS, CA  91301-4521

VITO A. COSTANZO  (132754)
HOILLAND & KNIGHT LLP
400 SOUTH HOPE STREET
8TH FLOOE
LOS ANGELES, CA  90071