# **Exhibit 5**

**Kishinevsky v. Board of Trustees of Metro. State Univ. of Denver, Case No. 20CV31452 (Nov. 23, 2020)**

```
```

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br><br>1437 Bannock St., Denver, CO 80202 | DATE FILED: November 23, 2020 4:10 PM<br>CASE NUMBER: 2020CV31452 |
| **Plaintiff(s),** ARIEL KISHINEVSKY<br><br>v.<br><br>**Defendant(s),** BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER | ▲  COURT USE ONLY  ▲<br><br>Case Number:<br>20CV31452<br><br>Courtroom: 275 |
| **ORDER: Motion to Dismiss** | |

THIS MATTER comes before the Court on Defendant's motion to dismiss Plaintiff's amended complaint. The Court, having reviewed the parties' briefs and exhibits, the relevant legal authority, and being otherwise fully advised, hereby ORDERS as follows.

**Background**

Plaintiff is a student at Metropolitan State University of Denver. In the wake of the ongoing COVID-19 pandemic, Plaintiff sued the Defendant Board of Trustees for the University following the University's transition of most of its services to online formats. Plaintiff's two claims—stated in the alternative—are for breach of contract and unjust enrichment, both relating solely to student fees for the Spring 2020 semester that were paid and not refunded following the transition. In its motion to dismiss both claims, Defendant argues it is immune from suit and that Plaintiff fails to state a claim for breach of contract. In the event it is not immune from suit, Defendant also moves for a more definite statement on the unjust enrichment claim.

**Immunity**

Defendant first argues it is immune from Plaintiff's claims under C.R.S. § 24-33.5-711.5(1), which states:

> Neither the state nor the members of the expert emergency epidemic response committee designated or appointed pursuant to section 24-33.5-704.5 are liable for any claim based upon the committee's advice to the governor or the alleged negligent exercise or performance of, or failure to exercise or perform an act relating to an emergency epidemic. Liability against a member of the committee may be found only for wanton or willful misconduct or willful disregard of the best

interests of protecting and maintaining the public health. Damages awarded on the basis of such liability shall not exceed one hundred thousand dollars for any injury to or damage suffered by one person or three hundred thousand dollars for an injury to or damage suffered by three or more persons in the course of an emergency epidemic.

The interpretation of this statutory provision appears to be a matter of first impression. However, other sources of state immunity provide guidance. State immunity has its roots in the historical relic that the King can do no wrong. *See generally Evans v. Bd. of Cnty. Comm'rs*, 482 P.2d 968 (Colo. 1971); *see also Ace Flying Serv. v. Colo. Dep't of Agric.*, 314 P.2d 278, 281 (Colo. 1957). Because state immunity now derogates from the common law in Colorado, "legislative grants of immunity must be strictly construed." *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000) (interpreting the Colorado Governmental Immunity Act). As such, the Court interprets the provision narrowly.

Defendant argues, and Plaintiff does not contest, that Defendant is an arm of the state. Accordingly, the immunity provision, if applicable, extends to Defendant. The more salient question concerns the scope of immunity provided, including whether it extends to contract claims for damages. The Court concludes it does not.

By its terms, § 24-33.5-711.5(1), immunizes the state from suit for negligent acts or omissions in response to an epidemic. For instance, if the state underestimated the pandemic and took inadequate steps to protect the public, the state might nevertheless be immune from suit by would-be plaintiffs who contracted the virus.

But extending immunity to contract claims for damages would have far more sweeping ramifications. For example, it would be surprising if the state, after contracting with a private entity to provide testing for the virus, could breach the contract and then assert immunity from suit or limit damages to $100,000 regardless of the monetary value of the contract. Indeed, it has long been held that "when a state enters into authorized contractual relations it thereby waives immunity from suit." *Ace Flying Serv.*, 314 P.2d at 280; *see also Wheat Ridge Urban Renewal Auth.*, 176 P.3d 737, 744-46 (Colo. 2007) (holding that specific performance of the state's eminent domain power, as opposed to damages for breach of contract, could not be judicially ordered); *Thompson Creek Townhomes, LLC v. Tabernash Meadows Water & Sanitation Dist.*, 240 P.3d 554, 555-57 (Colo. App. 2010) (same). Against this backdrop, the Court would require clear statutory language indicating immunity against contract claims for damages.

Neither the Court, nor Plaintiff it seems, takes issue with Defendant's response to the pandemic to protect the health of its students. Stated differently, there is no negligent act or omission being alleged. But strictly construed, the Court does not read the statute as granting the state license to breach a contract with impunity, even if doing so were deemed a part of the pandemic response. Nothing in the language of the provision is to that effect. In other words, the statute does not grant the state the authority to visit the economic consequences of its actions on those who contracted for state services. Accordingly, Defendant is not immune from Plaintiff's claims.

**Failure to State a Claim for Breach of Contract**

Defendant next argues that Plaintiff fails to state a claim for breach of contract. Specifically, Defendant contends that the parties' contractual arrangement is confined solely within the "Financial Responsibility and Promissory Note Agreement" (hereafter "the FRPNA"), and that Plaintiff cannot incorporate the list of fee descriptions into the FRPNA. Alternatively, Defendant argues that the fee descriptions do not contain promises of student access to campus amenities.

