# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0884
DIRECT EMAIL  rkaplan@kaplanhecker.com

January 4, 2021

**VIA ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

        Re:    *In re Columbia University Tuition Refund Action*,
                Lead Case No. 1:20-cv-03208 (JMF) (S.D.N.Y.)

Dear Judge Furman:

      On behalf of Defendant The Trustees of Columbia University in the City of New York ("Columbia"), we write in response to the Notice of Supplemental Authority (the "Sixth Notice") that Plaintiffs submitted on December 29, 2020. *See* ECF 55.[1]

      As with Plaintiffs' five prior Notices of Supplemental Authority, Plaintiffs' Sixth Notice does not provide any basis to conclude that Plaintiffs here have plausibly pleaded their claims under New York law for at least four reasons.

      *First*, *Doe v. Bradley*, No. 20 Civ. 1264, 2020 WL 7634159 (C.D. Ill. Dec. 22, 2020), was decided under Illinois law. Like the cases cited in Plaintiffs' prior submissions decided under the laws of Florida, California, Indiana, Colorado, Ohio, or Michigan, it is irrelevant for purposes of this case, since the parties agree that New York law applies and there is no question that the common law in those states with respect to claims against educational institutions is different from that in New York.

      *Second*, while *Ford v. Rensselaer Polytechnic Institute*, No. 20 Civ. 470, 2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020), and *Bergeron v. Rochester Institute of Technology*, No. 20 Civ. 6283, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), were decided under New York law, they do not acknowledge—much less apply—the rigorous standard that New York law requires in order to protect a university's discretion to manage its own academic and administrative affairs. *See Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 413 (1980). Specifically, as Columbia explains in its motion to dismiss, New York courts have long been careful to limit universities' contractual

---

[1]    Plaintiffs incorrectly identify their submission as their Fifth Notice of Supplemental Authority, when it is actually their sixth. *See* ECF 48-51, 53, 55.

**KAPLAN HECKER & FINK LLP**   2

liability by requiring plaintiffs to plead both (1) a clear and specific promise for particular services, *see, e.g.*, *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998), and (2) that a university acted arbitrarily or in bad faith, *Pell v. Trs. of Columbia Univ. in City of N.Y.*, No. 97 Civ. 0193, 1998 WL 19989, at *20 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.). *See* ECF 36 at 6-8, 13-15. And as Columbia demonstrated in its moving brief, Plaintiffs have not satisfied either of those core pleading requirements here.

Instead of applying the correct standard, *Bergeron* simply restates the "promises" alleged in the complaint in that case, 2020 WL 7486682, at *8, without analyzing whether such statements constituted specific, enforceable promises to provide specified services. In *Bergeron*, without any support in the case law, the court concludes that the defendant made judicially enforceable promises of extraordinary breadth, "extend[ing] beyond coursework to the *entirety of the educational experience*." 2020 WL 7486682, at *8 (emphasis added). *Ford* is similarly expansive, concluding that the "release[ of] a publication expounding the virtues of [the defendant's] in-person programming" somehow "fits the bill of a specific promise . . . at least for the purposes of a Rule 12(c) motion." 2020 WL 7389155, at *4-5. While *Ford* acknowledges that the publication at issue "may lay out some objectives [that RPI] only *hopes* to achieve," *Ford* nevertheless concludes that such aspirational statements became legally enforceable promises merely because the defendant had "implemented" at least some of them. *Id.* at *4 (emphasis added).[2] As a result, the legal analysis in *Bergeron* and *Ford* is not consistent with the settled requirements of New York law.[3]

*Third*, significant arguments that Columbia made in its motion to dismiss in this case were not raised at all by the defendants in *Ford* and *Bergeron*. For example, Columbia has argued that Plaintiffs fail to allege breach because they do not (and cannot) plead that Columbia acted arbitrarily or in bad faith when it made the decision to move classes online due to the COVID-19 pandemic. *See, e.g.*, ECF 36 at 13-17. But that important requirement for pleading breach against an educational institution in New York was not raised in either *Ford* or *Bergeron*. As a result, neither court considered whether those plaintiffs had adequately alleged that the universities acted arbitrarily or in bad faith in transitioning to online instruction in response to the health and safety risks posed by COVID-19. *See Ford*, 2020 WL 7389155, at *6-7 (applying a "faultless breach" standard); *Bergeron*, 2020 WL 7486682, at *8. Similarly, because the defendants in *Ford* and

---

[2] At the same time, *Ford* rejects an "esoteric" claim, like the claims brought by Plaintiffs here, based on similar course of conduct evidence, noting that "breach of contract actions between a student and a school" cannot be based "on the nature of . . . dealings with the school," but rather are "circumscribed to enforcing specific promises" "grounded in a text." *See id.* at *3-4.

[3] With respect to the alleged facts, *Ford* involves distinguishable allegations regarding Rensselaer's "CLASS" program: a "residential commons program" that "extends learning across the spectrum of student residential life" and required "all first- and second-year students . . . [to] live on campus." *Id.* at *1, 4. Unlike in *Ford*, Plaintiffs in this case do not allege that Columbia provides specific programs "built around a . . . residential commons program" where on-campus residency is explicitly advertised as part and parcel of the education provided. *Id.* Nor do Plaintiffs allege that Columbia uses "consistently declaratory" language stating that it "will" provide any such program to students. *Id.* at *4. *Bergeron*, in turn, focuses its analysis primarily on a Student Financial Responsibility Agreement and related policies—documents containing asserted disclaimers that are not at issue in this case. 2020 WL 7486682, at *6-7.

*Bergeron* did not argue for dismissal on the basis of impossibility, neither court considered that argument. *See* ECF 36 at 18-19.[4]

*Fourth and finally*, both *Ford* and *Bergeron* misapplied New York law when they declined to dismiss the plaintiffs' unjust enrichment claims. *See Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017) ("Unjust enrichment may be pleaded in the alternative, but only where there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue." (internal quotation marks omitted)). In this case, as in *Ford* and *Bergeron*, it is undisputed that the student-university relationship is contractual in nature. Allowing an unjust enrichment claim to go forward where, based on the pleading, the student-university contract does not contain a term for in-person education would negate the carefully-developed New York common law rules protecting a university's discretion to manage its own affairs. *See, e.g.*, *Gally*, 22 F. Supp. 2d at 210 (declining to recognize constructive discharge claim because doing so "would enable a student to avoid the bar against educational malpractice claims, as well as the limitations on breach of contract claims").

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record

---

[4] *Ford*'s concern that universities would be "perfectly insulated" from suit if they "never even attempt[ed] to provide" the things they promised, but merely provided "some education to [their] students," is misplaced. 2020 WL 7389155, at *6. Under New York law, if a university breaches a specific promise arbitrarily or in bad faith (for example, by refusing to fulfill a contractual obligation without justification), the university can be held liable for breach of contract. *See Pell*, 1998 WL 19989, at *20.