UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
IN RE COLUMBIA TUITION REFUND ACTION        :              20-CV-3208 (JMF)
                                                        :
------------------------------------------------------------------------X
                                                        :
XAVIERA MARBURY, *individually and on behalf of*    :
*others similarly situated*,                                :
                                                        :
                                    Plaintiff,          :              20-CV-3210 (JMF)
                                                        :
              -v-                                       :
                                                        :              OPINION AND ORDER
PACE UNIVERSITY,                                   :
                                                        :
                                    Defendant.       :
                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        In the Spring of 2020, after the novel coronavirus arrived in the United States, colleges

and universities throughout the country did their part to stop the spread of COVID-19 by moving

classes online and halting various in-person activities and services.  For the most part, this

response earned institutions of higher education praise for acting in the interests of public health.

But it also earned them a host of lawsuits from students seeking partial refunds for tuition and

fees that they had allegedly paid for in-person learning and other services.  Thus far, these kinds

of claims have received a mixed reception in the courts.  To the extent that students have brought

claims based on the quality of their educations or general promises of excellence, they have fared

poorly, as courts have been reluctant to second guess schools when it comes to academic matters.

But to the extent that students have identified specific services or facility access that schools

promised in exchange for tuition or fees, they have met with greater success.

These putative class actions are two of the many that have been brought against colleges and universities in the last year raising such claims. In one, students bring claims against Columbia University. In the other, a student brings claims against Pace University. In each case, the University now moves to dismiss — in the case of Columbia, by way of a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in the case of Pace, by way of a motion for judgment on the pleadings, pursuant to Rule 12(c). The cases are not formally consolidated, but the Court addresses the two motions together because they raise similar issues. Applying well-established principles of New York law governing the relationship between educational institutions and their students, and consistent with the decisions of most courts that have addressed these kinds of claims, the Court holds that some of the students' claims can proceed, while others must be dismissed. More specifically, to the extent that the students plausibly allege that their University violated specific contractual promises for particular services or access to facilities, their claims survive; to the extent that they fail to identify such promises, their claims must be and are dismissed.

## BACKGROUND

Plaintiffs Student A, Chris Riotta, Lisa Guerra, and Alexandra Taylor-Gutt (the "Columbia Plaintiffs") were students at Columbia University during the Spring 2020 semester. 20-CV-3208, ECF No. 42 ("Columbia SAC" or "Complaint"), ¶¶ 11-14. Plaintiff Xaviera Marbury was a student at Pace University during the same semester. 20-CV-3210, ECF No. 28 ("Pace FAC" or "Complaint"), ¶ 10. When the COVID-19 pandemic reached New York in March 2020, Columbia and Pace took similar actions to prevent the spread of illness. Most relevant here, both Universities moved all classes online from the middle of March through the end of the Spring 2020 semester; closed certain campus facilities; canceled various campus

activities; and encouraged students who lived on campus to vacate their dormitory rooms.  *See* Columbia SAC ¶¶ 45, 52-55; Pace FAC ¶¶ 41, 43, 51, 153.

Plaintiffs do not question the wisdom of the actions the Universities took to prevent the spread of a highly contagious, sometimes fatal disease.  (In fact, in their original Complaints — which the Court may consider as "controvertible, not conclusive, admissions," *Barris v. Hamilton*, No. 96-CV-9541 (DAB), 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999) (internal quotation marks omitted) — they went further, conceding that the actions at issue were, in fact, "the right thing . . . to do."  20-CV-3208, ECF No. 1, ¶ 2; 20-CV-3210, ECF No. 1, ¶ 2.)  Nevertheless, they contend that the actions breached the Universities' contractual obligations to provide in-person instruction and various on-campus services in exchange for tuition and fees.  *See* Columbia SAC ¶¶ 80-155, 171-96; Pace FAC ¶¶ 73-123, 140-57, 170-77.  On this theory, the Columbia Plaintiffs bring a putative class action against the Board of Trustees of Columbia University in the City of New York ("Columbia") pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 11.  Columbia SAC ¶ 16.  Marbury does the same against Pace.  Pace FAC ¶ 11.  Plaintiffs contend that they are entitled to pro rata refunds of tuition and fees reflecting the difference in fair market value of the services that they were allegedly promised and the services that they actually received.  *See* Columbia SAC ¶¶ 154-55, 195-96; Pace FAC ¶¶ 122-23, 156-57, 176-77.

## LEGAL STANDARDS

A Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss are subject to the same legal standards.  *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  In both instances, the Court must assume the truth of all facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See,*

*e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  To survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

## DISCUSSION

In each of these cases, the primary claim is that the Defendant University breached its contractual obligations to provide certain services, including in-person instruction and access to campus facilities and activities, when the Universities modified and curtailed their activities in response to the COVID-19 pandemic.  Plaintiff or Plaintiffs in each case also bring claims for unjust enrichment (in the alternative to their contract claims), conversion, and violations of New York's consumer protection statutes.  The Court will address each of these claims in turn.

