UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                :

IN RE COLUMBIA UNIVERSITY TUITION    :     Lead Case No. 1:20-cv-03208 (JMF)
REFUND ACTION                              :
                                                :
-------------------------------------------------------------x

**JOINT DECLARATION OF ROY T. WILLEY, IV AND THOMAS J. McKENNA**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT, APPROVAL OF MANNER OF**
**DISTRIBUTION OF NET SETTLEMENT FUND, AN AWARD OF ATTORNEYS' FEES**
**AND EXPENSES AND AN AWARD TO PLAINTIFFS**

We, Roy T. Willey, IV and Thomas J. McKenna, declare as follows:

1.      I, Roy T. Willey, IV, am a partner at the Anastopoulo Law Firm, Co-Lead Counsel for Named Plaintiffs in the above-captioned matter.  I have been admitted *pro hac vice* to practice in this Action.  (ECF No. 15).

2.      I, Thomas J. McKenna, am a partner at Gainey McKenna & Egleston, Co-Lead Counsel for Named Plaintiffs in the above-captioned matter.  I am a member of good standing of the Bar of the State of New York and of this Court.

3.      This Joint Declaration is submitted in support of the accompanying Motion for Final Approval of Class Action Settlement, Approval of Manner of Distribution of Net Settlement Fund, An Award of Attorneys' Fees and Expenses and An Award to Plaintiffs,[1] which seeks an order that, among other things, grants Final approval of the Settlement, awards fees and expenses to Class Counsel and case contribution awards to Named Plaintiffs, and directs that the Claims Administrator may implement the distribution of the Net Settlement Fund ("Distribution") in the manner provided for in the Settlement.

---

[1]     Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation of Settlement, filed at ECF No. 86-1.

4.      The Settlement will resolve all claims asserted in above-captioned Action in this Court.

5.      We have overseen all material aspects of the litigation of this Action.  In addition, we were involved in the negotiation of the terms of the Settlement.  Accordingly, we have personal knowledge of the facts and if called upon to testify, we could and would testify competently thereto.

6.      We have been preliminarily appointed as Class Counsel by this Court in its Order granting Preliminary Approval to the proposed Settlement ("Preliminary Approval Order").  ECF No. 87.   The Preliminary Approval Order also provided that the Named Plaintiffs were preliminarily appointed as Settlement Class Representatives.   In addition, the Preliminary Approval Order also preliminarily certified the following proposed Class:

> All students enrolled in Columbia's Programs who were assessed Spring 2020 Fees, with the exception of: (i) any person who withdrew from Columbia on or before March 13, 2020; (ii) any person enrolled solely in a program for the Spring 2020 semester that was always and originally delivered as an online program; (iii) any person who properly executes and files a timely opt-out request to be excluded from the Settlement Class; and (iv) the legal representatives, successors or assigns of any such excluded person.

Preliminary Approval Order at ¶3.

7.      In brief, Co-Lead Counsel engaged in extensive investigation and other litigation efforts throughout the prosecution of the Action, including, *inter alia*: (1) researching and drafting the initial complaints in the Action and the amended complaints; (2) researching the applicable law with respect to the claims in the Action and the potential defenses thereto; and (3) engaging in extensive settlement discussions with Columbia's Counsel.

8.      After extensive arm's length negotiations, the Parties reached an agreement to settle the Action for the amount of $12,500,000.00.  This amount represents one hundred percent (100%)

of the liability for any alleged damages sustained by the proposed Settlement Class as to fees paid and not refunded ($8.56 million), the only claim remaining undismissed, plus an additional $4.0 million.

9.      The Parties then documented the terms of the Settlement in the Stipulation of Settlement. ECF No. 86-1.

10.     We can state as of record that there was no collusion of any kind between Co-Lead Counsel and Columbia's Counsel and that all negotiations culminating in the proposed Settlement were at arm's-length and hard fought.

## I.      **FACTS**

11.     On April 23, 2020, a pseudonymous plaintiff known as Student A filed a class action complaint in the United States District Court for the Southern District of New York styled *Student A v. Board of Trustees of Columbia University in The City Of New York*, Case No. 1:20-cv-3208 (the "First Action").  That same day, a class action complaint was filed in the United States District Court for the Southern District of New York styled *Bennett, et al. v. Columbia University*, Case No. 1:20-cv-3227 (the "Second Action").