Under Rule 12(b)(5), "a court properly dismisses a claim if the factual allegations in the complaint, taken as true and viewed in the light most favorable to the plaintiff, do not present plausible grounds for relief." *Begley v. Ireson*, 2017 COA 3, ¶ 8 (citing *Warne v. Hall*, 2016 CO 50, ¶ ¶ 9, 24). Documents referenced in the complaint and central to the plaintiff's claims are not outside the pleadings and thus may be considered in a Rule 12(b)(5) motion. *Yadon v. Lowry*, 126 P.3d 332, 336 (Colo. App. 2005).

The Court finds it plausible that the FRPNA incorporates the list of fee descriptions and fee schedule. *See CenCor, Inc. v. Tolman*, 868 P.2d 396, 398 (Colo. 1994) ("Materials actually provided to a student, including enrollment agreements and catalogs, may become part of the agreement."). Indeed, the FRPNA references several sources of additional information. Ex. A. Further, the FRPNA purports to be a promissory note without stating the principal debt amount, which necessarily indicates that other documents must be resorted to flesh out its terms. *Id*. As such, for the purposes of this motion, the Court treats the fee descriptions as incorporated into the FRPNA.

Defendant nevertheless contends that the fee descriptions do not contain any promises of unfettered student access to campus amenities. The pertinent fee descriptions, at least those that were briefed, are as follows:

> **Intercollegiate Athletic Fee:**  This fee allows MSU Denver students access to all MSU Denver intercollegiate sporting events. This fee also funds the operating budget for MSU Denver's NCAA-II intercollegiate athletic program, which consists of nine women's and seven men's varsity teams.
>
> **Tivoli Park Facility Fee:**  This tri-institution student-approved fee is used to fund the development, enhancement, and ongoing maintenance of the Tivoli Park/Quad, Tivoli Patio and Coffee Lounge, and future campus-wide student gathering spaces.
>
> **Campus Recreation Fee:**  This student-approved fee is used for the operation of a wide range of high quality, and inclusive recreational and wellness opportunities. The fee supports equipment replacement, program and facility improvements.
>
> **Information Technology Fee:**  This fee will support, maintain, and enhance technology and software in classrooms, labs, and on-line learning environments.

3

Ex. B.  In his response, Plaintiff argues that these descriptions necessarily imply student access to the subject amenities.  Except for the Intercollegiate Athletic Fee, the Court disagrees that the language quoted above necessarily implies student access.  However, the fee descriptions and fee schedule do lend credence to Plaintiff's position, just not for the reason he articulates.  The Court notes the following language:

> *Undergraduate students registered <u>exclusively</u> for online classes will be charged tuition, Student Affairs Fee, Immunization Fee, Metro Bond Fee, Phoenix Center Fee, Information Technology Fee and* **an Online Education Fee of $20.00 per credit hour.**
>
> *Undergraduate students registered for both, <u>main and online courses</u> will be charged all of the mandatory fees* **plus an Online Education Fee of $20.00 per credit hour** *for the online course(s).*

*Id*. (emphases in original).  The inclusion of this language indicates that the parties could have contemplated fewer fees for online learners, presumably because online learners would not utilize the full extent of campus amenities.  In any event, the scope of these provisions cannot be resolved in favor of Defendant by way of a Rule 12(b)(5) motion.

In its reply brief, Defendant also argues that it was the act of registering for classes that resulted in Plaintiff owing student fees, not his receipt of services or access to certain campus amenities.  Defendant would have the Court follow reasoning to that effect in *Zwiker v. Lake Superior State Univ.*, 2020 Mich. Ct. Cl. LEXIS 2 (Mich. Ct. Claims Aug. 31, 2020).  However, as explained above, the amount of student fees Plaintiff owed may indeed have depended on the nature of the instruction he was provided.  *Zwiker* is thus unpersuasive.

Nor are Plaintiff's claims grounded in the rejected notion of educational malpractice.  Like the plaintiffs in *CenCor*, Plaintiff's claims relate to specific provisions incorporated into the FRNPA, rather than the general quality of the educational experiences he received.  *CenCor*, 868 P.2d at 398-99.

Overall then, Plaintiff's allegations, taken as true and viewed in the most favorable light, plausibly support a breach of contract claim.

**More Definite Statement for Unjust Enrichment**

Defendant last argues that a more definite statement is required for Plaintiff's unjust enrichment claim.  Defendant reasons that unjust enrichment is an equitable remedy available only in the absence of an express contract, and that an express contract exists here.  *See generally Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003).  As such, Defendant seeks a more definite statement from Plaintiff regarding how the express contract fails or does not cover the matter of student fees.

While the Court agrees that Plaintiff cannot <u>recover</u> under both theories, Rule 8(a) expressly allows inconsistent claims to be <u>pleaded</u> in the alternative.  *See also Montgomery Ward*

4

*& Co., Inc. v. Andrews*, 736 P.2d 40, 47 (Colo. App. 1987) ("Parties can state as many separate claims as they wish, regardless of their consistency. It is the evidence at trial that determines what relief will be granted."). Defendant essentially asks that Plaintiff be forced to argue against himself at the pleading stage. The Court will not require him to do so. Plaintiff's unjust enrichment claim has been adequately, and alternatively, stated to allow Defendant to prepare a responsive pleading.

Accordingly, Defendant's motion to dismiss is DENIED. Defendant shall have fourteen (14) days to file an answer.

DATED AND ORDERED: November 23, 2020.

BY THE COURT:

Judge A. Bruce Jones
Denver District Court Judge

5