### A. Breach of Contract

Under New York law, it is well established that the relationship between an institution of higher education and its students is "contractual in nature." *Prusack v. State*, 498 N.Y.S.2d 455, 456 (2d Dep't 1986); *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011).  "The rights and obligations of the parties as contained in the university's

bulletins, circulars and regulations made available to the student[] become a part of this contract." *Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (2d Dep't 1987). Thus, "to make out an implied contract claim" against a university, "a student must identify specific language in the school's bulletins, circulars, catalogues and handbooks which establishes the particular 'contractual' right or obligation alleged by the student." *Keefe v. N.Y. Law Sch.*, 906 N.Y.S.2d 773, 2009 WL 3858679, at *1 (Sup. Ct. 2009) (unpublished table decision), *aff'd*, 897 N.Y.S.2d 94 (1st Dep't 2010); *see also Jeffers v. Am. Univ. of Antigua*, 3 N.Y.S.3d 335, 337 (1st Dep't 2015); *Cheves v. Trs. of Columbia Univ.*, 931 N.Y.S.2d 877, 877 (1st Dep't 2011). "The interpretation of a university's catalogue, like the interpretation of any contract, is a matter of law for the Court." *Deen v. New Sch. Univ.*, No. 05-CV-7174 (KMW), 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007) (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998)).

In general, to sustain a contract claim against a university, a student must point to a provision that guarantees "certain specified services," *Baldridge v. State*, 740 N.Y.S.2d 723, 725 (3d Dep't 2002) (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (2d Dep't 1982)), not merely to a "[g]eneral statement[] of policy," *Keefe*, 2009 WL 3858679, at *1, or to statements of "opinion or puffery," *Bader v. Siegel*, 657 N.Y.S.2d 28, 29 (1st Dep't 1997). Additionally, "to state a valid claim for a breach of contract" against a university, a student "must state when and how the defendant breached the specific contractual promise." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04-CV-704 (RPP), 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005). Significantly, a claim that is, at bottom, a claim for educational malpractice is not cognizable. *See Donohue v. Copiague Union Free Sch. Dist.*, 391 N.E.2d 1352, 1354 (N.Y. 1979); *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y.

5

1998) (collecting cases).  Thus, a claim must be dismissed if its "essence . . . is that the school breached its agreement by failing to provide an effective education."  *Paladino*, 454 N.Y.S.2d at 872.  This limitation is grounded on the view that "[t]he courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods."  *Id.* (internal quotation marks omitted).

Applying the foregoing standards, courts have upheld contract claims based on unfulfilled promises to provide, for example, "state-of-the-art facilities, faculty tutor-advisors, appropriate recognition upon completion of the program, overviews of the latest techniques, program activities from 9:00 A.M. to 4:00 P.M. every day, and membership in the [American Association of Orthodontics]," *Ansari v. N.Y. Univ.*, No. 96-CV-5280 (MBM), 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997), and "detect[ion of] learning deficiencies and . . . the necessary tutorial and guidance services," *Vill. Cmty. Sch. v. Adler*, 478 N.Y.S.2d 546, 548 (N.Y. Civ. Ct. 1984); *see also Paladino*, 454 N.Y.S.2d at 873 (stating hypothetically that an unfulfilled promise for "a designated number of hours of instruction" might support a contract claim).  By contrast, courts have rejected claims based on more general promises — for example, "i) to provide a great learning environment for adult students; ii) to respect adult students and treat them with respect; iii) to not discriminate against adult students; iv) to provide supervision and teaching by honest and unbiased instructors; and v) to provide and to follow guidelines for student treatment," *Ward v. N.Y. Univ.*, No. 99-CV-8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000), or "a) to provide [the] plaintiff with an educational environment free of sex discrimination in all programs and activities, including academic programs and school-sponsored activities on and off campus; b) to provide [the] plaintiff with an educational environment free of sexual harassment; [and c)] not to retaliate against anyone who participated

in the process of reporting or attempting to remedy sexual harassment or discrimination," *Novio v. N.Y. Acad. of Art*, 317 F. Supp. 3d 803, 812 (S.D.N.Y. 2018).

Measured against these standards, some, but not all, of Plaintiffs' contract claims survive. The Court will begin with Plaintiffs' claims relating to the change in instructional format from in-person to online classes; then turn to claims relating to campus facilities and activities; and end with Marbury's claims relating to campus housing and meals.

### 1. Instructional Format (Columbia)

First, the Columbia Plaintiffs' instructional format claim must be dismissed because they fail to plead any specific promise by Columbia to provide exclusively in-person instruction. Instead, Plaintiffs rely principally on three sets of allegations to support their claim: (1) that "[t]hose classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction," Columbia SAC ¶ 137, and that their syllabi, departmental policies and handbooks, and online course registration portal indicated "class meeting schedules, locations, and physical attendance requirements," *id.* ¶¶ 135-139; (2) that Columbia offers "certain classes and degree programs . . . on a fully online basis," *id.* ¶ 94, and "specifically delineate[s]" those courses and programs on its website, *id.* ¶ 132; and (3) various provisions of Columbia's publications describing the "on-campus experience," *id.* ¶ 96; *see id.* ¶¶ 88-128. None passes muster.