12.     On May 1, 2020, Plaintiff Alasdair Tremlett withdrew from the Second Action, and Plaintiffs Emmaline Bennett, Chris Riotta, Lisa Guerra, and Alexandra Taylor-Gutt filed an Amended Complaint in the Second Action.

13.     On May 5, 2020, the two actions were consolidated under the caption *In Re Columbia University Tuition Refund Action*, Lead Case No. 1:20-cv-03208 (JMF) (the "Action") (ECF No. 13).

14.     On June 5, 2020, Plaintiff Emmaline Bennett withdrew from the Action (ECF 25), and Named Plaintiffs filed a Consolidated Complaint. (ECF No. 26).

15.    On June 9, 2020, Named Plaintiffs filed a Consolidated Amended Class Action Complaint. (ECF No. 28).

16.    On June 22, 2020, Columbia filed a Motion to Dismiss. (ECF Nos. 35, 36).

17.    On July 22, 2020, Named Plaintiffs filed a Consolidated Second Amended Class Action Complaint (the "SAC") (ECF No. 42).

18.    The SAC alleged that Named Plaintiffs and putative class members are entitled to refunds of tuition, fees, and other charges because, beginning in March 2020, Columbia provided classes remotely in response to the COVID-19 pandemic. The SAC alleged that Named Plaintiffs and all other Columbia students who paid tuition and fees for the Spring 2020 semester had an implied contract with Columbia that entitled them to in-person instruction, and that by switching to remote education in response to the pandemic, Columbia breached that implied contract. Named Plaintiffs also contended that Columbia's shift to remote education gave rise to claims of unjust enrichment, conversion, and amounted to a violation of New York General Business Law sections 349 and 350. Named Plaintiffs sought damages representing the "difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom" and/or an equivalent refund. (*Id.* ¶ 155).[2]

19.    The SAC sought certification of a putative class of plaintiffs comprising:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

---

[2]    All references to "¶" are to the SAC unless otherwise indicated.

> All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

(*Id.* ¶ 68.)

20.     On July 27, 2020, Columbia informed the Court that it intended to adhere to its previously filed Motion to Dismiss.  (ECF No. 43).

21.     On August 14, 2020, Named Plaintiffs filed papers in opposition to the Motion to Dismiss.  (ECF No. 45).

22.     On August 21, 2020, Columbia filed its Reply in support of its Motion to Dismiss. (ECF No. 46).

23.     On February 26, 2021, the Court issued its decision on the Motion to Dismiss, dismissing all contract claims seeking a refund of tuition payments but sustaining Named Plaintiffs' breach of contract claims seeking a refund of fee payments. All claims for unjust enrichment, conversion, and violations of the New York General Business Law as to both tuition and fee payments were dismissed.  (ECF No. 62).

24.     Thereafter, the Parties exchanged detailed information related to the amount of fee payments made by or on behalf of the putative class members for the Spring 2020 semester and exchanged proposals in an effort to reach a settlement of the Action.

25.     On October 6, 2021, the Parties informed the Court that they had reached a settlement in principle. The Court ordered the Parties to file a motion for preliminary approval of the settlement by November 23, 2021. (ECF No. 83). In advance of that deadline, the Parties negotiated the terms of the Settlement and its supporting exhibits.  On December 3, 2021, the Court granted preliminary approval of the Settlement, and ordered the Parties to file a motion for final approval by February 7, 2022. (ECF No. 87).

26.     Named Plaintiffs believe that the claims asserted in the Action have merit. Nonetheless, Named Plaintiffs and their counsel recognized that Columbia raised factual and legal defenses in the Action, partially accepted by the Court, that presented a risk that Named Plaintiffs may not prevail at trial or on appeal. Named Plaintiffs and their counsel also took into account the costs, risks, and delays associated with the continued litigation of the Action.  Therefore, Named Plaintiffs and their counsel believed that it was desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred under the terms and conditions set forth in the Settlement.

27.     Based on their comprehensive examination and evaluation of the law and facts relating to the matters at issue in the Action, Named Plaintiffs' counsel have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate to resolve the alleged claims of the Settlement Class Members, and that it is in the best interests of the Settlement Class Members to settle the claims raised in the Action under the terms and conditions set forth in the Settlement.

## II.     <u>NOTICE WAS ISSUED AS ORDERED</u>

28.     Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B).