First, with respect to Columbia's practice of teaching certain classes in person before the pandemic, a "[u]niversity's academic and administrative prerogatives" may not "be impliedly limited by custom." *Gertler v. Goodgold*, 487 N.Y.S.2d 565, 568 (1st Dep't 1985), *aff'd*, 489 N.E.2d 748 (N.Y. 1985); *see also Hassan v. Fordham Univ.*, No. 20-CV-3265 (KMW), 2021 WL 293255, at *5 (S.D.N.Y. Jan. 28, 2021) (applying *Gertler* to claims brought by students). In

*Gertler*, a tenured medical professor sued for breach of contract after the university required him to relocate to different office and work space that he alleged would "deprive him of the opportunity to conduct the experiments in which he [wa]s engaged" and thus "render meaningless his ability to research or teach."  487 N.Y.S.2d at 567-68.  The New York Appellate Division dismissed Gertler's claims, holding that neither the general "academic practice" of "provid[ing] a faculty member with office space for his immediate needs" nor the fact that Gertler had inhabited his previous office for twelve years created a contractual entitlement to "any office at all, much less space of his own choosing."  *Id.* at 568.

Likewise, the fact that Columbia provided in-person instruction in Plaintiffs' courses before March 2020 does not imply a contractual entitlement to continued instruction in the same location and manner.  *See Ford v. Rensselaer Polytechnic Inst.*, — F. Supp. 3d — , No. 20-CV-470 (DNH), 2020 WL 7389155, at *4 (N.D.N.Y. Dec. 16, 2020) ("[A]n implied promise for on-campus education based on the nature of defendant's [sic] dealings with the school . . . does not withstand scrutiny.").  Nor do the references to classroom locations and physical attendance requirements in Columbia's syllabi, departmental policies and handbooks, and course registration portal.  They merely memorialize the pre-pandemic practice; they offered no guarantee that it would continue indefinitely.  *Cf. Maas v. Cornell Univ.*, 721 N.E.2d 966, 970 (N.Y. 1999) (stating that the Campus Code was "heavily informational in nature and d[id] not express or support the implication of any promise on the part of the [u]niversity").

Plaintiffs' other allegations fare no better.  To the extent that Columbia advertised certain academic programs as "fully online," Columbia SAC ¶ 94, students in such programs might be able to claim a contractual entitlement to exclusively online instruction.  It does not follow, however, that students in *other* programs, such as Plaintiffs, were contractually entitled to

exclusively in-person instruction.  Finally, the references in Columbia's marketing materials to

"the on-campus experience" are not sufficient to support a claim.  Many of these references are

mere "opinion or puffery" that is "too vague to be enforced as a contract."  *Bader*, 657 N.Y.S.2d

at 29; *see, e.g.*, Columbia SAC ¶ 104 (citing a statement in a University publication that

"Columbia is an in-person kind of place").  To the extent that Plaintiffs have identified more

specific language, any alleged promises on Columbia's part are for services other than in-person

instruction.  For example, assuming without deciding that Columbia was contractually obligated

to maintain the "6 to 1 student to faculty ratio" that it allegedly touts on its website, Plaintiffs fail

to plead breach, because they do not allege that Columbia fell short of that ratio in connection

with the shift to online instruction.  Columbia SAC ¶ 102.  Along the same lines, references to

Columbia's "physical location in New York City" in University publications and marketing

materials do not support Plaintiffs' contract claim, because there is no claim that the University's

actual location has changed.  *See, e.g.*, *id.* ¶ 105.[1]  In sum, the Columbia Plaintiffs' claims must

---

[1]      Plaintiffs also allege that certain schools within Columbia do not accept transfer credits
from other universities for online courses; for example, an online bulletin states that "Columbia
University does not offer online courses for credit; therefore, online courses are not eligible for
transfer credit."  *Id.* ¶ 145 (quoting *Transfer Credit*, Columbia Sch. of Gen. Studies, http://bull-
etin.columbia.edu/general-studies/transfer-credit/); *see also id.* ¶¶ 143-44 (quoting *Transfer
Credit*, Columbia Coll. & Columbia Eng'g, https://www.cc-seas.columbia.edu/csa/transfer-
credit).  But as noted, Plaintiffs also allege that Columbia offers certain "fully online" academic
programs, "which it markets and prices as separate and distinct products" from the programs in
which they enrolled.  *Id.* ¶¶ 24, 94; *see* 20-CV-3208, ECF No. 45 ("Columbia Pls.' Opp'n"), at
2-3.  Plaintiffs cannot have it both ways.  That is, they cannot allege that they were entitled to in-
person instruction *both* because they opted not to enroll in one of Columbia's delineated online
programs *and* because Columbia does not offer any online courses for credit at all.   "[W]here a
plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor
accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."
*Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (internal quotation marks omitted).
Perhaps for this reason, Plaintiffs do not even address their allegations regarding Columbia's
alleged transfer credits policy in their opposition brief, *see* Columbia Pls.' Opp'n, so they have

be dismissed to the extent they are premised on an alleged contractual entitlement to "live, in-person instruction in a physical classroom."  Columbia SAC ¶ 155.[2]