29.     The Notice and the method used to disseminate the Notice to potential Settlement Class Members satisfy these standards.  The Court-approved Notice (the "Notice") amply informs Settlement Class Members of, among other things: (i) the pendency of the Action; (ii) the nature

of the Action and the Settlement Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed manner of distribution of the Net Settlement Fund; (v) Settlement Class Members' rights to request exclusion from the Settlement Class or object to the Settlement, the manner of distribution, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Settlement Class Members; and (vii) information regarding Class Counsel's motion for an award of attorneys' fees and expenses and incentive awards for Named Plaintiffs.

30.     The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) requesting exclusion from the Settlement Class; and (ii) objecting to any aspect of the Settlement, including the proposed distribution plan and the request for attorneys' fees and expenses and case awards for Named Plaintiffs.

31.     Notice programs such as the one proposed by Class Counsel have been approved as adequate under the Due Process Clause and Rule 23.

## III.    THE MANNER OF DISTRIBUTION OF THE NET SETTLEMENT FUND IS FAIR AND ADEQUATE

32.     As set forth in the Notice, the proposed manner of distribution is based on the same methodology underlying Named Plaintiffs' measure of damages.  This is a fair method to apportion the Net Settlement Fund among the Settlement Class, as it is based on, and consistent with, the claims alleged.  The manner of distribution is set forth as follows:

4.     Each Settlement Class Member's Settlement Benefit shall be determined based on the Program within Columbia in which the Settlement Class Member was enrolled in Spring 2020.

5.     A portion of the Net Settlement Fund will be allocated to each Program based on the ratio of (a) the total amount of Spring 2020 Fees assessed to Potential Settlement Class Members enrolled in that Program as compared to (b) the total amount of Spring 2020 Fees assessed to Potential Settlement Class Members

enrolled in all Programs, taking into account Financial Aid and any refunds already distributed during the Spring 2020 semester.

6.      The portion of the Net Settlement Fund allocated to each Program under the process described in Paragraph 5 will be distributed equally among all Potential Settlement Class Members within that Program. The amounts distributed to Potential Settlement Class Members who properly execute and file a timely opt-out request to be excluded from the Settlement Class will be added together and distributed equally among all Settlement Class Members.

7.      Under the process described in Paragraphs 5–6, each Settlement Class Member within the same Program will receive the same Settlement Benefit.

8.      Each Settlement Class Member's Settlement Benefit will be distributed to that Settlement Class Member automatically, with no action required by that Settlement Class Member.

9.      By default, the Settlement Administrator will send the Settlement Benefit to each Settlement Class Member by check mailed to the Settlement Class Member's last known mailing address on file with the University Registrar. The Settlement Administrator will also provide a form on the Settlement Website that Settlement Class Members may visit to (a) provide an updated address for sending a check; or (b) elect to receive the Settlement Benefit by Venmo or PayPal instead of a paper check. Settlement Class Members must provide an updated address or elect to receive the Settlement Benefit by Venmo or PayPal no later than forty-five (45) days after the Effective Date.

10.     No later than seven (7) days after the Effective Date, Columbia will produce to the Settlement Administrator the information necessary for the Settlement Administrator to send the Settlement Benefits to the Settlement Class Members, including a list from the University Registrar's records that includes the Program in which each Settlement Class Member was enrolled in Spring 2020. [].

11.     The Settlement Administrator will send the Settlement Benefits to Settlement Class Members within sixty (60) days of the Effective Date. Funds for Uncashed Settlement Checks shall be split equally between and donated to The Food Pantry at Columbia and the President's and Provost's Student Event Fund.

*See* Stipulation at ¶¶4-11.

33.     Here, by dividing the Net Settlement Fund among Programs at Columbia according to the percentage of fees assessed to the students in those Programs, the Distribution proposal takes into account the relative strength and values of different categories of claims.

34.     Named Plaintiffs and Class Counsel believe that the proposed Distribution is fair and reasonable, and respectfully submit it should be approved by the Court.  Indeed, notably, there have been no objections to the distribution proposal to date, which supports the Court's approval.

## IV.     STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.     The Settlement Must Be Procedurally and Substantively Fair, Adequate and Reasonable

35.     Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Rule 23(e)(2), as amended, provides courts should consider certain factors when determining whether a class action settlement is "fair, reasonable and adequate" such that final approval is warranted:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)     the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

36.     In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the

reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation.