## 2. Instructional Format (Pace)

By contrast, Marbury's instructional format claim against Pace survives because she alleges that the course registration portal on Pace's website stated that "[o]n-campus" courses would be "taught with *only* traditional in-person, on-campus class meetings."  Pace FAC ¶ 106 (emphasis added).[3]  Although Marbury's interpretation of this statement could be subject to challenge, *see Ansari*, 1997 WL 257473, at *3, Marbury plausibly alleges that Pace breached a promise to provide specific services when it "mov[ed] all classes online" beginning March 10, 2020, to prevent the spread of COVID-19, Pace FAC ¶ 41; *see also id.* ¶¶ 1, 49, 115.

Pace responds by invoking a disclaimer in its University Catalog, which states that "unforeseen circumstances may necessitate adjustment to class schedules" and that "[t]he University shall not be responsible for the refund of any tuition or fees in the event of any such occurrence . . . .  Nor shall the University be liable for any consequential damages as a result of such a change in schedule."  20-CV-3210, ECF No. 39 ("Pace Mem."), at 2-3, 15 (emphases omitted) (quoting *Emergency Closings and Other Changes in Class Schedules*, Pace University,

---

arguably abandoned any reliance on them, *cf. Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).

[2]      In light of that conclusion, the Court need not and does not address Columbia's argument for dismissal based on the doctrine of impossibility.  *See* 20-CV-3208, ECF No. 36 ("Columbia Mem."), at 18-19.

[3]      Notably, it is somewhat unclear when the terms of the parties' contract were set. Marbury alleges that she registered for courses after having already paid tuition, *see id.* ¶ 102, but that she was entitled to withdraw and receive a full refund until January 31, 2020, *see id.* ¶ 89 n.22.  The Court therefore assumes for purposes of deciding this motion that the statement in the course registration portal was capable of shaping the parties' contract.

https://pace.smartcatalogiq.com/en/2018-2019/Undergraduate-Catalog/Academic/Academic-Policies-and-General-Regulations/Emergency-Closings-and-Other-Changes-in-Class-Schedules (20-CV-3210, ECF No. 29-7)).[4]   It is certainly true that "[a] 'specific disclaimer[]' in the [university] catalogue . . . may excuse the university from a specific promise that would otherwise be a contractual obligation."  *Deen*, 2007 WL 1032295, at *2 (quoting *Prusack*, 498 N.Y.S.2d at 456).  But here, it is at least ambiguous whether changing the format of a class from in-person to online constitutes an "adjustment to class schedules."  The claim against Pace is thus distinguishable from the claim in *Lindner v. Occidental College*, No. CV-20-8481 (JFW) (RAOx), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020).  The disclaimer at issue in *Lindner* broadly stated that the college "reserve[d] the right to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so."  *Id.* at *2.  By contrast, Pace's disclaimer is significantly narrower in scope and arguably does not cover the change in instructional format from in-person to online.  At best, it is ambiguous and, "[o]n a motion to dismiss a breach of contract claim," the Court must "resolve any contractual ambiguities in favor of the plaintiff."  *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015) (internal quotation marks omitted).

Pace also argues that Marbury's instructional format claim is effectively an impermissible claim for educational malpractice.  *See* Pace Mem. 13-15 & nn.10-11.  The argument is somewhat well-taken insofar as Marbury ultimately asks the Court to compare the

---

[4]     Because Marbury incorporates the University Catalog, which contains the excerpt quoted above, by reference in her Complaint, *see* Pace FAC ¶ 92, the Court may consider this disclaimer even though it does not appear in the Complaint itself, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  Moreover, the disclaimer is cited in, and attached to, Pace's Answer, *see* ECF Nos. 29 and 29-7, which the Court may consider in connection with its Rule 12(c) motion for judgment on the pleadings, *see, e.g.*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

value of in-person and online education.  But viewing the Complaint in the light most favorable

to Marbury, the gravamen of her instructional format claim is not that the online education she

received was subpar or ineffective, but rather that it was a "materially different product" than the

in-person education to which she was allegedly entitled.  Pace FAC ¶ 119.  At this stage, the

Court is not persuaded that adjudicating the claim will necessarily require the Court to

"substitute [its] judgment for that of [U]niversity officials."  *Sirohi v. Lee*, 222, 634 N.Y.S.2d

119, 120 (1st Dep't 1995).  The Court therefore joins the majority of district courts around the

country that have declined to hold, at least on a motion to dismiss (or judgment on the

pleadings), that claims arising from universities' adoption of online instruction in response to the

COVID-19 pandemic are barred under the educational malpractice doctrine.[5]

 *Paynter v. New York University*, 319 N.Y.S.2d 893 (App. Term 1971) (per curiam), on

which Pace relies, does not call for a different result.  *See* Pace Mem. 11.  In *Paynter*, the New