37.     For a settlement to be deemed substantively and procedurally fair, reasonable and adequate, not every factor need be satisfied.  As set forth in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of the Proposed Settlement and Provisional Certification of the Proposed Settlement Class (ECF No. 85) and acknowledged by this Court's Preliminary Approval Order (ECF No. 87), Named Plaintiffs initially met all of the requirements imposed by Rule 23(e)(2).

**B.     Named Plaintiffs and Class Counsel Have
Adequately Represented the Settlement Class**

38.     Named Plaintiffs' interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Settlement Class.  Additionally, Named Plaintiffs and Class Counsel have adequately represented the Settlement Class by zealously prosecuting this action, including by, among other things, extensive investigation and other litigation efforts throughout the prosecution of the Action, including, *inter alia*: (1) researching and drafting the initial complaints in the Action and the amended complaints; (2) researching the applicable law with respect to the claims in the Action and the potential defenses thereto; (3) reviewing, researching and opposing Defendant's motion to dismiss; (4) actively participating in similar College and University Class Actions filed across the country and (5) engaging in extensive

settlement discussions with Defendant's Counsel and the exchange of information pertaining to the damages suffered by the Class.

39.     Through each step of the Action, Named Plaintiffs and Class Counsel have strenuously advocated for the best interests of the Settlement Class. Named Plaintiffs and Class Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

40.     Named Plaintiffs satisfy Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel, with no hint of collusion.

### C.     The Risks of Establishing Liability At Trial

41.     Named Plaintiffs expect that, were the Action to proceed, Columbia would continue to vigorously contest all elements of Named Plaintiffs' surviving claims during the remaining stages of the Action, including during discovery, class certification and summary judgment. The outcome of the Action cannot be certain, and in the event that it proceeded to trial, it would be a lengthy and complex affair: even if Named Plaintiffs could establish liability, they would still have to prove damages on their claim for a partial refund of fees and certify a litigation class.

42.     Evaluated against these risks, a $12.5 million recovery now is an excellent result for the Settlement Class as it is ***100%*** of the amount Named Plaintiffs could have achieved at trial on the claim for a partial refund of fees (approximately $8.5 million), plus an additional $4 million dollars. In this Action, the Settlement Class Members will receive a meaningful and tangible present recovery from the Settlement. With final Court approval, these funds will be distributed in a matter of months, rather than years (or never), which is particularly important given the additional hardships imposed by the COVID-19 pandemic.

43.     Although Named Plaintiffs and Class Counsel firmly believe that the claims asserted in the Action are meritorious and that they would prevail at trial, further litigation against Defendant posed numerous risks which made any recovery uncertain.

> **D.      The Risks of Establishing Damages At Trial**

44.     The risks of establishing liability apply with equal force to establishing damages. Had litigation continued, Named Plaintiffs would have relied heavily on expert testimony to establish damages, likely leading to a battle of the experts at trial and a *Daubert* challenge.  If the Court were to determine that one or more of Named Plaintiffs' experts should be excluded from testifying at trial, Named Plaintiffs' case would become much more difficult to prove.  Thus, in light of the significant risks Named Plaintiffs faced at the time of the Settlement with regard to establishing damages, this factor weighs heavily in favor of final approval.

> **E.      The Settlement Eliminates The Additional
> Costs And Delay of Continued Litigation**

45.     The anticipated complexity, cost, and duration of the Action would be considerable. Indeed, if not for the Settlement, there was a high likelihood of even more expensive, protracted, and contentious litigation.  Such would consume significant funds and expose Named Plaintiffs and the Class to risk and uncertainty.  The subsequent motion for class certification and summary judgment, as well as the preparation for what would likely be a multi-week trial, would have caused the Action to persist for several more years before the Settlement Class could possibly receive any recovery.  Such a lengthy and highly uncertain process would not serve the best interests of the Settlement Class compared to the immediate, certain monetary benefits of the Settlement. Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* factors, all weigh in favor of final approval.

> **F.      The Proposed Method For Distributing Relief Is Effective**

46.     With respect to Rule 23(e)(2)(C)(ii), Named Plaintiffs and Class Counsel have taken appropriate steps to ensure that the Settlement Class is notified about the Settlement. Pursuant to the Preliminary Approval Order (ECF No. 87), the Court directed the following:

> The Court appoints the firm of Simpluris, Inc. as Settlement Administrator to administer the notice procedure and distribute the Net Settlement Fund, under the supervision of Class Counsel.