York Appellate Term dismissed a breach of contract claim arising from New York University's

decision to suspend classes from May 7, 1970, through the end of the school year, in light of

anti-war protests that followed the shooting at Kent State University on May 4, 1970.  319

N.Y.S.2d at 893.  Reversing the trial court, the Appellate Term's brief opinion held that "while

in a strict sense, a student contracts with a college or university for a number of courses to be

---

[5] *See, e.g.*, *Hassan*, 2021 WL 293255, at *2-4; *Ford*, 2020 WL 7389155, at *5-6; *Chong v. Ne. Univ.*, No. CV-20-10844 (RGS), 2020 WL 7338499, at *2 n.1 (D. Mass. Dec. 14, 2020); *Gibson v. Lynn Univ., Inc.*, — F. Supp. 3d —, No. 20-CV-81173 (RAR), 2020 WL 7024463, at *4 (S.D. Fla. Nov. 29, 2020); *Saroya v. Univ. of the Pac.*, — F. Supp. 3d —, No. 5:20-CV-03196 (EJD), 2020 WL 7013598, at *4 (N.D. Cal. Nov. 27, 2020); *Salerno v. Fla. S. Coll.*, — F. Supp. 3d —, No. 8:20-CV-1494-30 (SPF), 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020). *But see Gociman v. Loyola Univ. of Chi.*, No. 20-CV-3116, 2021 WL 243573, at *3 (N.D. Ill. Jan. 25, 2021) (concluding that the plaintiffs' claim that online instruction was "worth less" than in-person instruction was, at bottom, a claim for educational malpractice and, thus, not cognizable under Illinois law); *Lindner*, 2020 WL 7350212, at *7 (same under California law).

given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom" and that an "insubstantial change made in the schedule of classes does not permit a recovery of tuition." *Id.* at 894. The decision does lend some support to Pace's position, as it confirms that universities have latitude to make reasonable adjustments in response to unforeseen events, such as the anti-war movement of the early 1970s or the COVID-19 pandemic, without breaching their contractual obligations to students. Nevertheless, drawing all reasonable inferences in Marbury's favor, as required, the Court cannot conclude as a matter of law that Pace's adoption of online instruction from mid-March through the end of the spring semester was an "insubstantial change." For these reasons, Marbury's instructional format claim against Pace survives.

### 3. Campus Facilities and Activities (Columbia)

The Columbia Plaintiffs are on stronger ground with their claim that Columbia breached a contract to provide access to certain campus facilities and activities in exchange for mandatory student fees. Specifically, they allege that they paid a Facilities Fee, which Columbia describes as the fee for "access to the facilities at the Dodge Physical Fitness Center and Lerner Hall"; a Student Life Fee, "supporting student activities, access to the facilities at the Dodge Physical Fitness Center and Lerner Hall, and library and computer network privileges"; a Student Activity Fee, which "help[s] cover the costs of student events, activities, and . . . help[s] fund student organizations"; and a Health and Related Services Fee, which confers "access [to] the programs and services provided through Columbia Health's five departments, including 24/7 support from Counseling & Psychological Services, Medical Services, and Sexual Violence Response."

Columbia SAC ¶¶ 35, 41-44.[6]  Plaintiffs allege that, at some point during the Spring 2020

semester, "the Dodge Center and Lerner Hall were closed, student events and activities were

cancelled, [and] student organizations were no longer operational."  *Id.* ¶ 45.  On March 15,

2020, Columbia also allegedly closed its "libraries and other buildings and non-essential

offices."  *Id.* ¶ 55.  Although Columbia "has refunded some of the fees" it collected, Plaintiffs

challenge the adequacy of the refunds to account for the closures and cancelations.  *Id.* ¶ 63.

      These allegations adequately state a breach of contract claim.  In arguing otherwise,

Columbia contends that Plaintiffs must allege bad faith or arbitrariness, which they fail to do.

*See* Columbia Mem. 13-15.  (In fact, Plaintiffs themselves conceded in their original Complaint

that closing most campus buildings was "the right thing for [Columbia] to do."  20-CV-3208,

ECF No. 1, ¶ 2.  And they do not allege otherwise in the operative Complaint.)  But the principal

cases upon which Columbia relies in making this argument are easily distinguished as they

largely involved decisions regarding "academic standards," such as "suspension or expulsion for

academic unfitness," *Tedeschi v. Wagner Coll.*, 404 N.E.2d 1302, 1304 (N.Y. 1980), or the

awarding of degrees, *see Olsson v. Bd. of Higher Educ.*, 402 N.E.2d 1150, 1153 (N.Y. 1980); *see

also Susan M. v. N.Y. Law Sch.*, 556 N.E.2d 1104, 1107 (N.Y. 1990) (collecting cases).  By

contrast, where courts applying New York law have assessed whether an educational institution

breached a specific promise to provide discrete services — as opposed to reviewing decisions

involving academic standards — they generally have not inquired into whether the challenged

---

[6]    Plaintiffs also refer to the Facilities Fee as the "University Facilities Fee."  *See, e.g.*, *id.*
¶¶ 30-31, 180-81, 192.