> Having reviewed the proposed Short Form Notice of Proposed Class Action Settlement and Hearing ("Short Form Notice"), and the proposed Long Form Notice of Proposed Class Action Settlement and Hearing ("Long Form Notice"), submitted by the Parties as Exhibits A-1 and A-2 to the Settlement, the Court approves, as to form and content, such notice.

> The Court directs that the Settlement Administrator send via email the Short Form Notice to all Potential Settlement Class Members at the email address in the University Registrar's records by **January 7, 2022** (*thirty (30) days from the entry of this Order*).  The Court further directs the Settlement Administrator to send the Short Form Notice via U.S. mail to the last known mailing address of all Potential Settlement Class Members for whom a valid email address is not available by **January 7, 2022** (*thirty (30) days from the entry of this Order*).  Columbia will produce to the Settlement Administrator the last known email and postal addresses belonging to all Potential Settlement Class Members by **December 17, 2021** (*fourteen (14) days from the entry of this Order*).

> No later than December 17, 2021 (*fourteen (14) days from the entry of this Order*), and before the issuance of the Short Form Notice, the Settlement Administrator shall establish the Settlement Website, which shall include, in downloadable format, the following: (i) the Long Form Notice; (ii) this Order; (iii) the Settlement (including all of its exhibits); and (iv) any other materials agreed upon by the Parties and/or required by the Court.

> The Court directs Columbia to cause the Short Form Notice to be published once in Columbia Daily Spectator, the student newspaper of Columbia, or a publication with comparable reach, no later than seven (7) days following the emailing or mailing of the Short Form Notice.

> The Court further directs Columbia to provide a link to the Settlement Website at www.columbia.edu within one (1) business day of the Settlement Website being established.

*See* Order (ECF No. 87) at pp. 3-4; *see also* Declaration of Mary Butler setting forth the details concerning the notice dissemination, publication, and requests for exclusion or objections received to date ("Butler Decl."), ¶¶5-8, 10-11, submitted herewith as Exhibit G.  Additionally, a settlement-specific website was created where key Settlement documents were posted, including (i) the Long Form Notice; the Court's Order (ECF No. 87); and (iii) the Stipulation of Settlement (including all of its exhibits). *Id.*, ¶9. Settlement Class Members have until February 21, 2022 to object to the Settlement or request exclusion from the Settlement Class.  While that date has not yet passed, to date there have been no objections to the Settlement, and no requests for exclusion other than a motion to intervene by the named plaintiff group of graduate students at the School of Arts of Columbia University who filed an action after this action was filed, captioned *Brittain v. Trustees of Columbia University in the City of New York*, No. 20 Civ. 9194 (S.D.N.Y.).[3]  Upon information and belief, the total number of students in said graduate program are a few hundred out of the 28,079 students included in the Settlement Class. This factor therefore supports final approval.

### G.     The Settlement Ensures Settlement Class Members Are Treated Equitably

47.     Rule 23(e)(2)(D), the final factor, considers whether Class Members are treated equitably. As reflected in the proposed manner of distribution, *see* Stipulation, ¶¶4-11, pp. 12-14, the proposed Settlement treats Settlement Class Members equitably relative to each other, and all Settlement Class Members will be giving Columbia the same release.  Named Plaintiffs will be subject to the same formula for distribution of the Net Settlement Fund as every other Settlement Class Member. This factor therefore merits granting final approval of the Settlement.

---

[3]     It should also be noted that paragraph No. 10 of the Long-Form Notice specifically cited to the *Brittain* action and advised those students that if they wished to continue as a member of the *Brittain* action, they simply needed to opt-out of this Settlement.

48.     Based on the foregoing, Named Plaintiffs and Class Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

### H.     The Settlement Satisfies the Remaining *Grinnell* Factors

49.     While the deadline to submit objections and opt-outs has not yet passed, no objections or opt-outs have been received to date, other than the content of the Motion to Intervene from the plaintiffs in the *Brittain* action, who are of course free to opt-out of this Settlement.  And other than the Motion to Intervene, no objections or requests for exclusion been received to date. This positive reaction of the Settlement Class supports approval of the Settlement.