decision was arbitrary or made in bad faith.  *See, e.g.*, *Novio*, 317 F. Supp. 3d at 813-14; *Ansari*, 1997 WL 257473, at *3; *Adler*, 478 N.Y.S.2d at 548.[7]

This distinction makes sense.  University decisions regarding academic standards are entitled to judicial deference for the same reason that courts refuse to entertain claims of educational malpractice: because "decisions surrounding the issuance of [academic] credentials [must] be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis."  *Olsson*, 402 N.E.2d at 1153.  As the New York Court of Appeals has held, that principle has no application where a court is asked to review a decision to suspend or expel a student for non-academic reasons, as such decisions "involve determinations quite closely akin to the day-to-day work of the judiciary" and do not risk intrusion into academic freedom.  *Tedeschi*, 404 N.E.2d at 1304.  So too, there is no call for deference when a court is called upon, as this Court is here, to determine if a university breached a contract to provide specified, non-academic services.  If anything, such claims are even more readily susceptible to judicial review than claims arising from students' dismissals for non-academic reasons because breach of contract claims for specific university services are not based on "essentially fictional" contracts that must "generally be[] assumed rather than proved."  *Id.* at 1305.  Instead, they are based on provisions of universities' publications that courts are well-equipped to interpret according to established contractual interpretation principles.

---

[7]      *Clarke v. Trustees of Columbia University of City of New York*, No. 95-CV-10627 (PKL), 1996 WL 609271, at *5-6 (S.D.N.Y. Oct. 23, 1996), which takes the approach that Columbia urges here, appears to be an outlier.  *Clarke* is also arguably outdated insofar as it states that "[t]he New York Court of Appeals has not clearly held that a student can state a valid cause of action in contract on the basis of terms contained in school publications."  *Id.* at *6.  Strictly speaking, that remains the case, but that holding has been widely adopted by New York's lower courts and courts in this District, as discussed above.

In holding that Plaintiffs need not plead or prove bad faith, the Court parts ways with a recent decision by Judge Wood addressing similar claims against Fordham University. *See Hassan*, 2021 WL 293255, at \*7-9. Judge Wood reasoned that courts have applied "the 'bad faith' standard . . . in diverse circumstances" and not solely in proceedings pursuant to Article 78 of New York's Civil Practice Law & Rules, which provides for judicial review of agency decisions and certain decisions of private universities. *Id.* at \*7-8 & n.3 (citing *Anthes v. N.Y. Univ.*, No. 17-CV-2511 (ALC), 2018 WL 1737540, at \*13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57 (2d Cir. 2019) (summary order); *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 511 (S.D.N.Y. 2015); *Babiker v. Ross Univ. Sch. of Med.*, No. 98-CV-1429 (THK). 2000 WL 666342, at \*6 (S.D.N.Y. May 19, 2000), *aff'd*, 86 F. App'x 457 (2d Cir. 2004) (summary order); and *Pell v. Trs. of Columbia Univ. in City of N.Y.*, No. 97-CV-193 (SS), 1998 WL 19989, at \*20 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.)). That may be true, but none of the cited cases addressed a university's failure to provide services that it had expressly promised in its publications. For example, in *Anthes*, the plaintiff's breach of contract claim arose from the university's "refus[al] to assist [the p]laintiff in validating his credentials," which the court expressly stated was not the subject of any alleged "agreement, express or implied," between the parties. 2018 WL 1737540, at \*12-13. In *Pearson*, the plaintiff brought three breach of contract claims; only one was supported by specific language in the university handbook, and the court held that the university had complied with "the letter of th[at] [u]niversity rule." 144 F. Supp. 3d at 510-11. Meanwhile, *Babiker* addressed a student's dismissal at least in part for academic reasons, namely his failure to pass a required examination. *See* 2000 WL 666342, at \*1-2, 6-7. Finally, in *Pell*, the court held that the plaintiff stated a claim for breach of the freestanding, implied contractual duty to engage with students in good faith

based on the plaintiff's allegations that professors at the university first attempted to block her admission and then harassed, threatened, and intimidated her, sexually and otherwise, while she was a student, in "a campaign of hostility and terror."  1998 WL 19989, at *12-14, 20.  *Pell* stands for the proposition that a university must act in good faith in dealing with its students, even in the absence of any specific promise.  It does not suggest, however, that bad faith is an essential element of every breach of contract claim brought by a student.  To the extent that Judge Wood's opinion in *Hassan* adopts such a rule, the Court declines to follow it.

### 4.  Pace Campus Facilities and Activities (Pace)

Marbury also paid mandatory fees for the Spring 2020 semester, including a General Fee that Pace described as intended to cover "costs associated with . . . tutoring and writing centers, library services, co-op and career services, inter-campus transportation, safety and security, parking, and athletic activities"; an Activity Fee "intended to cover a range of student activities"; a Health Center Fee intended to support costs for the University Health Care Unit; and a Technology Fee intended to confer access to "the latest instructional technology resources available," including on-campus computer labs.  Pace FAC ¶ 35, 147-50 (internal quotation marks omitted).  She claims that Pace breached its contractual obligation to provide the benefits associated with these fees, *see id.* ¶¶ 140-57, noting that Pace "clos[ed] most campus buildings" and "cancel[ed] most student activities" in response to the pandemic, without refunding any fees, *id.* ¶¶ 52, 153.  Although Marbury's allegations verge on conclusory, she narrowly states a plausible claim that Pace breached a contract to provide access to some on-campus facilities and activities in exchange for the fees that she paid.  Accordingly, and for the reasons stated above, Pace's motion for judgment on the pleadings on Marbury's breach of contract claim based on the availability of campus facilities and activities must be and is denied.