### I.     Named Plaintiffs Had Sufficient Information To Make An Informed Decision Regarding The Settlement

50.     Class Counsel are sufficiently well informed of the strengths and weaknesses of the claims. Class Counsel researched the potential causes of actions thoroughly, researched the facts, reviewed the underlying documents exchanged between Named Plaintiffs and Columbia that comprised the alleged contract documents, drafted three separate pleadings and survived in part a motion to dismiss, engaged in protracted settlement negotiations with Defendant and exchanged non-public information regarding the alleged damages.  Class Counsel also spoke with potential merits and damages experts concerning the strengths and weaknesses of the case, as well as the strengths and weaknesses of Columbia's arguments and defenses.  Moreover, the information exchanged during settlement negotiations permitted Class Counsel to learn the relevant facts and circumstances in an efficient and cost-effective manner. Columbia provided financial information detailing fees assessed all members of the Class for the Spring 2020 semester.  Columbia has submitted a declaration affirming that the proposed Settlement Amount represents more than the aggregate amount of the undismissed fee claim's potential liability. *See* Hawkins Decl. (ECF No. 86-7). The Parties also exchanged further information through written correspondence and phone

calls. As a result, Class Counsel was well-positioned to evaluate the strengths of Named Plaintiffs' claims, Columbia's defenses, and prospects for success.

51.     Class Counsel also considered the many other cases arising out of COVID-19 school-related closures, of which Class Counsel are at the forefront.  *See* firm resumes of Class Counsel file at ECF Nos. 86-2 and 86-3 and accompanying Declaration of Thomas J. McKenna, ¶4, attached hereto as Exhibit A; Declaration of Roy Willey, ¶4, attached hereto as Exhibit B. Class Counsel's unique insight into this type of litigation, combined with the information obtained from Columbia in this case, fortified Named Plaintiffs' appreciation of the risks ahead should they proceed with further litigation.  Thus, by the time of the Settlement, Named Plaintiffs were well-versed in the strengths and weaknesses of the case. This factor weighs in favor of final approval.

**J.     Maintaining Class-Action Status**
**Through Trial Presents a Substantial Risk**

52.     Named Plaintiffs' ability to maintain class-action status through trial presented a substantial risk in this Action.  Although Named Plaintiffs believe they would have prevailed on a motion to certify the class, Defendant was poised to vigorously oppose the motion.  Moreover, even if the motion had been granted, Defendant could still have moved to decertify the class or trim the class before trial or on appeal, as class certification may be reviewed at any stage of the litigation.

**K.     Defendant's Ability To Withstand A Greater Judgment**

53.     Although Columbia may have the ability to withstand a greater judgment, the settlement is still more than ***100%*** of the liability for any alleged damages sustained by the proposed Settlement Class as to fees paid and not refunded (the only undismissed claim remaining in the Action) and such weighs in favor of preliminary approval.

**L.    The Settlement Amount Is Reasonable In View**
**Of The Best Possible Recovery And The Risks of Litigation**

54.    The Settlement here presents an excellent result, as Named Plaintiffs have obtained *100%* of the alleged damages for unrefunded fees that are at issue in what remains of the Action, plus an additional $4 million. This Settlement thus clearly falls at the very high end of recoverable damages. Additionally, the Settlement Amount provides a significant and immediate payment to the Settlement Class.

**V.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS**
**FOR PURPOSES OF EFFECTUATING THE SETTLEMENT**

55.    In their motion for preliminary approval of the Settlement, Named Plaintiffs requested that the Court certify the Settlement Class for settlement purposes only so that notice of the Settlement, the Settlement Hearing, and the rights of Settlement Class Members to object to the Settlement, request exclusion from the Settlement Class, or submit new payment instructions, could be issued. *See* ECF No. 85- at 19-20. In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Named Plaintiffs had met the requirements for certification of the Settlement Class for purposes of settlement and that Named Plaintiffs "will fairly and adequately protect the interests of the Settlement Class." ECF No. 87 at ¶4. Specifically, in the Preliminary Approval Order, the Court preliminarily certified a class of "All students enrolled in Columbia's Programs who were assessed Spring 2020 Fees, with the exception of: (i) any person who withdrew from Columbia on or before March 13, 2020; (ii) any person enrolled solely in a program for the Spring 2020 semester that was always and originally delivered as an online program; (iii) any person who properly executes and files a timely opt-out request to be excluded from the Settlement Class; and (iv) the legal representatives, successors or assigns of any

such excluded person." *Id.*  In addition, the Court preliminarily certified Named Plaintiffs as "Settlement Class Representatives" and Counsel as Class Counsel.  *Id.* at ¶¶5, 6.  Since the Court's entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes.  Thus, for all of the reasons stated in Named Plaintiffs' motion for preliminary approval (incorporated herein by reference), Named Plaintiffs respectfully request that the Court affirm its preliminary certification and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and make a final appointment of Named Plaintiffs as class representatives and Class Counsel as class counsel.