17

###### 5.   **On-Campus Housing and Meals (Pace)**

Finally, there are two breach of contract claims that Marbury alleges against Pace that the

Columbia Plaintiffs do not allege against Columbia: for failure to provide on-campus housing

and meals.[8]  Specifically, Marbury alleges that she and Pace entered into contracts providing

that, in exchange for "certain fees," the University would provide "on-campus housing . . . for

the duration of the Spring 2020 semester," as well as "meals and on-campus dining options."

Pace FAC ¶ 172, 192.  The semester began on January 27, 2020, and was scheduled to conclude

on May 16, 2020.  *Id.* ¶¶ 38-39.  But on March 18, 2020, in light of increasing concern over the

COVID-19 pandemic, Pace "encourag[ed]" students to move out of their residence halls or not to

return from spring break if they had already left.  *Id.* ¶ 43.  Marbury was among those students

who had left campus for spring break and did not return.  *Id.* ¶¶ 42, 44.  Although Pace issued an

on-campus housing refund of $2,000 for students who lived on the New York campus, *id.* ¶ 53,

Marbury challenges the adequacy of this refund, *see id.* ¶¶ 54-56.

The Court need not dwell long on Marbury's meal claim for the simple reason that *she*

dwells on it not at all.  That is, Marbury fails to respond to Pace's argument for dismissal and,

thus, is deemed to have abandoned the claim.  *See Lipton*, 315 F. Supp. 2d at 446 ("[A] [c]ourt

may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a

defendant's arguments that the claim should be dismissed.").  As for the housing claim:

Assuming without deciding that Marbury's vague allegations are sufficient to establish the

existence of a contract, her claim fails because she concedes that Pace offered to make on-

campus housing available past March 18, 2020, for students who requested it.  In her opposition

---

[8]      The Columbia Plaintiffs do not plead any claims relating to campus housing and meals because Columbia announced that it will issue full, *pro rata* room and board refunds.  Columbia SAC ¶ 66.

brief, Marbury quotes a March 18, 2020 email from Pace directing students that, "*[w]henever possible*, students *should* move out of their residence halls and return home," and noting that housing availability would be "limited" during the "remote-learning phase."  20-CV-3210, ECF No. 45 ("Marbury Opp'n"), at 17 (emphases added) (quoting https://myemail.constantcontact.com/Coronavirus-Update--Residential-Student-Move-out-Instructions.html?soid=1103481471610&aid=ayW3sleW2w0 ("Mar. 18, 2020 Email"))[9]  Moreover, Pace stated in the same email that "[a]ny student who need[ed] to remain in the residence halls [could] do so."  Mar. 18, 2020 Email.  Given the absence of any allegation that Marbury sought to continue living on campus during the remote-learning phase, the only plausible reading of the Complaint is that she voluntarily vacated her residence hall.  It follows that her claim that Pace breached a contract to provide housing for the duration of the semester must be dismissed.

## B.  Unjust Enrichment

In the alternative to their contract claims, Plaintiffs in both cases bring claims for unjust enrichment.  Specifically, they allege that their Universities impermissibly enriched themselves by retaining tuition and fees despite the operational changes necessitated by the pandemic.  *See* Columbia SAC ¶¶ 156-70, 197-206; Pace FAC ¶¶ 124-39, 158-69.  To state a claim for unjust enrichment under New York law, a plaintiff must allege "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution."  *Kaye v.*

---

[9]     Although the March 18, 2020 email is not cited in the Complaint, it is arguably "integral" to it because Marbury "relies heavily upon [the email's] effect," *Chambers*, 282 F.3d at 153 (internal quotation marks omitted), in alleging that Pace "required students to vacate [on-campus] housing prior to the completion of the Spring 2020 semester," Pace FAC ¶ 174.  Alternatively, Marbury's reliance on the email can be treated as an implicit abandonment of her broader claim that Pace evicted students from campus housing.  After all, the concession negates Marbury's allegation that Pace "required students to vacate [on-campus] housing prior to the completion of the Spring 2020 semester, thus literally evicting them."  *Id.*

*Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (Sotomayor, J.) (quoting *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983)).  "[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties."  *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (internal quotation marks omitted).  Unjust enrichment claims are available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," such as when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract . . . claim."  *Id.*