## VI.    THE REQUESTED AWARD OF FEES AND EXPENSES IS WARRANTED

56.    The requested fee of 33% of the Gross Settlement Amount is also reasonable when considering the "sliding scale approach" endorsed by courts within this Circuit, where a smaller percentage for fees is typically awarded as the size of the settlement fund increases, thus avoiding a "windfall" to counsel.  Following this approach, the requested fee is in line with the attorney fee awards typically awarded by courts in this District and other courts within the Second Circuit in cases of similar size.

57.    Accordingly, when considering the complexity of the case and the precedent in this circuit regarding high volume settlements, it is clear that the percentage requested here is reasonable and reflects the extensive work and risk Plaintiffs' Counsel undertook to prosecute this Action.

### A.    The Other *Goldberger* Factors Likewise Support The Requested Fee

58.    The remaining *Goldberger* factors—the risks confronting Plaintiffs' Counsel, the quality of representation they have provided, and public policies favoring private remediation of

financial misconduct and providing incentives to counsel to pursue important cases on a contingent basis— all support the requested fee.

59.     Plaintiffs' Co-Lead Counsel faced substantial risk at every stage of this Action. Indeed, even having partially survived Defendant's motion to dismiss, most of the issues Defendant raised would likely have continued to pose hurdles at trial.  Moreover, in the absence of the Settlement, Co-Lead Counsel would also have faced significant litigation risks on both liability and damages.  In addition, various developments in the relevant caselaw nationwide and recently enacted legislation in other jurisdictions designed to extinguish student claims for partial refunds threatened to undercut certain of Plaintiffs' theories of the case.

60.     In sum, victory was far from assured at any stage, with meaningful hurdles to overcome to certify a class, overcome motions for summary judgment, win at trial, and preserve a favorable judgment on appeal.  The requested fee reflects the risks that Plaintiffs' Co-Lead Counsel undertook in pursuing this case on a contingency basis for approximately two (2) years.

### B.     Plaintiffs' Co-Lead Counsel Provided Exemplary Representation Of The Class

61.     The $12.5 million Settlement Amount represents one hundred percent (100%) of the liability for any alleged damages sustained by the proposed Settlement Class as to fees paid and not refunded ($8.56 million), the only claim remaining undismissed, plus an additional approximately $4.0 million to account for the risks of additional litigation, as well as administrative expenses, attorneys' fees, and awards to the proposed Settlement Class Representatives.  This is in essence a recovery of 150% of the provable damages on the surviving claim seeking a partial refund of student fees paid.

62.     Moreover, any assessment of the percentage recovery must account not only for the litigation uncertainties detailed above—including with respect to class certification, summary

judgment, trial, and any appeal—but also the certainty of delay as Plaintiffs prepared for trial and inevitable appeals. Plaintiffs' Co-Lead Counsel should be rewarded for achieving this excellent recovery for Class Members without imposing on them the cost of potentially years of additional litigation toward an uncertain outcome.

63. The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. Plaintiffs' Co-Lead Counsel faced top-flight defense attorneys, who were also able to draw on Defendant's vast resources. The high quality of the lawyers opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.

64. Furthermore, the Long Form Notice informed all members of the Settlement Class that Co-Lead Counsel would seek a fee award of up to one-third of the gross settlement amount. *See* Long-Form Notice at 8. In response to that notice and in response to the Settlement itself, not a single Class Member out of approximately 29,000 lodged an objection to the requested fee to date.

## C.    <u>Public Policy Considerations Support The Proposed Fee</u>

65. The public interest is well served by this Action, which sought to hold Columbia University accountable for allegedly shifting the entire financial burden of the novel coronavirus pandemic on to their students.

66. A 33% fee would, moreover, compensate Plaintiffs' Co-Lead Counsel at a level commensurate with the benefits they have conferred on the Class, the substantial investment of time and money they devoted to litigating this unique case and bringing about the Settlement, as well as the contingent nature of their representation. Public policy favors this fee request.

## D.    <u>The Lodestar Cross-Check Supports The Requested Fee</u>

67.     The lodestar fee calculation method has fallen out of favor particularly because it encourages bill-padding and discourages early settlements.  Accordingly, the lodestar method is used in this Circuit only as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall.  The primary purpose of the lodestar cross-check is to ensure that counsel are not enjoying an unwarranted windfall.

68.     The cross-check in this case makes abundantly clear there is no windfall.  Plaintiffs' Co-Lead Counsel has collectively spent over 1,398.20 hours on this matter as of February 3, 2022.  Additional time will be incurred in the future to obtain final approval and ensure the Net Settlement Fund is distributed according to this Court's orders.  At customary current rates, these hours translate into $959,951.05 in total lodestar.  Co-Lead Counsel's request for $4,166,666.67 in attorneys' fees for plaintiffs' counsel thus represents a total multiplier of approximately 4.3.  This is an appropriate multiplier, especially for a case of this size and complexity.  And it is squarely within the range awarded by courts in this District, as well as across the country.

69.     Here, the multiplier of 4.3 is eminently justified given the factors discussed herein, and especially the fact that Plaintiffs' counsel was able to secure the Settlement representing one hundred percent (100%) of the liability for the only claim remaining undismissed, with an extra 50% on top.  To reduce a fee award because settlement was achieved at a relatively early stage would discourage efficient litigation.

70.     Co-Lead Counsel should be rewarded for settling when they did, as well as for their success in the face of great risk.  As a result of Co-Lead Counsel's work and willingness, the Class will receive significant and immediate financial redress for wrongs they have already waited too long to see remedied.

**VII.   PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES, INCLUDING SERVICE AWARDS, SHOULD BE GRANTED**

**A.   Plaintiffs' Co-Lead Counsel's Expenditures On The Class's Behalf Were Reasonable**

71.     Plaintiffs' Counsel spent $1,937.08 in out-of-pocket costs in prosecuting and resolving this Action.  Relative to the Settlement amount in this matter, this is an entirely modest number.  This request for reimbursement should be granted in full.

**B.   Service Awards To The Settlement Class Representatives Are Warranted Given Their Dedication To The Class, Which Helped Achieve This Extraordinary Result**

72.     The requested awards in this case are fully consistent with these recognized rationales. First, the Settlement Class Representatives invested significant time providing information to Plaintiffs' Co-Lead Counsel during the investigation of the Class's claims, reviewing case materials (pleadings, discovery responses, interrogatory responses, settlement agreement, *etc.*), and communicating with Co-Lead Counsel, all while many were still full-time students.  Further, they assumed significant reputational risks by suing their current or former university and by facing the potential criticisms of their peers, professors, future employers and future alumni.  *See* Declarations of Named Plaintiffs Student A, Chris Riotta, Lisa Guerra and Alexandra Taylor-Gutt, attached hereto as Exhibits C through F.  Though the Named Plaintiffs were understandably fearful that there might be negative repercussions as to them personally for their participation in this Action, Columbia assures us that they would never retaliate against one of the students.

73.     Finally, the amount of the requested awards is also in line with the amounts awarded in other cases in this jurisdiction.

74.     Attached hereto as Exhibit A is a true and correct copy of the Declaration of Thomas J. McKenna in Support of Plaintiffs' Motion for an Award of Fees and Expenses.

75.     Attached hereto as Exhibit B is a true and correct copy of the Declaration of Roy T. Willey, IV in Support of Plaintiffs' Motion for an Award of Fees and Expenses.

76.     Attached hereto as Exhibit C is a true and correct copy of the Declaration of Student A.

77.     Attached hereto as Exhibit D is a true and correct copy of the Declaration of Chris Riotta.

78.     Attached hereto as Exhibit E is a true and correct copy of the Declaration of Lisa Guerra.

79.     Attached hereto as Exhibit F is a true and correct copy of the Declaration of Alexandra Taylor-Gutt.

80.     Attached hereto as Exhibit G is a true and correct copy of the Declaration of Mary Butler.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of February 2022, in Charleston, South Carolina.

*/s/ Roy T. Willey, IV*
Roy T. Willey, IV

Executed this 7th day of February 2022, in New York, New York.

*/s/ Thomas J. McKenna*
Thomas J. McKenna

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 7, 2022, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants.

<u>*/s/ Gregory M. Egleston*</u>
Gregory M. Egleston