In light of these standards, Plaintiffs' unjust enrichment claims are easily dismissed, as the claims rest on the same factual allegations as their contract claims.  Plaintiffs argue that they may plead unjust enrichment in the alternative at this stage of litigation, *see* Columbia Pls.' Opp'n 18; Marbury Opp'n 19, but the New York Court of Appeals has made clear that "unjust enrichment is not a catchall cause of action to be used when others fail," *Corsello*, 967 N.E.2d at 1185.  Relying on *Corsello*, courts in this District have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship. *See, e.g.*, *Brumfield v. Trader Joe's Co.*, No. 17-CV-3239 (LGS), 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018); *AFP Mfg. Corp. v. AFP Imaging Corp.*, No. 17-CV-03292 (NSR), 2018 WL 3329859, at *11 & n.4 (S.D.N.Y. July 6, 2018); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433-34 (S.D.N.Y. 2017), *modified on reconsideration*, Nos. 14-MD-

2543 (JMF), 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526 (KBF), 2017 WL 213815, at \*7 (S.D.N.Y. Jan. 18, 2017); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015).  Consistent with these decisions, Plaintiffs' unjust enrichment claims are dismissed.

## C.  Conversion

Next, Plaintiffs in both cases claim that the Universities "converted" their "2020 Spring semester tuition" by failing to provide the services for which they were paid.  Columbia SAC ¶¶ 207-26; Pace FAC ¶¶ 208-18.  To state a claim for conversion under New York law, a plaintiff must allege that "someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (citations omitted).  Money may be the subject of a conversion action only if it is "specifically identifiable and segregated" and there exists "an obligation to return or otherwise treat in a particular manner the specific fund in question."  *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (1st Dep't 1990).  Moreover, "[a] cause of action for conversion cannot be predicated on a mere breach of contract."  *Jeffers*, 3 N.Y.S.3d at 339 (internal quotation marks omitted).

Plaintiffs' allegations in these cases plainly do not support claims for conversion.  They do not suggest that the Universities were obligated to return their tuition or fees or to treat them in a particular manner.  *See Mfrs. Hanover Tr.*, 559 N.Y.S.2d at 712.  Plaintiffs' conversion claims also fail for the second and independent reason that they are "predicated on a mere breach of contract."  *Jeffers*, 3 N.Y.S.3d at 339 (internal quotation marks omitted).  Accordingly, Plaintiffs' conversion claims must be and are dismissed.

**D.  Violations of New York General Business Law Sections 349 and 350**

Finally, Plaintiffs in both cases claim that the Universities violated Sections 349 and 350 of the New York General Business Law.  Columbia SAC ¶¶ 227-58; Pace FAC ¶¶ 219-36. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  *Id.* § 350.  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012) (internal quotation marks omitted).  Material omissions may give rise to a claim where "the business alone possesses material information that is relevant to the consumer and fails to provide this information."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).

Measured against these standards, Plaintiffs' claims plainly fail.  Nowhere do they allege that the Universities' representations regarding the services that they would offer during the Spring 2020 semester were materially misleading.  Notably, Plaintiffs cite, and the Court has found, no case holding that a plaintiff can state a claim under Section 349 or 350 where the defendant neither knew nor could have known that its commercial acts or practices were false. And Plaintiffs obviously do not suggest that either Columbia or Pace knew in advance that a pandemic would necessitate fundamental changes to its services and operations beginning in mid-March 2020 but failed to disclose this information to students.  Plaintiffs' claims pursuant to the New York General Business Law must therefore be dismissed.

**CONCLUSION**

For the foregoing reasons, Columbia's motion to dismiss and Pace's motion for judgment on the pleadings are each GRANTED in part and DENIED in part.  In particular, to the extent that Plaintiffs in each case identify specific promises in their respective Universities' publications that the Universities allegedly breached, the motions are denied; to the extent they fail to do so, their claims are dismissed.  More specifically:

- The Columbia Plaintiffs' contract claim relating to instructional format is dismissed.

- Marbury's contract claim relating to instructional format survives.

- The contract claims relating to on-campus facilities and activities survive in both cases.

- Marbury's contract claims relating to on-campus housing and meals are dismissed.

- The claims for unjust enrichment, conversion, and violations of the New York General Business Law are dismissed in both cases.

By separate Orders to be entered today, the Court will set a deadline for Columbia to file its answer and will schedule an initial pretrial conference in each case.

The Court declines to grant Plaintiffs leave to amend their Complaints.  Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted).  Here, the Columbia Plaintiffs do not request leave to amend, and although Marbury does, *see* Marbury Opp'n 25, she does not suggest that she is in possession of facts that would cure the problems with her dismissed claims, *see, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading

deficiencies in his complaint."), *aff'd,* 619 F. App'x 34 (2d Cir. 2015) (summary order).
Additionally, the Court granted Plaintiffs in both cases leave to amend their prior Complaints in response to Defendants' motions and explicitly warned that they would "not be given any further opportunity to amend the complaint to address issues raised by the motion."  20-CV-3208, ECF No. 37; 20-CV-3210, ECF No. 41; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

The Clerk of Court is directed to terminate 20-CV-3208, ECF No. 35 and 20-CV-3210, ECF No. 38.

SO ORDERED.

Dated: February 26, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge